# EXHIBIT A

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.

SEMINOLE TRIBE OF FLORIDA, a Federally
recognized Indian tribe, on behalf of its current and
former MINOR TRIBE MEMBERS who are and
were beneficiaries of the Seminole Tribe of Florida
Minors' Per Capita Payment Trust Agreement (as
amended from time to time) and JOHN DOES 1-10,

   Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE; TERRI
JOHNSON; MELISSA LADER BARNHARDT;
KIM SCOTT; MARC SPELANE; MICHAEL S.
CARRIS; and MARK LAKE,

   Defendants.

_____/

## COMPLAINT

  Plaintiffs, SEMINOLE TRIBE OF FLORIDA, an Indian tribe, on behalf of its current and

former Minor Tribal Members who are and were beneficiaries of the Seminole Tribe of Florida

Minors' Per Capita Payment Trust Agreement (as amended from time to time), (the "Tribe"), and

JOHN DOES 1-3 by and through undersigned counsel, hereby sues and files this Complaint against

Defendants WELLS FARGO BANK, N.A., ("Wells Fargo") (and as successor in interest to

Wachovia Bank, N.A. -- collectively "Trustee")  DEBRA CHARBONNET ("Charbonnet"),

THOMAS JOYCE ("Joyce"), TERRI JOHNSON ("Johnson"),  MARC SPELANE ("Spelane"),

MICHAEL S. CARRIS ("Carris"), MARK LAKE ("Lake"), MELISSA LADER BARNHARDT

("Barnhardt"), and KIM SCOTT ("Scott") and allege:

1

"Bank failures are caused by depositors who don't deposit enough money to cover losses due to mismanagement." Dan Quayle

## INTRODUCTION

1.      The Seminole Tribe of Florida seeks to recover millions of dollars of fees fraudulently charged Minor Tribe Members when Wells Fargo was supposed to be acting as a fiduciary trustee to protect the financial interests of those same minors. Instead Wells Fargo engaged in a decade-long fraudulent scheme using deficient and confusing account statements to conceal the collection of unauthorized fees to the minor beneficiaries. The Tribe also seeks to recover for its Minor Tribe Members at least one hundred million dollars in lost value to the trust as a result of the Trustee's gross mismanagement of the trust assets by negligently employing imprudent investment strategies. It is evident that Wells Fargo focused its attention on concealing the collection of unauthorized fees instead of adopting a viable investment protocol. It appears as if, the Trustee established the trust, placed it in cruise-control, failed to properly advise the Tribe or its minor beneficiaries on investment strategies, and invested in a deficient portfolio in order to defraud the minor beneficiaries out of millions of dollars in fraudulent fees. The bank's collection of fraudulent fees and the gross mismanagement of the trust is a breach of fiduciary duty to the beneficiaries and the proximate cause of the plaintiffs damages.

## BACKGROUND

2.      The Tribe is an organized Indian tribe with a sovereign tribal government whose headquarters is located at 6300 Stirling Road, Hollywood, Florida 33024. The Tribal Council of the Seminole Tribe of Florida is the governing body of the Seminole Tribe of Florida. The Tribe

2

has Indian reservations in Hollywood, Tampa, Immokalee, Brighton, and Big Cypress, Florida, and other property that is held in trust by the United States of America for the benefit of the Tribe, and which is collectively referred to herein as "Tribal Land".

3.      The Seminole Tribe conducts its tribal affairs pursuant to a written Constitution and a set of By Laws approved and adopted by the Secretary and the requisite number of eligible tribal members who cast their votes at a properly convened Secretarial Election. Under Article V of the Amended Constitution and Bylaws of the Seminole Tribe, the Tribe is governed by a duly elected Tribal Council which is recognized by the Secretary as the Tribe's constitutionally constituted governing body.

4.      Under §7 of the Tribal Constitution the Tribe is mandated to "promote public health, education, charity, and such other services as may contribute to the social advancement of the members of the Seminole Tribe of Florida."

5.      The Tribe provides the same essential governmental services on Tribal Land that states typically provide off Tribal Land, including, but not limited to, police and fire protection, emergency medical services, public schools, public transportation, garbage pick-up, business regulation and road construction and maintenance ("Essential Governmental Services" or "EGS").

6.      The State provides no services in connection with any activity that is conducted on Tribal Land, including the provision of Essential Governmental Services, the leasing of Tribal Land or gaming activities.

7.      The Tribe owns and operates extensive entertainment and gaming facilities on Tribal Land, including the Seminole Hard Rock Hotel and Casinos on its Hollywood, Florida, reservation ("Seminole Hollywood Casino") and on its Tampa, Florida, reservation ("Seminole Tampa Casino").

8.      The main purpose of gaming activities is to promote tribal economic development, self-sufficiency and self-government by providing a source of funds with which the Tribe can provide Essential Governmental Services.

9.      Revenue from the gaming industry is used to invest in health care, education and economic development. On tribal land, this little money is the difference between a drug rehabilitation program and no program; a nutrition program and no nutrition program, between an alternative school or a senior citizen center and nothing. These Essential Governmental Services also helps to create jobs, rebuild and revitalize their cultures, and achieve other community objectives.

10.     From the revenue derived from the gaming industry the Tribe created a trust account with a financial institution to hold per capita gaming distributions for the benefit of minor Tribal members to help promote tribal economic development, self-sufficiency, and strong tribal governments. The Trust was also established to protect and preserve the interests of minor children who are entitled to receive any of the per capita payments.

11.     The Minors' trust fund is essential to the Tribe's economic viability and therefore, the more money each tribal member receives from the distribution upon reaching the age of eligibility leads to increased self-sufficiency and less of a burden on the precious limited tribal resources. These funds substantially affect the entire Seminole nation and its well-being.

12.     In fact, the Tribe has seen an increase in its population over the last decade which is partly contributable to the establishment of the Minors' trust. The trust has led to a revitalization in the Tribe and the EGS provided by the Tribe has even greater import.

## MINOR'S TRUST

13.     In 2005 the Tribe began the process of establishing a Minors' trust and prior to the formation of the trust the Tribe and Wells Fargo's predecessor in interest, Wachovia Bank, National Association ("Wachovia"), negotiated the language of the trust, the purpose of the trust, the Trustees powers and duties and the fees associated with the administration of the Minors' Trust.

14.     After months of negotiations, on April 20, 2005, the trust for the benefit of its minor Tribal members, which is known as the "Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement" (hereinafter referred to as the "2005 Minors' Trust") was established. See attached as Exhibit "A".

15.     The Tribe appointed Wachovia, to serve as the Trustee for the 2005 Minors' Trust and Defendant Carris executed the Trust on behalf of Wachovia. Bank.

16.     During the first year of the Trust the Tribe contributed $16.8 million and with additional funding each month and the addition of new Tribal Minor Beneficiaries the value of the Trust principal has grown to now approximately $1.4 Billion.

## TRUST DOCUMENTS

17.     The main purpose of the 2005 Minors' Trust was to set up an account for the receiving and investing a portion of the per capita payments to which Minor Qualified Enrolled Tribal Member would be entitled until he or she attains the age of eighteen (18) years.

> Granter intends for this Trust....... **for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she attains the age of eighteen (18) years and to make distributions pursuant to the terms of this trust prior to the time such Minor Qualified Enrolled Tribal Member attains the age of eighteen (18) years** as may be required to provide for his or her extraordinary or emergency medical needs as determined hereunder.

Article II

5

18.     As Trustee, Wachovia along with the individual defendants acting as employees

and agents of the Trustee owed a fiduciary duty to Tribal Minors enrolled in the trust as

beneficiaries and is liable to any beneficiary for damages attributable to the Trustee's gross

negligence, willful malfeasance or bad faith. In addition, the 2005 Minors' Trust was specifically

created as a Florida agreement, and at all times be governed by the laws of the State of Florida,

and, to the extent it is not inconsistent with Florida law, by applicable Tribal law.

> Fiduciary Duty. Trustee shall hold and administer the Trust Estate
> for the benefit of the beneficiaries consistently with the directions of
> this Trust Agreement and with general trust principles of fiduciary
> duty and management. **The Trust is specifically created as a**
> **Florida agreement, and the construction, validity and effect of**
> **this agreement and the rights and duties of the beneficiaries and**
> **the Trustee thereof shall at all times be governed by the laws of**
> **the State of Florida, and, to the extent it is not inconsistent with**
> **Florida law, by applicable Tribal law. No Trustee hereunder**
> **shall be liable to any beneficiary except for damages**
> **attributable to the Trustee's gross negligence, willful**
> **malfeasance or bad faith.** If, in the event of litigation between the
> Trustee and a beneficiary, the Trustee prevails, the Trustee shall be
> entitled to reimbursement from the separate share of said beneficiary
> of all reasonable costs incurred by the Trustee in connection with
> such litigation.

Article III B. 2
**[Emphasis added]**

19.     Article III of the Trust established a detailed structure for the Trustee to follow for

the collection of contributions and distribution of the funds to the beneficiary's.

20.     The Trustee was provided powers to hold and administer the Trust estate for the

benefit of the beneficiaries consistent with the directions of 2005 Minors' Trust Agreement and

with general trust principles of fiduciary duty and management.

> 1. To retain any property (including stock of any corporate trustee
> hereunder or of a parent or affiliate company) originally constituting
> the trust or subsequently added thereto, although not of a type,
> quality of diversification considered proper for trust investments;

Article VI. A.1

6

21.     Among many powers bestowed upon the Trustee by the 2005 Minors' Trust one of

the main duties of the Trustee was to hold, manage, care for and protect the trust property and,

except as otherwise specifically limited by the 2005 Minors' Trust itself, the Trustee was

empowered to take the following actions:

> 2. To invest and reinvest in any and all kinds of securities, domestic
> or foreign, including common and preferred stocks, bonds, mutual
> funds, commodities, options (covered and uncovered}, hedge funds,
> debentures, notes, commodity. contracts, mortgages and options on
> property; and money market funds, commercial paper, repurchase
> agreements, United States Treasury obligations, certificates of
> deposit, savings accounts, checking accounts and any other cash
> investment medium; and investment trusts and in common trust
> funds; and any real property (including a private residence); and any
> personal or mixed property; and any business, mining or farming
> operation or other venture; or in any other interest or investment
> medium, including the purchase of insurance on the life of any
> individual, even if such investment would not be of a character
> authorized by applicable law but for this provision, all without
> diversification as to kind or amount, without being restricted in any
> way by any statute or court decision (now or hereafter existing)
> regulating or limiting investments by fiduciaries;

Article VI. A.2

22.     Another duty of the Trustee was to provide an accounting of all receipts and

disbursements allocable to each share of the trust at least quarterly to the Minor beneficiary or their

parents or Guardian(s), and to provide copies of each such accounting to the Tribe as well as to

account for the interest of each beneficiary separately.

> <u>Accountings and Compensation</u>. Trustee shall render an accounting
> of all receipts and disbursements allocable to each share of the trust
> at least quarterly to the parents or Guardian(s) of the beneficiary
> thereof, and provide copies of each such accounting to Grantor.
> Failure of the recipient to object to an accounting within ninety (90)
> days shall be deemed acceptance of the accounting by said recipient.
> Trustee shall be reimbursed for all reasonable expenses incurred in
> the management and protection of the trust and shall have the right
> to receive reasonable compensation for services rendered. The
> compensation of any corporate Trustee shall be in accordance with
> its schedule of fees in effect from time to time. Trustee agrees to

prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.
Article VI. B.

23.     Attached to the 2005 Minors' Trust was a Fee Schedule. The negotiated schedule, the Tribe believed, encompassed the complete fee structure that Wachovia, as Trustee, was to charge the Minor beneficiaries to administer the 2005 Minors' Trust. See attached Fee Schedule as Exhibit "B". It was later discovered that the Trustee engaged in a prolonged scheme to defraud the minor beneficiaries out of millions of dollars in unauthorized fees.

### SUCCESSIVE TRUSTS DOCUMENTS

24.     As the trust corpus began to swell with additional funding each month by the Tribe and the addition of new Tribal Minor Beneficiaries it became necessary to make changes to the trust agreement. In order to implement these vital changes the Tribe merged the 2005 trust into 3 successive trust instruments and the fee schedule was modified five (5) times over the next seven (7) years.

25.     On November 1, 2007, the Tribe merged the 2005 Minors' Trust into the 2007 Minors' Trust and reappointed Wachovia to serve as the Trustee for the 2007 Minors' Trust. (hereinafter referred to as the "2007 Minors' Trust") See attached as Exhibit "C". The 2007 Minors' Trust was executed by defendant Carris on behalf of Wachovia.

26.     The 2007 Minors' Trust remained substantially similar to the 2005 Minors' Trust but was merged to mainly address additional categories for distributions and additional beneficiary protections.

8

27.     On May 8, 2008, the Tribe and Wachovia entered into an amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule. See attached as Exhibit "D"

28.     The Tribe was always concerned with the fees associated with the administration of the trust. A chief point with the Tribe's then CFO, Jim Raker (hereinafter "Raker"), was ensuring that as the trust kept growing the fees for the trust were as low as possible.  In fact, Raker would routinely exchange emails on this topic with defendants Carris, Charbonnet, Spelane and Lake in an ongoing effort to negotiate lower fees.

29.     At no point prior to adopting the May 8, 2008 fee schedule was the Tribe advised of any additional fees being charged separate and apart from the agreed upon trustee fee. The trustee actively concealed the existence of additional fees being charged to the minor beneficiaries and knowingly misled the Tribe into believing the agreed upon trustee fee as reflected in the fee schedule was the only fee being incurred for the administration of the trust and reported on the statements.

30.     With the trust corpus exploding, (mostly attributable to the Tribe depositing additional funds on a monthly basis and less to do with the actual performance of the trust portfolio) a little over a year later the Tribe and Wachovia again entered into an amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to July 1, 2008. See attached as Exhibit "E".

31.     Once again, Wachovia actively omitted any reference to the existence of additional fees being charged to the minor beneficiaries beyond those set forth on the agreed upon fee schedule. In hindsight it is now clear why the Trustee was not concerned with negotiating a lower

trust fee since they were collecting hidden fees and charging more fees as a percentage of the growing corpus due to additional steady contributions from the Tribe.

32.     Thereafter on March 9, 2010, the Tribe merged the 2007 Minors' Trust into the 2010 Minors' Trust and Wachovia remained the Trustee for the 2010 Minor Trust (hereinafter referred to as the "2010 Minors' Trust"). See attached as Exhibit "F". The 2010 Minors' Trust was executed by defendant Charbonnet on behalf of Wachovia.

33.     The 2010 Minors' Trust remained substantially similar to the preceding 2007 Minors' Trust.

34.     With the trust corpus exceeding a billion dollars, (again as a result of additional funds being deposited by the Tribe and the increase in population and not through the investment strategy of the Trustee of the Trust) on September 15, 2010, the Tribe and Wachovia entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to September 1, 2010. See attached as Exhibit "G".  This Fee Schedule contained a footnote stating "All Other Investment Fees Reflected on Separate Schedule(s)". However, Wells Fargo never provided the Tribe or the Minor Beneficiaries with any other schedules.

35.     Hand in hand with the increase in the trust corpus was the implementation of a new fee schedule driving the fees downward. However, the Tribe did not suspect that although the trustee fees were being adjusted downward the Trustee was also charging and collecting from the minor beneficiaries' hidden fees not disclosed on any fee schedule provided to the Tribe or the minor beneficiaries.

36.     Thereafter, on June 28, 2011 the Tribe and Wachovia entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to August 1, 2011. See attached as Exhibit "H".

37.     Again, the fee schedule was amended to reflect the increase in the amount of funds in the trust, (largely due to the Tribe depositing additional funds on a monthly basis and less to do with the actual performance of the trust portfolio) adjusting the Trustee fees downward. References to any fees aside from the trustee fee is strikingly absent from any communications between the Tribe and the Trustee.

38.     Then on January 13, 2012, the Tribe merged the 2010 Minors' Trust into the 2012 Minors' Trust and appointed Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, National Association and its successor in interest by merger as Trustee (hereinafter referred to as the "2012 Minors' Trust"). See attached as Exhibit "I". The 2012 Minors' Trust was executed by defendant, Debra Charbonnet.

39.     The 2012 Minors' Trust differentiated itself from the 3 previous trust agreements by redefining the scope of the Trustee investment powers. In particular Article VI states the following:

> 1. The paramount objective of the Grantor is preservation of principal. The return on investments is a secondary consideration. In that context, the Trustee shall limit investments to fixed-income securities with strong credit quality and shall be prohibited from investing in common stocks and other "equity-like" investments. The Trustee shall have no duty to diversify under the Prudent Investor Rule as set forth in Section 518.11, Fla. Stat., and shall not be responsible for losses resulting from a lack of diversification of the assets into other asset classes

Article VI. A. 1.

40.     Critically, the Trustee made no attempt to seek the approval of the minor beneficiaries or their Guardians when altering and adopting this new investment strategy and breached its fiduciary duty when it failed to inform the minor beneficiaries and their guardians of any important adjustment being considered or implemented in investment or other management strategy as required by Fla. Stat. §736.0813.

41.     In fact, the alteration in the trust language meant Wells Fargo could continue collecting its fees as the trust corpus grew due to continued contributions from the Tribe while exerting minimal effort to grow the corpus through prudent investment management of the trust accounts.

42.     Thereafter, on September 24, 2012 the Tribe and Wells Fargo entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and effective on January 1, 2013. See attached as Exhibit "J." Again, this Fee Schedule contained a footnote stating "All Other Investment Fees Reflected on Separate Schedule(s)". However, the Tribe and the minor beneficiaries are not in possession of any other schedules.

43.     The September 24, 2012 fee schedule was no different than the previous amended schedules whereby the Trustee fees were adjusted and the representatives of the Trustee never mentioned any other types of fees being charged and collected from the minor beneficiaries for the administration of the trust.

## SPRING 2015 FRAUD REVELATION

44.     In the spring of 2015, the Tribe conducted a routine review of the Minors' Trust account records, and the Tribe began to uncover an elaborate fraudulent scheme by the Trustee involving the charging of unauthorized fees to tribe minor beneficiaires outside the negotiated fee schedule.

45. The Tribe contacted defendant Scott on multiple occasions to determine the basis for fee charges the Tribe had not previously authorized. As a result of those inquires by the Tribe, on or about April 24, 2015, defendant Scott, provided the Tribe for the first time a secret internal memo, dated May 9, 2005 between defendant Michael Carris of Wachovia Personal Trust ("WPT") and David Harrison of Wachovia Retirement Services ("WRS"). The memo is the instrument Carris and Wachovia Personal Trust utilized to retain Wachovia Retirement Services to provide servicers on behalf of Wachovia Personal Trust.

smf

Wachovia
GA 8014
191 Peachtree Street, 23rd Floor
Atlanta, GA 30303

(404) 332-6819
(404) 332-6816

# Memo

WACHOVIA

Date 5/9/05

To Michael Carris

From David Harrison

Regarding Seminole Tribe of Florida Minors' Per Capita Payment Trust

Wachovia Personal Trust ("WPT") has entered into an agreement with the Seminole Tribe of Florida (the "Tribe") whereby Wachovia Bank, N.A. ("Wachovia") will serve as Trustee for the Seminole Tribe of Florida Minors' Per Capita Payment Trust (the "Trust"). Under the terms of the Trust, Wachovia will provide certain allocation, recordkeeping and administrative services (collectively the "Services") to properly account for the interest of each minor beneficiary under the Trust.

WPT wishes to retain Wachovia Retirement Services ("WRS") to provide the Services on behalf of WPT. WPT understands and agrees that WRS will not serve in any fiduciary capacity related to these services. WRS will not exercise any discretionary authority or discretionary control respecting the administration or management of the Trust. WRS will rely solely on directions from the Tribe and WPT when performing its ministerial duties.

WPT will be responsible for all legal agreements between Wachovia and the Tribe, including documentation regarding the establishment of the Trust and the appointment of Wachovia as Trustee. WRS may provide WPT with agreements and other documents intended to facilitate the administration of the Trust; however, WPT is responsible for reviewing these documents and executing them on behalf Wachovia. WRS does not warrant or otherwise guarantee these agreements and documents to be legally adequate to address the administration of the Trust.

The purpose of this memo is to document the general duties and responsibilities of WRS. The specific services to be provided by WRS are listed on Attachment 1. WRS and WPT understand that this memo will not address every situation that arises with respect to the Services provided by WRS. WPT acknowledges that these situations are to be resolved in such a manner that ensures



46.     The memo outlines the services of Wachovia Retirement Services, including maintaining account valuations, records on all participants, preparation of monthly individual participant statements, process distributions, report distributions and tax reporting.  These services duplicate the same duties Wachovia Personal Trust was assigned to handle through the Trust agreements and in the 2005 Fee schedule with the Tribe.

47.     The Tribe and the Minor beneficiaries were never informed of Wachovia Retirement Services' engagement and any additional fees associated with retention of Wachovia Retirement Services further highlighting the self-dealing the Trustee engaged in to defraud the minor beneficiaries into paying millions of dollars in unsanctioned fees for essentially the same services.

48.     To better understand these additional fees, the Tribe organized a meeting with the Trustee on May 14, 2015.

49.     At the meeting, the Trustee, represented by defendants Joyce, Johnson and Barnhardt, sought to conceal their fraudulent scheme of collecting unauthorized fees from the Tribe by attempting to entice the Tribe to execute a new reduced fee structure.

50.     The new Fee Proposal outlined the current fee structure and proposed restructuring and lowering the fees. Strikingly absent from the fee proposal are all the categories of fees the Trustee was charging the minor beneficiaries. Also absent from the meeting were the minor beneficiaries and/or their guardian(s) to whom the Trustee owed a fiduciary duty to discuss any fee changes. See attached as Exhibit "K"

51.     Furthermore, shortly after the meeting in Spring of 2015 the Trustee admitted to fraudulent charging and collecting unauthorized fees from the tribe minor beneficiaires over the course of multiple years administering the Trust.

52.     During the meeting the Tribe requested account statements, balance figures, total fees charges and other important data from the Trustee which contained necessary information for the Tribe to calculate the extent of the unauthorized fees and further expose the extent of the Trustee's fraudulent scheme.

53.     Instead of promptly providing the Tribe with the requested information, the Trustee engaged in conduct to further conceal and cover up the extent of the Trustee's fraudulent conduct and upon information and belief further attempted to conceal the magnitude of its nefarious scheme.

54.     Incredibly, over the course of the next couple months, the Tribe made follow up requests (no less than eleven (11) times) from defendant Scott and Barnhardt but either received no response or was actively deceived by the Trustee regarding the location and availability of the information.

55.     Instead of providing the information necessary to fully account for the fraudulent fees charged, the Trustee continued to cover up the scope of its misdeeds by offering a miniscule refund of one of the unauthorized fees to placate the Tribe for years of collecting unauthorized fees from the tribe minor beneficiaires.

56.     Fueled by the Trustee's revelations at the May meeting, the Tribe engage in an extensive internal audit of the Trust account to expose the magnitude of the Trustee's fraud and independently account for the fees charged using the incomplete information provided by the Trustee.  Based on the data already in its possession and the minimal information provided by the Trustee, the Tribe attempted to reconstruct the charges from the inception of the trust through present day.

57.    Having little success in internally reengineering the fees charged to the minor beneficiaries the Tribe also engaged the services of a forensic accounting firm.

58.    Using the combined efforts of the Tribe's Accounting Department and the forensic accounting firm the Tribe began to expose a significant amount and types of fees being charged by the Trustee.

## UNAUTHORIZED FEES

### Monthly vs. Quarterly Statements

59.    The audit revealed that Wachovia initially created two different account numbers for the administration of the trust even though both accounts contained the same exact corpus. Instead of sending the Tribe and the minor beneficiaries and their guardians both account statements monthly and reflecting the same information about the fees and expenses being charged, the Trustee created three different sets of account statements:

      a.   a monthly statement sent to the tribal minor beneficiaries which contained no disclosure of fees or expenses charged to the minor beneficiaries;

      b.   a monthly statement sent to the tribe that disclosed some of the fees being charged to the minor beneficiaries; and

      c.   a quarterly statement reflecting some of the same fees and expenses and a host of other fees and expenses, which as explained below, the Tribe believed to be cumulative of the monthly statements.

60.    By splitting the account statements in two, the Trustee created a confusing arrangement that aided the Trustee's ability to conceal and obscure from the Tribe and the minor beneficiaries the complete scope of the fraudulent fees charged for the administration of the trust.

61.     Once the Trustee admitted to the charging of unauthorized fees and explained how they were reported among the differing account statements, it became clear that the account statements were another instrument utilized by the Trustee to deceive the Tribe and the minor beneficiaries and misrepresent the extent of the fees being inappropriately collected.

62.     The statements primarily did not contain adequate information for even a seasoned CPA to properly verify or calculate the amount of Trustee fees charged.  For instance, the Trustee fees are supposed to be calculated based on the average daily balance in the account.  The account statements do not contain daily balance information.  Eventually Wells Fargo provided the Tribe with an excel file containing the daily balance activity for the investment account as well as the transactional data for the account.  Until the tribe learned about the Trustee's fraudulent conduct it had no reason to question the accuracy of the calculations

63.     However, in order to utilize the information in the spreadsheet, the Tribe's and the forensic accounting firm had to employ advanced Excel techniques to write formulas and queries to assemble the data into a useable format. The data then had to be verified back to the account statements and certain data had to be manually reconstructed in order to verify and calculate the fees charged as compared to what should have been charged.  The task was time-consuming and onerous even for CPAs with extensive forensic accounting experience and remains incomplete.

64.     Aside from the permitted trustee fees being charged to the tribe minor beneficiaires, the Trustee was also fraudulently collecting at least six (6) additional unauthorized fees for the administration of the trust namely:

      a.   the aforementioned Wachovia Retirement Service fee ("WRS"),

      b.   a 12b-1 fee,

      c.   a revenue share fee,

    d.  a sub-transfer agency fee, and

    e.  a EB Asset fee, and

    f.  a EB-Trustee/Custodian Trustee Fee.

65.    In an effort to conceal the complete scope of the charges for the administration of the trust, Wachovia and then Wells Fargo, would mail quarterly and annual Statements to the Tribe for the account ending 4550.

# Wachovia Trust Statement

WACHOVIA BANK, N.A
350 E LAS OLAS BLVD, ST 1900
FT. LAUDERDALE, FL 33301

## Account Statement

**Statement Period:** 07/01/2009 - 09/30/2009

**Account Number:** ▮▮▮4550    **IP Number:** ▮▮▮▮▮▮

**Account Title:**    SEMINOLE TRIBE OF FLORIDA
MINOR'S PER CAPITA PAYMENT
TRUST AGREEMENT UAD 11/1/2007
WACHOVIA BANK, NA, TRUSTEE

## For Answers Concerning Your Account Please Contact:

Trust Advisor : BRYAN SINCLAIR
704-427-0936 or 800-745-7996
bryan.sinclair@wachovia com

## Table of Contents:

| | |
|---|---|
| Account Summary | 3 |
| List of Assets . . . . . . . . . . . . . . . . . . . . . | 4 |
| Transaction Detail . . . . . . . . . . . . . . . | 6 |
| Important Information Concerning Your Account . . . . . . . . | 22 |

WACHOVIA BANK, N.A
RISK/FIDUCIARY CONTROL
ATTN. JENNIFER JOYNER
100 N MAIN STREET, NC6785
WINSTON-SALEM , NC 27101



**SEMINOLE TRIBE OF FLORIDA**
**MINOR'S PER CAPITA PAYMENT TRUST**
**AGREEMENT UAD 11/1/2007**
**WELLS FARGO BANK, N.A., TRUSTEE**

TRADE DATE, NOT REVIEWED
ACCOUNT NUMBER ████4550
QUARTERLY STATEMENT
JANUARY 1, 2015    THROUGH MARCH 31, 2015

CEOTID

ACCOUNT CONTACT: KIM SCOTT
TELEPHONE NUMBER:

66.    To further its scheme to defraud, Wachovia and then Wells Fargo would mail monthly and annual statements to the Tribe for the account ending in 0377.



Fiduciary Services

)                                                              )

**WACHOVIA**

WACHOVIA BANK, N.A.                    SEMINOLE TRIBE OF FLORIDA
1525 WEST W.T. HARRIS BLVD, 3C5        MINORS TRUST
CHARLOTTE, NC 28288-1176
                                       WACHOVIA BANK, NA, TRUSTEE

                                       ACCOUNT NUMBER  ████ 0377

ENCLOSED IS YOUR CUSTOMER ACCOUNTING
FOR THE PERIOD FROM 01/01/09 TO 12/31/09
SHOULD YOU HAVE ANY QUESTIONS, PLEASE
CONTACT YOUR CONSULTANT

IF YOU ARE A PARTICIPANT IN THE COMMON TRUST FUNDS,        1    73    3   917 E8555 80945180
A COPY OF THE MOST RECENT ANNUAL REPORT IS AVAILABLE       SEMINOLE TRIBE OF FLORIDA
UPON REQUEST WITHOUT CHARGE.                               JIM RAKER
                                                          6300 STIRLING ROAD
                                                          HOLLYWOOD FL 33024

Generally, the market prices or values of the securities were obtained from independent quotation services.  Where
market prices are not available from quotation services, Wachovia may use such prices, which to the best of its
knowledge reflect the fair market value of such securities.  In either case, these prices should not be considered
to be bids or offers and may be subject to fluctuations in market conditions.  Although the prices are believed to
be accurate, Wachovia does not guarantee the accuracy of such prices.

Gains and losses on the sale, exchange, splits or spin-offs of securities are based on information available at the
end of the statement period.  Because some of this information may not be available to the industry from the
security issuer when needed to produce this statement, certain transactions may be subject to a subsequent
adjustment of the cost basis which may result in a restatement of earnings.
Investments in stocks, bonds, mutual funds and other securities:

| ARE NOT FDIC INSURED | ARE NOT BANK GUARANTEED | MAY LOSE VALUE |
|---|---|---|

Acquisition/Disposition and Purchases/Sales of Loan and Insurance assets are not reflected on the
enclosed statement.  A summary of loan and insurance transactions is being sent under separate cover.
Please note, cash transactions which correspond to loan/insurance assets are listed and categorized
by transaction type (e.g. Loan Principal Repaid, Loan Interest, etc.) in the enclosed statement

Estimated annual income is based on a projection of historical earnings and may not represent actual performance.
Settlement date accountings, purchases and sales of securities are shown as of the contract settlement date
which is normally the third business day after the date of execution (trade date).  Trade date accountings show
transactions based on trade date.



**WELLS FARGO**

RETIREMENT SERVICES
1525 W WT HARRIS BLVD
CHARLOTTE, NC 28262

# SEMINOLE TRIBE OF FLORIDA MINORS TRUST WELLS FARGO BANK, N.A., TRUSTEE

ACCOUNT NUMBER ████ 0377
ANNUAL STATEMENT
JUNE 1, 2010          THROUGH DECEMBER 31, 2010

ACCOUNT CONTACT: DEBRA CHARBONNET
TELEPHONE NUMBER: 954/765-3955

WELLS FARGO BANK, N.A., HEREBY CERTIFIES THAT
THE ENCLOSED STATEMENT FURNISHED PURSUANT TO
29 CFR 2520.103-5(C) IS COMPLETE AND ACCURATE

SEMINOLE TRIBE OF FLORIDA
JIM RAKER
6300 STIRLING RD
HOLLYWOOD FL 33024

MAR 0 3 2011                0301

67.     During the life of the trust, the Tribe adopted an accounting practice to prudently track the activity in the Minor Trust and to prepare the Tribe's accounting records based on the monthly statements provided by the Trustee for account 0377. The Tribe believed the information in the Quarterly Statements for account 4550 was duplicative and had no reason to suspect that the Quarterly Statements were fraudulent or contained different information than the monthly statements. Unbeknownst to the Tribe, the Quarterly Statements sent by the Trustee contained at

22

least three (3) different categories of fees and summarized "expenses" without explanation and was the main vehicle the Trustee used to conceal its fraudulent practices.

68.     Also absent from the monthly 0377 statements were any fee disclosures and absent from **all** of the statements was the market value of the assets in the Minor Trust. This information is necessary to calculate the value of the assets and the fees charged based on the market value. Without this number it is virtually impossible to calculate whether the fees charged to the Tribe were proper (hence the necessity in creating the advanced accounting formulae adopted by the accountants working on this matter)



69.    Although the Trustee provided account information to the Tribe in the monthly and quarterly statements, the Trustee had an absolute fiduciary duty to provide the same or more information to each of the Tribe's Minor Beneficiaries of the Trust. However, **none** of the statements sent to the Tribal Minor Beneficiaries or their guardians reflected any fee charges. Indeed, despite the specific fiduciary duties the Trustee owed to the Minor beneficiaries –who were the ones actually paying the fees – the Trustee purposely omitted from the monthly statements sent to the minor beneficiaries any information regarding fees.





01/03/2013 to 02/02/2013
Page 2 of 2

## INVESTMENT PERFORMANCE

| | 3 Months | Year to Date | 1 Year | 3 Years | 5 Years | 10 Yrs /Since Inception | Inception Date |
|---|---|---|---|---|---|---|---|
| Other | | | | | | | |
| Seminole Tribe Minor Trt | -0.02% | -0.17% | 0.96% | 2.22% | 2.15% | 3.01% | 04/08/03 |

Highlight indicates funds in which you are invested

The performance of the investments in your account may be different from the average annual return for the same investments because the timing of purchases and withdrawals into your account has an impact, either positive or negative on your account return. Past performance is no guarantee of future results.

Fund information contained herein (including performance information) is obtained from reliable sources, including the mutual fund companies, but is not guaranteed by Wells Fargo Bank, N.A. as to completeness or accuracy. Wells Fargo Bank, N.A. shall not be liable for any errors in content or for any actions taken in reliance thereon. Certain funds listed may impose redemption fees on shares that are transferred or exchanged out of the applicable fund before the applicable minimum holding period. An investor should consider the funds, investment objectives, risks, charges and expenses carefully before investing or sending money. This and other important information about the investment company can be found in the fund prospectus. To obtain a copy of the prospectus, please contact the fund company or call a Retirement Service Representative. Please read the prospectus carefully before investing

## INVESTMENT SUMMARY

| | Shares Held | | Price | | Market Value | |
|---|---|---|---|---|---|---|
| | Beginning | Ending | Beginning | Ending | Beginning | Ending |
| Other | | | | | | |
| Seminole Tribe Minor Tr | ■■■ | ■■■ | $12 600 | $12 582 | ■■■ | ■■■ |
| Total Assets | | | | | ■■■ | ■■■ |

## CUSTOMER SERVICE

| | If you want to: | Contact or go to: |
|---|---|---|
| For Questions about the Account | · Update or correct addresses | Representatives Available (954)964-6300 ext 11466 Monday - Friday 9:00am - 4:00 pm |

For questions on this statement. Call (954)966-6300 x11466

Please review the investment and activity information in this statement. If you have any questions regarding this information, please call the Customer Service Line immediately. Failure to advise Wells Fargo promptly, will constitute acceptance of this information as correct, and Wells Fargo will not be responsible for lost earnings

70.     Further, the statements provided to the Minor beneficiaries were misleading as to the success of the investment strategies applied to the Trust principal being held for each beneficiary. Although the statements did contain a line item called "Investment Gain/Loss" and did discuss "investment performance" the statements always gave the impression that the portfolio

was growing in value without making it clear that the growth was actually coming primarily from the added monthly contributions by the Tribe and not prudent investment management by the Trustee. The statements omitted information that the added value was actually being reduced by the fees being charged pro rata to the Minor beneficiary which in some cases exceeded the investment related growth from the same period. As such, a reasonable Minor beneficiary would have no way of knowing that in some instances he or she was actually losing money due to the Trustee's failure to employ prudent investment strategies and the excessive fraudulent fees being charged.

### Wachovia Retirement Services Fee – At Least $6,068,188.79 Fraudulently Overcharged

71.     Following the internal memo between Wachovia Personal Trust and Wachovia Retirement Services, on or about October 2005, Wachovia began implementing its scheme to defraud the minor beneficiaries by charging the minor beneficiaries a Wachovia Retirement Services fee.

72.     This fee only appears on quarterly statements from the account ending in 4550. The monthly statements sent to the Tribe and not to the minor beneficiaries contained absolutely no indication that this fee was being charged by the Trustee. Again, since the Tribe reasonably tracked the accounts using the monthly statements, the Tribe had no reason to suspect other fees were being buried in the supposedly cumulative quarterly statements.

**WELLS FARGO**

PAGE 12

SCHEDULE OF BENEFIT PAYMENTS AND OTHER CASH DISBURSEMENTS
FOR THE PERIOD JULY 1, 2011 THROUGH SEPTEMBER 30, 2011

SEMINOLE TRIBE OF FLORIDA
ACCOUNT NUMBER ▮▮▮▮4550

| DATE | DESCRIPTION | CASH |
|------|-------------|------|
| | **EXPENSES** | |
| | ADMINISTRATIVE EXPENSES | |
| | WELLS FARGO BANK FEE | |
| 7/20/11 | FEE<br>WELLS FARGO BANK FEE | 54,073.48- |
| 8/22/11 | FEE<br>WELLS FARGO BANK FEE | 54,858.96- |
| 9/20/11 | FEE<br>WELLS FARGO BANK FEE | 56,203.01- |
| 9/23/11 | FEE<br>WELLS FARGO BANK FEE | 56,203.01 |
| 9/28/11 | FEE<br>WELLS FARGO BANK FEE | 59,860.60- |
| | TOTAL WELLS FARGO BANK FEE | 168,793.04- |
| | TOTAL ADMINISTRATIVE EXPENSES | 168,793.04- |
| | OTHER EXPENSES | |
| | MISC FEES AND EXPENSES | |
| 7/06/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES ▮▮▮▮ | 86,130.39- |
| 8/02/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES ▮▮▮▮ | 90,402.09- |
| 9/02/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES ▮▮▮▮ | 92,775.18- |

73.     From the information provided to the Tribe it appears that the Trustee continually charged the Wachovia Retirement Services fees to the minor beneficiaries through June 2015 totaling in excess of **$6,068,188.79.** These totals are likely lower than the actual fees charged and

collected by the Trustee because the Trustee has yet to provide the Tribe (or any beneficiary) with documentation and information necessary to accurately calculate the fees. Instead, the Tribe has had to construct sophisticated workarounds in an attempt to roughly estimate the fee totals.

74.     Even with the combined efforts of multiple CPA's the above number is most likely understated since the Tribe is missing information from April 2005 through July 2011. The Tribe has requested this information from Wells Fargo multiple times and Wells Fargo is actively concealing the information from the Tribe to delay or block a complete accounting to the Minor beneficiaries who, to date, the Trustee has failed to notify of any improper.

75.     These statements were and are clearly fraudulent and intended to deceive the minor beneficiaries since they failed to provide daily balances along with other data necessary for any third-party to calculate the total fees.

**Revenue Share Fees – At Least $1,116,444.90 Fraudulently Overcharged**

76.     Another fraudulent charge the Trustee collected from the tribe minor beneficiaires was a revenue share fee collected by the Trustee directly from the various mutual funds in which the Minor Trust funds were invested in during the period from June 2009 to April 2015.

77.     The mutual funds would pay the Trustee a fee for choosing to invest in a particular fund. The fund and the Trustee would enter into a private agreement memorializing this relationship and establishing a revenue share fee. The Tribe was never given access to these agreements and the beneficiaries were never provided notice of this relationship. In fact, this is another piece of information requested by the Tribe from Wells Fargo in early 2015 which has yet to be provided.

78.     When the mutual fund ceased making revenue share payments, the Trustee, with no notice to the minor beneficiaries began charging the minor beneficiaires this fee. From June

2009 through April 2015 the Trustee regularly charged the tribe minor beneficiaires a Revenue Share fee totaling **$1,116,444.90.**

79.     This fee only appears on the quarterly 4550 account statements and was never disclosed on the monthly statements provided to the Tribe or the Minor beneficiaries. Furthermore, these statements only went to the Tribe and never to the minor beneficiaries to whom the Trustee owed a duty to account.

80.     Moreover, the Trustee is under a duty to make affirmative disclosures to the beneficiaries of its intention to undertake a "nonroutine" transaction, and a decision in determining the trustee compensation would fall under this category. However, the Trustee never informed any of the minor beneficiaries of receiving a revenue share kickback from the mutual fund or charging the Tribe this fee.

81.     The Trustee was under a fiduciary duty to inform the minor beneficiaries of the relationship between the fund and the Trustee to allow the minor beneficiaries to evaluate the motivations behind the investment in the particular fund. Instead, the Trustee engaged in an ongoing scheme to intentionally deceive the minor beneficiaries and their guardian(s) through the use of fraudulent account statements. In addition to returning any revenue share fee actually charged directly to the minor beneficiaries, Wells Fargo should also pay back or disgorge any such fee paid by a third party which would have otherwise resulted in better investment returns for the minor beneficiaries.

**Sub-Transfer Agency Fees  – At Least $766,050.40 Fraudulently Overcharged**

82.     The Trustee commenced charging the tribe minor beneficiaires the Sub Transfer Agency Fee on August 2010 and fraudulently charged this fee on a semiregularly basis through February 2015 totaling **$766,050.40.**

83.     This fee appeared on the 0377 account statements which only went to the Tribe and was never sent to the minor beneficiaries to whom the Trustee owed a duty to disclose. However, since these statements were created to intentionally deceive the Tribe and the minor beneficiaries, the Tribe and the minor beneficiaries were indeed fooled into believing these fees fell under the umbrella of the approved Trustee fee. Also, had the Tribe attempted to calculate the fees to

30

determine if this was indeed part of the fee schedule or exceeded the approved fees, the 0377 statement intentionally lacked vital information to reengineer the totality of the fees.



```
WELLS
FARGO
                                                                        PAGE 1

RECONCILIATION OF MARKET VALUE                    SEM TRIBE MINORS TR
FOR THE PERIOD JANUARY 1, 2011   THROUGH DECEMBER 31, 2011    ACCOUNT NUMBER ████0377

  BEGINNING MARKET VALUE                                              668,695,892.83

  EARNINGS ON INVESTMENTS
    REALIZED GAIN/LOSS                            43,543.04
    UNREALIZED GAIN/LOSS                          22,█████████
    ██████████████████████
                                                                      22,865,101.87

  CONTRIBUTIONS
    EMPLOYEE CONTRIBUTIONS
      EMPLOYEE PRE-TAX CONTRIBUTIONS             153,525,000.00
      TOTAL EMPLOYEE CONTRIBUTIONS                                   153,525,000.00
    TOTAL CONTRIBUTIONS                                              153,525,000.00

  BENEFIT PAYMENTS
    NON-PERIODIC PAYMENTS                         -3,209,393.92
      TOTAL BENEFIT PAYMENTS                                          -3,209,393.92

  FEES OTHER THAN NEW LOAN FEES
    ██████████████                                  █████████
      TOTAL FEES OTHER THAN NEW LOAN FEES                              -575,986.94

  ENDING MARKET VALUE                                                841,300,613.84
```

## EB-Trustee/Custodian Trustee Fees – At Least $636,349.35 Fraudulently Overcharged

84.     The Trustee also commenced charging the tribe minor beneficiaires the EB- Asset Fee in August 2005 and semiregularly charged this fee through June 2015 totaling in excess of **$636,349.35**

85.     This fee also appeared on the 0377 account statements which were only sent to the Tribe and was never mailed to the minor beneficiaries to whom the Trustee owed a duty to disclose. Again, based on the intentionally misleading nature of the name of the fee as a "Trustee / Custodian Fee" and obvious lack of sufficient information in the 0377 statement to enable the tribe to accurately calculate the basis for the fee, the Tribe reasonably believed this was part of the agreed upon Trustee fees and not an additional fee not previously agreed upon.



**EB Asset Fee – At Least $80,326.87 Fraudulently Overcharged**

86.     The Trustee commenced charging the tribe minor beneficiaires the EB - Asset Fee in September 2005 and routinely charged the tribe minor beneficiaires this fee through April 2007 totaling in excess of **$80,326.87.**

87.     Again, this fee only appears on the 0377 account statement, which the Trustee only mailed to the Tribe and not to the minor beneficiaries to whom the Trustee owed a duty to disclose. This statement was an instrument created by the Trustee to intentionally deceive the Tribe and the minor beneficiaries and assist the Trustee in concealing the extent of fees being collected for the administration of the trust. Not only were these statements constructed to fool an unsophisticated party like the minor beneficiaries the statements were also obscure enough to confuse a team of forensic accountants.

33

| FOR THE PERIOD 01/01/05 THROUGH 12/31/05 | SCHEDULE OF FEES AND OTHER EXPENSES SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST | | PAGE 19 ACCOUNT # ████ 0377 |
|---|---|---|---|

| DATE | DESCRIPTION | CASH |
|---|---|---|
| | PAYMENT OF TRUSTEE FEES | |
| 08/26/05 | EB - TRUSTEE FEE - EFFECTIVE 08/25/05 | 9,368.00 |
| 09/19/05 | EB - TRUSTEE FEE - EFFECTIVE 09/16/05 | 3,208.00 |
| 10/26/05 | EB - TRUSTEE FEE - EFFECTIVE 10/25/05 | 3,216.00 |
| 11/03/05 | EB - TRUSTEE FEE - EFFECTIVE 11/02/05 REBATE FEE FOR NOV | 18,655.03 |
| 11/14/05 | EB - TRUSTEE FEE - EFFECTIVE 11/10/05 REBATE FEE FOR NOV | 4,817.09 |
| 11/23/05 | EB - TRUSTEE FEE - EFFECTIVE 11/22/05 | 3,184.00 |
| 12/16/05 | EB - TRUSTEE FEE - EFFECTIVE 12/15/05 | 3,224.00 |
| 12/22/05 | EB - TRUSTEE FEE - EFFECTIVE 12/21/05 REBATE FEE FOR DEC | 5,265.33 |
| TOTAL PAYMENT OF TRUSTEE FEES | | 50,937.45 |
| | PAYMENT OF ASSET FEES | |
| 09/12/05 | ████████ 09/09/05 FOR FUND: SEMINOLE TRIBE MINOR T CUSIP: 996106845 ASSET TYPE: STANDARD | 1,285.13 |
| 09/15/05 | ████████ SEMINOLE TRIBE MINOR TRUST FUND | 3,655.67 |

## 12B-1 Fees – At Least $19,189.51 Fraudulently Overcharged

88.     The Trustee also commenced charging the tribe minor beneficiaires a 12B-1 fee on

August 2011 and routinely charged the tribe minor beneficiaires this fee through May 2014.

Again, this fee only appears on the quarterly 4550 account statements and was never disclosed on

the monthly statements provided to the Tribe or the minor beneficiaries and these statements were

only delivered to the Tribe and never to the minor beneficiaries to whom the Trustee owed a duty

to disclose.

34

```
WELLS
FARGO                                                                    PAGE 13

SCHEDULE OF BENEFIT PAYMENTS AND OTHER CASH DISBURSEMENTS          SEMINOLE TRIBE OF FLORIDA
FOR THE PERIOD JULY 1, 2011 THROUGH SEPTEMBER 30, 2011            ACCOUNT NUMBER ████4550

    DATE              DESCRIPTION                                      CASH


                      TOTAL MISC FEES AND EXPENSES                  269,307.66-


    9/07/11           CASH DISBURSEMENT
                      PAID TO WELLS FARGO BANK, N.A
                      12B-1 FEE
                      12B-1, REV SHARE, AND/OR SHAREHOLDER SERVICING FEE
                      08/2011,VP7000236,WF ADV HERITAGE SELECT



                      TOTAL OTHER EXPENSES                          269,816.09-
                      TOTAL EXPENSES                                438,609.13-

                      OTHER CASH DISBURSEMENTS

                      OTHER MISC DISBURSEMENT

    7/08/11           CASH DISBURSEMENT                             144,155.34-
                      PAID TO
                      OTHER MISC DISBURSEMENT

    7/12/11           CASH DISBURSEMENT                              48,859.38-
                      PAID TO
                      OTHER MISC DISBURSEMENT

    8/09/11           CASH DISBURSEMENT                              29,134.30-
                      PAID TO
                      OTHER MISC DISBURSEMENT

    8/10/11           CASH DISBURSEMENT                             129,226.23-
                      PAID TO
                      OTHER MISC DISBURSEMENT

    9/07/11           CASH DISBURSEMENT                             461,091.55-
                      PAID TO
                      OTHER MISC DISBURSEMENT
```

89.   From the information the Tribe already possessed it appears through June 2015 the Trustee has fraudulently charged the tribe minor beneficiaires in excess of **$19,189.51.**

90.   Again, Wells Fargo has repeatedly failed to provide and has actively concealed information necessary for the Tribe to determine the frequency and amounts actually charged. In particular, Wells Fargo remains in possession of statements from April 2005 through July 2011 for the account ending in 4550 which would allow the Tribe to determine how much more the Trustee fraudulently charged and collected from the minor beneficiaries.

## MISMANAGEMENT OF TRUST

91.     With the amount of fees the Trustee was fraudulently collecting from the minor beneficiaries for the administration of the Minors' Trust and the amount of money in the trust, the Trust should have historically outperformed the market, however, the Trustee's conduct relating to the administration of the trust and the adoption of imprudent investment strategies have left the performance of the trust floundering. The Trust's performance has been stifled by the investment strategies adopted by the Trustee and the fees charged to the tribe minor beneficiaires for the administration of the Trust are directly impacting the corpus of the Trust.

92.     The Trustee was all too happy to collect these fraudulent fees and allow the Trust corpus to incur significant losses. The Trustee seldom took any action to increase the profitability of the Trust and was content on allowing the Trust to auto-pilot itself into troubled waters.

93.     For example, it is a per se violation of Florida's Prudent Investor to fully invest the funds of the Minors' Trust in a single asset class and failing to diversify these funds over the life of the Trust.

94.     "The prudent investor rule requires a trustee not to avoid risk altogether but rather to evaluate the beneficiaries' risk tolerance and the purpose of the trust, choose a commensurate level of overall market risk and expected return, and avoid wasteful idiosyncratic risk." Dukeminier and Sitkoff (2013, p. 635)

95.     The Trustee is under an ongoing duty to monitor investments and to make portfolio adjustments if and when appropriate, however, none of that took place. While the Trustee was collecting exorbitant fraudulent fees from the minor beneficiaries the Trust was underperforming since the funds were fully invested in government bonds, short terms debt, mutual funds and short term treasuries. Essentially the portfolio lacked any risk.

36

96.     Even a minimal 10% adjustment to the allocation of the portfolio would have dramatically increased the gains to the Trust corpus.

97.     However, the Trustee grossly negligently failed to prudently invest the funds and adequately match the risk profile to the beneficiaries. The Tribal minors are in a unique economic position to tolerate more risk than the average American. For example, college tuition, one of the biggest financial burdens in a lifetime, is covered by the Tribe for its members. This additional "benefit" should have been considered when implementing an investment strategy.

98.     The Trustee's failure to prudently invest the Trust funds has caused the Minor Trust to underperform and has caused the minor beneficiaries and the Tribe to sustain in excess of $100,000,000 in damages for the loss of value.

99.     The adoption of these strategies by the Trustee was a direct result of gross negligence, ineptitude and inertia of officers acting as agents of and on behalf of the Trustee for the benefit of the minor beneficiaries. Specifically, throughout the life of the Trust defendant's Charbonnet, Carris, Spelane, Joyce, Scott, Barnhardt and Johnson all incompetently and in a grossly negligent manner adopted an imprudent portfolio.

100.    Astonishingly, at some points over the life of the Trust the fees exceeded the funds earned on the account. In 2013, the account suffered losses exceeding $90,000 – in other words the realized losses on investments exceeded all gains and earnings on the account for the entire year. Yet during that same time period, the Trustee charged the minor beneficiaries more than $1.8 million in fees, further highlighting the Trustee's incompetence and gross negligence managing the trust.

101.    In both 2014 and 2015, the fees consumed more than 25% of the income and investment gains earned on the account. Total income and realized gains for 2014 was

approximately $8 million and the fees charged by the Trustee were $2.1 million – equating to approximately 26% of the income earned on the account. In 2015, that figure increased to an astronomical 32% of the earnings.

102.    The performance of the Trust also directly impacts the Tribe's financial stability in its role providing essential government services. Having received a smaller distribution upon obtaining the age of eligibility the now adult Tribal members must rely upon government services more heavily causing a drain on the limited tribal resources.

103.    Furthermore, throughout the life of the Minors' Trust the Trustee made significant changes to both the fee schedules and the investment portfolio. The Trustee was under a duty to make affirmative disclosures to the minor beneficiaries of its intention to undertake "nonroutine" transactions, and a decision in determining the trustee compensation and important adjustments being considered in investment or other management strategies would fall under this category. However, the Trustee never informed any of the minor beneficiaries of the fraudulent fees or dramatic change in prudent investment strategies.

104.    The amendments to the fee schedules were also opportunities for the Trustee to inform the Tribe and the minor beneficiaries of the scope of the fraudulent fees being charged. However, the Trustee purposely omitted and misrepresented information about the scope of fees to the Tribe or the minor beneficiaries.

105.    Coupled with the fact that the Minor Trust was collecting millions of dollars in fraudulent unauthorized fees, the minor beneficiaries having lost over a hundred million dollars in value due to grossly negligent investing practices and the Tribe now burdened with having additional members reliant upon government services, it is apparent that the Trustee fraudulently and grossly neglected its duties.

## PARTIES

106.    Plaintiff, Seminole Tribe of Florida is a federally recognized Indian tribe and maintains its governmental headquarters in Broward County, Florida.

107.    Plaintiff, JOHN DOE 1 is a current Beneficiary of the Minors Trust who is over the age of 18 but has not received a distribution and is a qualified beneficiary under the Trust.

108.    Plaintiff, JOHN DOE 2 is an adult Tribal Member who used to be a beneficiary but received a distribution under the Trust after January 13, 2012.

109.    Plaintiff, JOHN DOES 3 is an adult guardian/parent of a current minor beneficiary of the Minors Trust who is under the age of 18 and has yet to receive a distribution.

110.    Defendant, WELLS FARGO BANK, N.A. is a national bank doing business under the laws of the United States and is the legal successor in interest to Wachovia. At all times each individual Defendant identified below was acting as an agent of and on behalf of the Trustee in implementing the fraudulent charges and the imprudent investment strategy.

111.    Defendant, MELISSA LADER BARNHADT is an individual and currently Senior Vice President, Senior Fiduciary Advisory Specialist Wells Fargo Bank and is subject to personal jurisdiction in Florida because she is a resident of Florida and under Florida Statute section 48.193(1)(a) she has engaged in business in Florida in her role as the relationship manager for Wells Fargo.

112.    Defendant, DEBRA CHARBONNET is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because she is a resident of Florida and has engaged in business in Florida in her role as the relationship manager for Wachovia.

113.    Defendant, THOMAS JOYCE is an individual and currently the Senior Trust and Fiduciary Manager Senior Vice President at Wells Fargo and is subject to personal jurisdiction in

Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

114.    Defendant, TERRI JOHNSON is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

115.    Defendant, KIM SCOTT is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

116.    Defendant, MARC SPELANE is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

117.    Defendant, MICHAEL S. CARRIS is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f),

because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

118.    Defendant, MARK LAKE is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

## JURISDICTION AND VENUE

119.    This Court has jurisdiction over the claims as the amount in controversy exceeds $15,000.00, exclusive of interest, costs, and attorney's fees.

120.    Venue is proper in the Circuit Court for the 17th Judicial Circuit, in and for Broward County, Florida, because it is where the causes of action accrued, where one or more of the Plaintiffs reside, and where many of the underlying events alleged in this Complaint occurred.

121.    All conditions precedent to the commencement and prosecution of this action, if any, have been performed, waived, satisfied, or excused. Plaintiffs have retained the undersigned counsel and are obligated to pay them a reasonable fee for their services.

122.    All the allegations contained in this Complaint arise out of the conduct associated with interests in Broward County, Florida.

## CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
### (By Plaintiffs Against All Defendants)
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for breach of fiduciary duty.

123.    The defendants undertook a duty to advise, counsel and protect the plaintiffs in directing, managing and investing the funds under their control. As defendants owed Plaintiffs a fiduciary duty.

124.    As Trustee, Wells Fargo owes a fiduciary duty to the minor beneficiaries under the Minors' Trust agreement.

125.    The Defendants have a fiduciary duty to deal honestly and with good faith towards the minor beneficiaries.

126.    Defendants breached their fiduciary duty, through the improper collection of unauthorized fees and absence of good faith by otherwise engaging in the wrongful conduct described herein.

127.    The defendants breached their fiduciary duty by failing to invest the trust funds in such a way as to protect the corpus and generate the income required to provide for the beneficiaries.

128.    The breach of the fiduciary duty resulted in and was the proximate cause of the damages suffered by the Plaintiffs.

WHEREFORE, the plaintiffs demand judgment for damages against the defendants, in an amount to be determined at trial, attorneys' fees and costs pursuant to Florida Statute § 736.1004, and respectfully request the Court grant such further relief it deems just, fair and equitable.

## Count II– Gross Negligence
### (By Against All Defendants)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for negligence

129.    When Wells Fargo took over the trust as part of its acquisition of Wachovia, it undertook the obligations imposed on the trustee as stated in the governing trust document.

130.     Wells Fargo had a duty and obligation to the Plaintiffs under the law as a Trustee

of the Trust and a fiduciary to the Plaintiff to conform to certain standards of conduct for the

protection of the Plaintiff against unreasonable risks.

131.     Wells Fargo did not conform to the standards required as evidenced by its breach

of trust and breach of fiduciary duties towards the Plaintiff. Wells Fargo breached that duty by

failing to preserve the trust corpus and investing in an imprudent manner.

132.     As further alleged herein, Wells Fargo's' and its representative's conduct constitute

an extreme departure from the ordinary standard of conduct. Such outrageous lack of care

represents an extreme departure from the ordinary standard of conduct.

133.     The plaintiffs have suffered injury as result of Wells Fargo's actions, lack of

appropriate actions and great indifference to the Plaintiff's rights as a result of its gross negligence

and other dereliction of duties which amount to a reckless and careless disregard for the interests

of the Tribal Minor Beneficiaries to whom they owed the utmost highest duty of loyalty and trust.

134.     The injury and the damages sustained by the plaintiffs was the legal and proximate

cause of the grossly negligent conduct of the defendant's.

WHEREFORE, the plaintiffs, demand judgment for damages against the defendants, in an

amount to be determined at trial, attorneys' fees and costs pursuant to Florida Statute § 736.1004,

and respectfully request the Court grant such further relief it deems just, fair and equitable.

### Count III – Breach of Trust
**(By Plaintiff Against Wells Fargo, Barnhardt, Johnson and Joyce)**

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as
through fully alleged in this claim for Breach of Trust

135.     The defendants had a duty to in direct, manage and invest the trust corpus under

their control.

136. As Trustee, Wells Fargo owes a duty to the minor beneficiaries under the Minors' Trust agreement.

137. The defendants had a duty invest the trust funds in such a way as to protect the corpus and generate the income required to provide for the beneficiaries.

138. The defendants breached their duty by adopting an imprudent investment strategy and failed to take into account the appropriate risk profile of the beneficiaries.

139. The defendants then breached their duty by failing to inform the beneficiaries of any change in investment strategies.

140. The defendants also breached their duty by failing to provide an adequate accounting of the Trust to the Minor beneficiaries or their guardians as required under the governing trust documents.

141. The breach of the fiduciary duty resulted in and was the proximate cause of the damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against defendants Wells Fargo, Barnhardt, Johnson and Joyce for specific performance, damages, costs, prejudgment interest, and any other relief as the Court deems just and proper.

### Count IV– Professional Malpractice
### (By Plaintiffs Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 122 as through fully alleged in this claim for professional malpractice

142. Wells Fargo was employed by the Tribe to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

143. Wells Fargo breached its duty of care to the beneficiaries. Wells Fargo failure to adopt prudent investment strategies and its collection of unauthorized fees amounted to a breach of Wells Fargo's duty of care.

44

144.    Had Wells Fargo adopted generally accepted practices for the trust portfolio the trust corpus would be greater and the beneficiaries would be eligible for larger distribution upon reaching the age of majority.

145.    Wells Fargo's negligence was the legal and proximate cause of damages to the Tribe.

WHEREFORE, Plaintiffs requests that the Court enter judgment in its favor and against Defendant Wells Fargo for damages and costs, and any such other relief the Court deems appropriate.

### Count V – Unjust Enrichment
### (By Plaintiffs Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for unjust enrichment.

146.    Plaintiffs provided benefits to Wells Fargo by paying fees for the administration of the Minor's Trust.

147.    Wells Fargo voluntarily accepted the payments of unauthorized fees, such as, the the WRS fee, a 12b-1 fee, a revenue share fee, a sub-transfer agency fee, and a EB Asset fee and EB-Trustee/Custodian Trustee Fee appreciated the value of the benefit conferred upon them, and retained this benefit.

148.    It would be inequitable for Wells Fargo to retain those benefits because those charges were not disclosed and the statements never fully disclosed the entire universe of charges.

149.    As a direct and proximate result, Wells Fargo has been unjustly enriched by the retention of those unauthorized charges to the minor beneficiaries. In equity and good conscience the fees should be returned to the minor beneficiaries.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for damages, prejudgment interest, costs, and any other relief as the Court deems just and proper.

## Count VI– Accounting
### (By Plaintiffs Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for an accounting.

150.    The Tribe has an interest in the performance of the Minors' Trust.

151.    The Defendant had a duty to provide accountings under the terms of the Trust and Florida Statute 736.08135.

152.    All accountings made to date have been incomplete, missing information and do not even qualify as informal accountings. Wells Fargo, as Trustee has not provided the minor beneficiaries with an adequate accounting or information for the minor beneficiaries to calculate the fees collected during the life of the trust.

153.    There is an inadequate remedy at law as to the financial information.

154.    The Plaintiff asks the Honorable Court, to order the Defendant to provide an accounting for the period between April 20, 2005 and the present that comply with all Florida Statutes. This will result in an accounting that is clear, complete and in a form that a minor beneficiary can understand.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for an accounting of fees charged and collected by Wells Fargo and all subsequent trustees in their role administering the Minors' Trust.

## Count VII – Violation of Prudent Investor Rule
### (By Plaintiff Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for Violation of Fla. Stat. 518.11.

155.   Wells Fargo was appointed by the Tribe as Trustee for the 2012 Minors' Trust to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

156.   Florida Statute 518.11, Investments by Fiduciaries, Prudent Investor Rule, is a set of duties that a fiduciary must follow.

157.   Wells Fargo never complied with any of those duties, including but not limited to consulting the minor beneficiaries about the investment objectives of the Trust. The Defendant never reviewed the investments of the Trust to evaluate the investments according to market conditions. The majority of the assets of the trust were left to languish in a money market fund. There was no overall investment strategy. There was no attempt to diversity the investments or to make investments that were in the interests of the minor beneficiaries.

158.   Wells Fargo never pursued an investment strategy in accordance with Florida Statute 518.11 that considered both the reasonable production of income and safety of capital, consistent with the fiduciary's duties and purposes of the trust.

159.   Wells Fargo never considered the general economic conditions, the role each investment played within the overall portfolio, or the expected total return including both income yield and appreciation of capital.

160.   Florida requires a fiduciary to invest and manage investment assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust.

47

161.    Wells Fargo was required to exercise reasonable care and caution in the creation and management of the investment portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust.

162.    Wells Fargo breached its duty of care to the beneficiaries. Wells Fargo failed to adopt prudent investment strategies and failed to follow generally accepted practices for the investment of the trust portfolio.

163.    Wells Fargo failed to takes all the steps a reasonable investor would take to properly manage the Minor Trust investment portfolio and breached his fiduciary duties by not following the prudent investor rules explicitly defined by Florida Statute 518.11.

164.    Wells Fargo's negligence was the legal and proximate cause of damages to the beneficiaries.

WHEREFORE, Plaintiffs requests that the Court enter judgment in its favor and against Defendant Wells Fargo for damages and costs, and any such other relief the Court deems appropriate.

## Count VIII– Fraud
### (By Against Wells Fargo, Barnhardt, Scott, Johnson and Joyce)
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for negligence

165.    Wells Fargo was appointed by the Tribe as Trustee for the 2012 Minors' Trust to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

166.    Wells Fargo knowingly and fraudulently charged and collected millions of dollars in unauthorized fees from the minor beneficiaries, such as, the WRS fee, a 12b-1 fee, a revenue share fee, a sub-transfer agency fee, and a EB Asset fee and EB-Trustee/Custodian Trustee Fee.

167.    Wells Fargo and its agents/representatives has admitted in collecting unauthorized fees from the minor beneficiaries.

168.    Wells Fargo intended that the Trust statements would conceal the entire extent of fees being charged to the minor beneficiaries so that Wells Fargo could continue serving as Trustee to the Minors' Trust. The minor beneficiaries reasonably believed that the misleading statements were the full embodiment of the fees negotiated with Wells Fargo.  Had the minor beneficiaries known the statements were structured to conceal millions of dollars in unauthorized fees, Plaintiffs would not have continued the relationship with Wells Fargo.

169.    In addition, Defendants Barnhardt, Scott, Johnson and Joyce have engaged in an ongoing to scheme to frustrate the minor beneficiaries from obtaining the information necessary to fully account for the fraudulent fees charged.  For months the Tribe, on behalf of its minor beneficiaries, have made numerous requests (no less than eleven (11) times) from defendant Scott and Barnhardt but either received no response or was advised that the information was being located.

170.    Instead of providing the information necessary to fully account for the fraudulent fees charged, Barnhardt, Scott, Johnson and Joyce attempted to cover up the scope of its misdeeds by offering a miniscule refund of one of the unauthorized fees and a reduced fee structure to placate the Tribe for years of collecting unauthorized fees from the tribe minor beneficiaires

171.    As a direct and proximate result of the fraud by Defendant's Wells Fargo, Barnhardt, Scott, Johnson and Joyce, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for damages, prejudgment interest, costs, and any other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

DATED this 12th day of January, 2016.

/s/ALBERT L. FREVOLA, JR.
William R. Scherer
Florida Bar No. 169454
wscherer@conradscherer.com
ALBERT L. FREVOLA, JR.
Florida Bar No. 857416
afrevola@conradscherer.com
JACK S. KALLUS
Florida Bar No. 56111
jkallus@conradscherer.com
CONRAD & SCHERER, LLP
633 S. FEDERAL HIGHWAY 8 FL
FORT LAUDERDALE, FL 33301
Tel.: (954) 462-5500
Fax: (954) 463-9244
*Attorneys for Plaintiffs*



RE: SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

SEMINOLE TRIBE OF FLORIDA
HOLLYWOOD, FLORIDA

## RESOLUTION NO. C-157-05

WHEREAS, the Seminole Tribe of Florida is an organized Indian Tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

WHEREAS, the Tribal Council, by Ordinance No. C-01-05, approved a new Seminole Tribe of Florida Revenue Allocation & Per Capita Distribution Plan (hereinafter "Plan"); and

WHEREAS, the Tribal Council, the governing body of the Seminole Tribe of Florida, proposes to create a grantor trust (hereinafter "Minors' Trust") for the benefit of the Seminole Tribe of Florida's current and future Minor Qualified Enrolled Tribal Members (hereinafter "Minors") which would comply with the requirements of the Indian Gaming Regulatory Act and the Plan; and

WHEREAS, Section 7 of the Plan provides for the deposit of any per capita distribution payments in excess of $3,500.00 of the Minors during any month into the Minors' Trust created for the benefit of such Minors as approved by the Tribal Council for the future health, education and welfare of said Minors; and

WHEREAS, each Minor's share in the Minors' Trust shall be separately accounted for. Per capita payments deposited into the Minors' Trust shall be invested with income earned being allocated among the shares of the Minors in respect to the principal allocated to such shares for future distribution. The principal and income allocated to the Minor's share of the Minors' Trust may be distributed or applied for the benefit of such Minor as provided for in the Minors' Trust. The independent trustee shall distribute the remaining principal and any accumulated income allocated to said Minor's share of the Minors' Trust as and when the Minor attains the age of 18 unless the Minor is incompetent or incarcerated. In that event, the independent trustee shall distribute the Minor's entire accumulated share of the Minors' Trust to the acting independent trustee of the Seminole Tribe of Florida Incompetent Members Per Capita Payment Trust Agreement or Seminole Tribe of Florida Incarcerated Members Per Capita Payment Trust Agreement, as applicable, then in existence to be held as a separate share for the benefit of the former Minor.; and

WHEREAS, the Treasurer of the Seminole Tribe of Florida recommends the establishment of the Minors' Trust and the appointment of Wachovia Bank, N.A. as the independent trustee for the Minors' Trust pursuant to a proposed Minors' Per Capita Payment Trust Agreement, a copy of which is attached hereto, marked Exhibit "A," and by this reference is incorporated herein; and

WHEREAS, the Tribal Council having reviewed the proposed Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement is otherwise fully advised



**EXHIBIT**

A

RE:   SEMINOLE TRIBE OF FLORIDA MINOR'S PER CAPITA PAYMENT TRUST AGREEMENT

RESOLUTION NO. C-157-05

PAGE 2 OF 2

NOW THEREFORE BE IT RESOLVED:  that the Tribal Council of the Seminole Tribe of Florida hereby approves the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A.; and

BE IT FURTHER RESOLVED:  that the Chairman of the Tribal Council is hereby authorized and directed to execute the  Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A. with the Secretary of the Seminole Tribe of Florida to attest to his signature; and

BE IT FURTHER RESOLVED:  that the Treasurer of the Seminole Tribe of Florida is hereby authorized and directed to deposit the designated portion of the Minors' per capita payments into the Minors' Trust in accordance with the Plan and the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A.; and

BE IT FURTHER RESOLVED:  that Wachovia Bank, N.A. is hereby appointed as the Independent trustee for the Minors' Trust and the Treasurer of the Seminole Tribe of Florida is hereby authorized and directed to compensate Wachovia Bank for its services as the Independent trustee for the Minors' Trust; and

BE IT FURTHER RESOLVED:  that this Resolution is hereby adopted after a motion made by _Max B. Osceola, Jr., seconded by David R. Cypress, and a roll call vote as follows:

     Chairman Mitchell Cypress..................................................... .....AYE
     Vice-Chairman Moses B. Osceola.............................................. .....AYE
     Council Representative David R. Cypress.................................. .....AYE
     Council Representative Roger Smith........................................ .....AYE
     Council Representative Max B. Osceola, Jr................................. .....AYE

DONE THIS THE 20TH DAY OF April, 2005, at a special meeting of the Tribal Council, duly convened at the Big Cypress Seminole Indian Reservation, Hendry County, Florida, with a quorum being present, by a vote of 5 For, 0 Against, with 0 Abstentions.

Chairman
TRIBAL COUNCIL

ATTEST:

Secretary
TRIBAL COUNCIL

*Signed Minors Trust Docs*

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT
### (Terminates at Age 18)

THIS AGREEMENT is made as of the _20_ day of _April_, 2005,

between the SEMINOLE TRIBE OF FLORIDA, a federally recognized tribe under 25 U.S.C. §476

(hereinafter referred to as the "Grantor"), and WACHOVIA BANK, NATIONAL ASSOCIATION,

a national banking association, and its successors in interest by merger (hereinafter together referred

to as "Trustee").

### WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor

Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").

Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and

all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust

Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and

purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as

the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT".

### ARTICLE I

### IRREVOCABLE GRANTOR TRUST

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the

Internal Revenue Code, and that it be irrevocable. Grantor may, at any time, and from time to time,

demand that the Trustee transfer to the Tribe such asset or assets of any separate trust or share

created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et. seq. ("IGRA").

## ARTICLE II

## PURPOSE

Grantor intends for this Trust to comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she attains the age of eighteen (18) years and to make distributions pursuant to the terms of this trust prior to the time such Minor Qualified Enrolled Tribal Member attains the age of eighteen (18) years as may be required to provide for his or her extraordinary or emergency medical needs as determined hereunder.

## ARTICLE III

## DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

A.    Division. One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article X, to which each beneficiary is entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the

trust shall be administered and accounted for it as though it were a separate trust. A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate trusts be combined for ease of administration, provided that the separate character of the beneficiaries' shares be preserved. The Trustee shall account for the interest of each beneficiary separately, and a trust account statement shall be available at least quarterly to Guardian of the beneficiary.

    B.    **Distributions**.

        1.    *Discretionary Payments.* The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate trust share and, after paying from each beneficiary's separate trust share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein. If, before any beneficiary reaches the age of eighteen (18) years, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary may request a distribution from the beneficiary's share of the trust to apply to such purpose, either through reimbursement of documented and verified expenditures made for the benefit of the beneficiary or payments to be made to a third party. Any decision of the Trustee to invade the beneficiary's separate trust share for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions made hereunder shall be from income first and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no

distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed when he or she attains the age of eighteen (18) years pursuant to Article III, B. 3.

        2.    Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

        3.    Upon Attaining the Age of Majority. Except as otherwise provided herein, upon any beneficiary attaining the age of eighteen (18) years, the Trustee shall distribute that beneficiary's entire accumulated share of the trust outright to him or her, or to the Grantor or Grantor's designee to effect such distribution to such beneficiary. In the event that a beneficiary is incarcerated in any penal institution or detention facility upon the beneficiary's attaining age eighteen (18) years, the Trustee shall instead distribute the beneficiary's entire accumulated share of the trust to the acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED MEMBERS PER

CAPITA PAYMENT TRUST AGREEMENT then in existence to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. In the event that a beneficiary is incompetent (as determined under Tribal guidelines) at the time he or she attains the age of eighteen (18) years, such beneficiary's entire accumulated trust shall instead be distributed to the acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCOMPETENT MEMBERS PER CAPITA PAYMENT TRUST AGREEMENT then in existence to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. Trustee shall not have a duty to see to the proper application of the distributed funds and Trustee's receipt shall serve as full acquittal of its obligations hereunder.

  4. <u>Notice of Distributions</u>.  Trustee agrees to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder, except for those which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1.

  5. <u>Confidentiality</u>.  Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

  6. <u>Death of Beneficiary</u>.  In the event a beneficiary dies before he or she attains the age of eighteen (18), his or her share of the trust shall terminate and any assets remaining in the trust at his or her death, including any accrued net income, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe Probate Code, as if the beneficiary had then died intestate and without creditor, or if such Code is not then in existence, or if there be no such person entitled to receive those assets under such Code, then to those persons who would then be entitled to receive such assets under the Florida Probate Code, as if the beneficiary had then died

intestate and without creditor as a resident of Florida.

## ARTICLE IV

### TRUSTEE SUCCESSION

A.      The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

B.      Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.      Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.      Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee, from the duty to audit the acts or accounts of any prior trustee, or from duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.      The Guardian of a beneficiary shall receive notice and have authority to act for such beneficiary under this Article.

F.      No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court. Grantor expressly waives compliance

by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

G.    Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to it any or all of his or her powers.

H.    Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control.  The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

## ARTICLE V

## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.    Transfer to New Minor's Trust.  In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.    Spendthrift Provisions.  The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered.  No title in any share shall vest in a beneficiary prior to distribution.  No beneficiary shall have a preferred claim on, or any

FTL:1319418:6

beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.     Accrued and/or Undistributed Income. Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest, subject, however, to any power of appointment hereinabove given.

## ARTICLE VI

## TRUSTEES' POWERS, DUTIES AND DISCRETION

A.     Powers. Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.     To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

2.     To invest and reinvest in any and all kinds of securities, domestic or foreign, including common and preferred stocks, bonds, mutual funds, commodities, options (covered and uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on property; and money market funds, commercial paper, repurchase agreements, United States Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash investment medium; and investment trusts and in common trust funds; and any real property (including a private residence); and any personal or mixed property; and any business, mining or farming operation or other venture; or in any other interest or investment medium, including the purchase of insurance on the life of any individual, even if such investment would not be of a character authorized by applicable law but for this provision, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries;

3.     To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4.    To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5.    To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6.    To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

7.    To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8.    To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9.    To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10.   To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

11.   To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.   To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution. Any property distributed in kind shall be valued at the date of distribution. No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.   To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14.     To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15.     Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16.     To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

17.     To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.      <u>Accountings and Compensation</u>.  Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor.  Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered.  The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time.  Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees.  Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C.      <u>Discretion</u>.

1.      The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the

FTL:1319418:6

payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.    It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

D.    <u>Right of Guardian to Direct Investments</u>.  The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more investment alternatives as are approved by the Tribe from time to time.  In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

<div align="center">

**ARTICLE VII**

**TRIBAL SOVEREIGNTY**

</div>

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

<div align="center">

**ARTICLE VIII**

**INQUIRIES BY THIRD PARTIES**

</div>

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or

trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

## ARTICLE IX

## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE X

## DEFINITIONS

A. Code. All references herein to the "Internal Revenue Code" or to the "Code" shall refer to the Internal Revenue Code of 1986 as it now exists or may hereafter be amended or any substitute Federal Internal Revenue Code subsequently enacted.

B. Corporate Trustee. Whenever used herein, the term "Corporate Trustee" shall mean any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

C. Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member.

D. IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E. <u>Incompetent Qualified Enrolled Tribal Member</u> – means any Qualified Enrolled Tribal Member who has attained the age of eighteen (18) years, but who has been determined to be incompetent by the Tribal Council, including a Tribal member declared incompetent by a court of competent jurisdiction.

F. <u>Minor Qualified Enrolled Tribal Member</u> – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G. <u>Per capita payment</u> – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H. <u>Qualified Enrolled Tribal Member</u> – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I. <u>RAP</u> – means Seminole Tribe of Florida's Revenue Allocation & Per Capita Distribution Plan.

J. <u>Resolution and Ordinance</u> – means the formal documents through which the Tribal Council exercises its legislative authority. For purposes of this Trust and the Revenue Allocation & Per Capita Distribution Plan, the terms Resolution and Ordinance shall have the same definitions as set forth in Article IV, Sections 1 and 2 of the Amended Bylaws of the Seminole Tribe of Florida.

K. <u>Secretary</u> – means the Secretary of the Interior or authorized representative.

L. <u>Tribe</u> – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

M. <u>Tribal Council</u> – means the governing body of the Seminole Tribe of Florida.


## ARTICLE XI

## <u>MISCELLANEOUS</u>

A.    Headings.  Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.    In General.  Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.    Jurisdiction.  Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.

## ARTICLE XII

## IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA.  In the event that this Agreement is terminated for any reason, distribution of a beneficiary's share may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIII

### ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

## ARTICLE XIV

### EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: _CHAIRMAN_
_Seminole Tribe of FLORIDA -_

WACHOVIA BANK, N.A.,     _TRibal Council_
Trustee

By: _____

Title: _V.P , Sr. TRUST ADVISOR_

STATE OF FLORIDA     )
                           ) SS:
COUNTY OF BROWARD  )

      I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _Mitchell Cypress_, the _Chairman_ of the

Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced

_Seminole Tribe of FL identification_ as identification.

      WITNESS my hand and official seal in the State and County last said this _20_ day of

_April_, 2005.

                                              _____

                                       Notary Public, State of Florida at Large

                                       _____

                                       Typed, printed or stamped name of Notary Public

**Diego M. Orozco**
Commission # DD381194
Expires: DEC. 21, 2008
www.AARONNOTARY.com

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF BROWARD   )

     I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _____*Michael S. Carris*_____ , the *VP, Sr. Trust Advisor* of

Wachovia Bank, N.A., as Trustee, who is personally known to me or who has produced

_____*Known*_____ as identification.

     WITNESS my hand and official seal in the State and County last said this __*25*__ day of

__*April*_____, 2005.

                     _____
                     Notary Public, State of Florida at Large

                     _____*Cathy Ann Seguine*_____
                     Typed, printed or stamped name of Notary Public

Cathy Ann Seguine
MY COMMISSION # DD223774 EXPIRES
June 17, 2007
BONDED THRU TROY FAIN INSURANCE INC

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT AGREEMENT
(Terminates At Age 18)

## SCHEDULE A

Received from the SEMINOLE TRIBE OF FLORIDA, for deposit to the above-captioned trusts:

Cash - $10.00

Dated: April 20 , ~~2004~~ 2005

WACHOVIA BANK, N.A.
Trustee
By: _Michael S. Cann_

Title: VP, SR. TRUST ADVISOR

FTL:1319418:6

# Fee Schedule

Seminole Tribe of Florida Minors Per Capita Payment Trust



Wachovia Bank, N A, serves as Trustee, Investment Manager and Recordkeeping Agent for the Seminole Tribe of Florida Minors' Per Capita Payment Trust ("Trust")

## Trustee Service Charges

- Annual fee of 10 basis points on the total market value of the assets

## Account and Tax Preparation Charges

| | | |
|---|---|---|
| • | Per participant charge for the first twelve full months after assets are received | $24.00 |
| • | Annual per participant charge for statements in excess of 4 | $8 00 |
| • | Annual Tax Preparation Fee | TBD |

## Miscellaneous

1  The charge for distribution checks is $20.00 per check plus postage
2  The check stop payment charge is $20 00 per check
3  Fees are calculated and charged to the participants' account monthly
4  Fees quoted do not include out-of-pocket expenses incurred.
5  Services not detailed above or special requests will be quoted at the time of the request

## Trust Assets Allocation

| Fund Name / Class Share | CUSIP # | Ticker | % Allocation |
|---|---|---|---|
| Evergreen Treasury Money Market I | 300237443 | ETYXX | 20 |
| Evergreen Adjustable Rate I | 299913202 | EKIZX | 40 |
| Evergreen US Government Income | 300237666 | EUSYX | 40 |

A prospectus for each of the aforementioned funds has been provided to the undersigned who are duly authorized to act on behalf of the Seminole Tribe of Florida with respect to the Trust

Evergreen Funds - Wachovia receives from the Evergreen Funds $12 per participant account per fund for shareholder and administrative services  Certain Evergreen Funds may impose redemption fees on shares that are transferred or exchanged out of the fund before the applicable minimum holding period.  Please read the applicable fund's prospectus for more information about the fund and any applicable redemption fees.

Fee Schedule Accepted for The Seminole Tribe of Florida:

By _____
_____, Chairman

Date: _____, 2005

 WACHOVIA



**EXHIBIT**

B

ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS' PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER CAPITA PAYMENT TRUST

SEMINOLE TRIBE OF FLORIDA
HOLLYWOOD, FLORIDA

RESOLUTION NO. C-034-08

WHEREAS, the Seminole Tribe of Florida is an organized Indian Tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

WHEREAS, the Tribal Council of the Seminole Tribe of Florida is the governing body of the Seminole Tribe of Florida; and

WHEREAS, Section 2710(b)(3)(C) of the Indian Gaming Regulatory Act of 1988 ("IGRA"), 25 U.S.C. §§ 2701 et seq. (1988), provides that an Indian Tribe may make per capita gaming distributions to Tribal members provided that, among other things, the interests of minor Tribal members in their per capita gaming distributions are protected and preserved; and

WHEREAS, Section 290.15 of Title 25 of the Code of Federal Regulations, 25 C.F.R. § 290.15 (2007), provides that an Indian Tribe may establish a trust account with a financial institution to hold per capita gaming distributions for the benefit of minor Tribal members; and

WHEREAS, the Seminole Tribe of Florida, as a sovereign Indian nation, has the right, authority and ability to establish a trust governed by IGRA, the laws of the State of Florida, and the laws of the Seminole Tribe of Florida to hold and administer per capita gaming distributions for the benefit of the minor members of the Seminole Tribe of Florida; and

WHEREAS, the Seminole Tribe of Florida established a trust for the benefit of its minor Tribal members on April 20, 2005, which is known as the "Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement" (hereinafter referred to as the "2005 Minors' Trust") to which some of the minor members' shares of per capita gaming distributions were contributed for such members' benefit; and

WHEREAS, Article III.B.3. of the 2005 Minors' Trust provides that, subject to certain limited exceptions, each minor member's share of the 2005 Minors' Trust must be distributed outright to such member upon attaining the age of eighteen (18) years, and does not provide incentives for a minor member to complete his or her high school or college education, attain financial literacy, serve in the United States military or refrain from the use of drugs or other controlled substances; and



EXHIBIT
C

RE:   ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS' PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER CAPITA PAYMENT TRUST

RESOLUTION NO. C-034-08

PAGE TWO

WHEREAS,   it is determined to be in the best interests of the minor members of the Seminole Tribe of Florida that the assets of the 2005 Minors' Trust be held, administered and distributed in a manner which provides incentive to such minor members to continue their education, achieve financial literacy, serve in the United States military and avoid the use of controlled substances; and

WHEREAS,   to that end, it is proposed that the Seminole Tribe of Florida establish and implement a new trust to hold, administer and distribute per capita gaming distributions for the benefit of its minor members in the form attached hereto as Exhibit "A", which trust would be known as the "Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement Under Agreement Dated October 17, 2007, as successor by merger of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement dated April 20, 2005" (hereinafter referred to as the "2007 Minors' Trust"); and

WHEREAS,   the 2007 Minors' Trust has not been rejected by the Bureau of Indian Affairs and complies with IGRA in fulfilling the Seminole Tribe of Florida's duty to safeguard the per capita gaming distributions of minor Tribal members; and

WHEREAS,   Article V.A. of the 2005 Minors' Trust provides for the transfer of all of the trust property of the 2005 Minors' Trust to a new trust for administration and distribution in accordance with the provisions of such new trust, provided that the amount of a beneficiary's vested interest in the property of the 2005 Minors' Trust is not reduced by reason of such transfer; and

WHEREAS,   it is proposed that the 2005 Minors' Trust be merged with and into the 2007 Minors' Trust, that a assets of said 2005 Minors' Trust as well as a portion of the future per capita gaming distributions to minor Tribal members, as determined by Tribal Council from time to time, be held and administered for the benefit of such minor Tribal members in accordance with the terms of the 2007 Minors' Trust without reduction in the amount of any beneficiary's vested interest in the trust property; and

WHEREAS,   it is proposed that Wachovia Bank, National Association, a national banking association, and its successors in interest by merger (hereinafter referred to as "Wachovia"), be appointed to serve as the Trustee of the 2007 Minors' Trust upon the same terms and conditions as it served heretofore as Trustee of the 2005 Minors' Trust; and

RE:   ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS' PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER CAPITA PAYMENT TRUST

RESOLUTION NO. C-034-08

PAGE THREE

NOW THEREFORE BE IT RESOLVED: that the Tribal Council of the Seminole Tribe of Florida hereby adopts the 2007 Minors' Trust on behalf of the minor members of the Seminole Tribe of Florida and authorizes the Chairman to execute the same for and on behalf of the Seminole Tribe of Florida; and

BE IT FURTHER RESOLVED: that the 2005 Minors' Trust shall be merged with and into the 2007 Minors' Trust and that all trust assets of the 2005 Minors' Trust shall become part of, and shall be administered and distributed in accordance with the terms and conditions of, the 2007 Minor's Trust; and

BE IT FURTHER RESOLVED: that Wachovia be, and hereby is, appointed to serve as Trustee of the 2007 Minors' Trust upon the same terms and conditions that Wachovia served as Trustee of the 2005 Minors' Trust; and

BE IT FURTHER RESOLVED: that this resolution is hereby adopted after motion duly made by David R. Cypress, seconded by Max B. Osceola, Jr., and a roll call vote as follows:

Chairman Mitchell Cypress..................................AYE
Vice-Chairman Richard Bowers, Jr........................AYE
Council Representative David R. Cypress................AYE
Council Representative Roger Smith..........................AYE
Council Representative Max B. Osceola, Jr...............AYE

DONE THIS THE 17TH DAY OF OCTOBER, 2007 at the special meeting of the Tribal Council, duly convened at the Tampa Seminole Indian Reservation, Florida, with a quorum being present, by a vote of 5 For, 0 Against, with no Abstentions.

Chairman
TRIBAL COUNCIL

ATTEST:

Secretary
TRIBAL COUNCIL

## SEMINOLE TRIBE OF FLORIDA
## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the _1ST_ day of _NOVEMBER_ , 2007, between the

SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe under 25 U.S.C. § 476

(hereinafter referred to as "Grantor" or "Tribe"), and WACHOVIA BANK, NATIONAL

ASSOCIATION, a national banking association, and its successors in interest by merger (hereinafter

collectively referred to as "Trustee").

### WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor

Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").

Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and

all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust

Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and

purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as

the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT UNDER AGREEMENT DATED _NOVEMBER 1ST_, 2007, as successor by merger of

the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT dated April 20, 2005."

### ARTICLE I

### IRREVOCABLE GRANTOR TRUST

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the

Internal Revenue Code of 1986, as amended, and that it be irrevocable. Grantor may, at any time,

and from time to time, demand that the Trustee transfer to the Tribe such asset or assets of any

separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

<div align="center">

### ARTICLE II

### PURPOSE

</div>

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions provided herein and, in the meantime, Trustee shall make distributions as may be required to provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical needs.

<div align="center">

### ARTICLE III

### DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

</div>

A.     Division.     One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust. A new share shall be

FTL:2345135:1

2

created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved. The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

        B.     <u>Distributions.</u>

        1.     <u>Discretionary Payments.</u> If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose. Such distribution shall be made either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct payments to a third party. Any decision of the Trustee to invade the beneficiary's separate share of trust property for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions shall be made first

from income and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided in Article III, B. 3. herein.

    2. Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

    3. Mandatory Distributions. Subject to the provisions of Article VII, the Trustee shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

    a. Distribution to Trusts for Incarcerated or Incapacitated Tribal Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be

made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The provisions of this paragraph a. shall override all other mandatory distribution provisions contained in this Article III B. 3.

                         b.      Annual Distributions. Beginning on the beneficiary's twenty-first (21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h. of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's

share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

   c.  Primary Education Incentive. In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder. Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c. of this Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

   d.  Financial Literacy Incentive. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which

any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

        e.    Two-Year Degree Incentive Distribution. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

f.     Four-Year Degree Incentive Distribution.    In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. and e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to a distribution under this paragraph f., if the beneficiary has not previously received a distribution pursuant to paragraph e. of this Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to a distribution under this paragraph f., if the beneficiary previously received a distribution pursuant to paragraph e. of this Article III B. 3. hereof.  Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

g.     Military Service Incentive. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. e., and f. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only

8

upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

        h.    <u>Final Distribution</u>.  On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property.  With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

        4.    <u>Trustee's Liability for Distributed Funds</u>.  Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

        5.    <u>Notice of Distributions</u>.  Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

        6.    <u>Confidentiality</u>.  Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

7. Death of Beneficiary. Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

8. Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

## ARTICLE IV

### TRUSTEE SUCCESSION

A. The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

B. Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C. Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an

FTL:2345135:1

10

additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

      D.     Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee. No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

      E.     No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court. Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

      F.     Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

      G.     Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control. The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

<div align="center">

ARTICLE V

ADMINISTRATIVE PROVISIONS

</div>

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

      A.     <u>Transfer to New Minor's Trust</u>. In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and

FTL:2345135:1

<div align="center">11</div>

which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.    Spendthrift Provisions. The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. No title in any share shall vest in a beneficiary prior to distribution. No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.    Accrued and/or Undistributed Income. Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

## ARTICLE VI

## TRUSTEES' POWERS, DUTIES AND DISCRETION

A.    Powers.  Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.    To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

FTL:2345135:1

12

2.      To invest and reinvest in any and all kinds of securities, domestic or foreign, including common and preferred stocks, bonds, mutual funds, commodities, options (covered and uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on property; and money market funds, commercial paper, repurchase agreements, United States Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash investment medium; and investment trusts and in common trust funds; and any real property (including a private residence); and any personal or mixed property; and any business, mining or farming operation or other venture; or in any other interest or investment medium, including the purchase of insurance on the life of any individual, even if such investment would not be of a character authorized by applicable law but for this provision, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries;

3.      To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4.      To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5.      To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6.      To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

7.      To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8.      To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9.      To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10.     To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

FTL:2345135:1

13

11.     To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.     To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution. Any property distributed in kind shall be valued at the date of distribution. No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.     To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14.     To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15.      Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16.     To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

17.     To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.     <u>Accountings and Compensation</u>.  Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor.  Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the

management and protection of the trust and shall have the right to receive reasonable compensation for services rendered. The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time. Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

      C.     Discretion.

      1.     The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

      2.     It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

      D.     Right of Guardian to Direct Investments. The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more investment alternatives as are approved by Tribal Council or its Designee from time to time. In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

## ARTICLE VII

## ADDITIONAL BENEFICIARY PROTECTION

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

A.    Protection From Substance Abuse or Compulsive Disorders.

1.    If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

(a)    uses or consumes any illegal drug or other illegal substance;

(b)    is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

(c)    compulsively gambles or exhibits other compulsive behavior; or

(d)    is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of

FTL:2345135:1

16

beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

      2.     In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

      3.     The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

      4.     If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

      5.     If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of

treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous). If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee. If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

      6.     Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources. While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

      7.     It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare. Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section. Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or

psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

B.      Protection From Threat of Loss. If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists. In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto. If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

## ARTICLE VIII

### TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

## ARTICLE IX

### INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

## ARTICLE X

### COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

FTL:2345135:1

20

## ARTICLE XI

### DEFINITIONS

A.     Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.     Designee – means  that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.     Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.     IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.     Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

F.     Minor Qualified Enrolled Tribal Member – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G.     Per capita payment – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.     Qualified Enrolled Tribal Member – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.     Tribe – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

FTL:2345135:1

21

J.      <u>Tribal Council</u> – means the governing body of the Seminole Tribe of Florida.

K.      <u>Value of beneficiary's share of trust property</u> – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time incentive distributions and final distributions under Article III b. 3., hereof. The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

<div align="center">

### ARTICLE XII

### MISCELLANEOUS

</div>

A.      <u>Headings</u>. Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.      <u>In General</u>. Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.      <u>Jurisdiction</u>. Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.

## ARTICLE XIII

### IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA. In the event that this Agreement is terminated for any reason and there are assets in the trust on the date of termination, distribution of a beneficiary's share of those assets may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIV

### ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

## ARTICLE XV

### EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: Chairman, Seminole Tribe of Florida

WACHOVIA BANK, N.A.,
Trustee

By: _____

Title: _____
Michael S. Carris, J.D., CFP®
Senior Vice President & Trust Advisor

STATE OF FLORIDA     )
                       ) SS:
COUNTY OF BROWARD   )

     I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _MITCHELL CYPRESS_, the _CHAIRMAN_ of the Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced _____ as identification.

     WITNESS my hand and official seal in the State and County last said this _1st_ day of _NOVEMBER_, 2007.



Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

EMANUEL R. SUKHU
MY COMMISSION # DD 574410
EXPIRES: November 16, 2010
Bonded Thru Notary Public Underwriters

FTL:2345135:1

STATE OF FLORIDA     )
                          ) SS:
COUNTY OF BROWARD   )

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by *MICHAEL S. CARRIS*  , the *SR. VICE PRESIDENT* of Wachovia Bank, N.A., as Trustee, who is personally known to me or who has produced _____ as identification.

    WITNESS my hand and official seal in the State and County last said this *1st* day of *NOVEMBER* , 2007.



Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

EMANUEL R. SUKHU
MY COMMISSION # DD 574410
EXPIRES: November 16, 2010
Bonded Thru Notary Public Underwriters

FTL:2345135:1

SEMINOLE TRIBE OF FLORIDA

MINORS' PER CAPITA PAYMENT AGREEMENT
(Terminates At Age 18)

SCHEDULE A

Received from the SEMINOLE TRIBE OF FLORIDA, for deposit to the above-captioned trusts:

Cash - $10.00

Dated: *November 1ˢᵗ*, 2007

WACHOVIA BANK, N.A.
Trustee
By: _____

Title: _____ **Michael S. Carris, J.D., CFP®**
**Senior Vice President & Trust Advisor**

Exhibit D

# Wealth Management Investment Solutions

## Seminole Tribe of Florida
## Minors' Per Capita Payment Trust

## Fee Schedule
### (For Trustee Services – Wachovia Personal Trust)

| | Market Value | Annual Fee |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 | .08% |
| Over | $500,000,000 | TBD |

•Addendum to Fee Schedule Dated April 20, 2005.

•This Addendum Shall Be Effective on July 1, 2008

•All Other Investment Fees Reflected on Separate Schedule(s).

Accepted By: _James Raki_ Date: May 8, 2008

WACHOVIA WEALTH MANAGEMENT

EXHIBIT
D

# Wealth Management Investment Solutions

## Fee Schedule

### (For Trustee Services – Wachovia Personal Trust)

| Market Value | | Annual Fee |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 | .08% |
| Over | $500,000,000 | .07% |

·Addendum to Fee Schedule Dated April 20, 2005.

·This Addendum Shall Be Effective on July 1, 2008

·All Other Investment Fees Reflected on Separate Schedule(s).

Accepted By: _____ Date: _____



**WACHOVIA WEALTH MANAGEMENT**

EXHIBIT
E

EXHIBIT A

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the 9th day of March , 2010, between the SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe under 25 U.S.C. § 476 (hereinafter referred to as "Grantor" or "Tribe"), and WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association, and its successors in interest by merger (hereinafter collectively referred to as "Trustee").

WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)"). Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated March 9, 2010 , as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005".

## ARTICLE I

## IRREVOCABLE GRANTOR TRUST

RM:7095661:1

EXHIBIT

F

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the Internal Revenue Code of 1986, as amended, and that it be irrevocable. Grantor may, at any time, and from time to time, demand that the Trustee transfer to the Tribe such asset or assets of any separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

## ARTICLE II

### PURPOSE

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions provided herein and, in the meantime, Trustee shall make distributions as may be required to provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical needs.

## ARTICLE III

### DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

A.    Division.  One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is

RM:7095661:1

2

entitled by reason of his or her membership in the Tribe.  The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor.  Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust.  A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment.  It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved.  The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary.  The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

    B.    <u>Distributions</u>.

    1.    <u>Discretionary Payments.</u>  If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose.  Such distribution shall be made either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct payments to a third party.  Any decision

RM:7095661:1

3

of the Trustee to invade the beneficiary's separate share of trust property for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions shall be made first from income and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided in Article III, B. 3. herein.

      2.    Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

      3.    Mandatory Distributions. Subject to the provisions of Article VII, the Trustee shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

RM:7095661:1

4

a.  Distribution to Trusts for Incarcerated or Incapacitated Tribal

Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such

beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be

made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED

MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated

Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of

under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall

hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its

Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such

beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or

for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting

Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA

PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held

as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If

there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the

beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is

simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share

of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in

such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated

Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or

distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The

provisions of this paragraph a. shall override all other mandatory distribution provisions contained in

this Article III B. 3.

RM:7095661:1

5

b.    Annual Distributions. Beginning on the beneficiary's twenty-first (21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h. of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

c.    Primary Education Incentive. In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder. Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c. of this

Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

        d.     <u>Financial Literacy Incentive</u>. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

        e.     <u>Two-Year Degree Incentive Distribution</u>. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such

RM:7095661:1

distribution. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

        f.    <u>Four-Year Degree Incentive Distribution</u>.   In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. and e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary has not previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

RM:7095661:1

8

g. <u>Military Service Incentive</u>. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. e., and f. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

h. <u>Final Distribution</u>. On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property. With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

4. <u>Trustee's Liability for Distributed Funds</u>. Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

5. <u>Notice of Distributions</u>. Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees

to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

6. _Confidentiality_. Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

7. _Death of Beneficiary_. Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

8. Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

<div align="center">ARTICLE IV</div>

<div align="center">TRUSTEE SUCCESSION</div>

A. The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

RM:7095661:1

B.      Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.      Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.      Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee. No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.      No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court. Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

F.      Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

G.      Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control. The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

## ARTICLE V

## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.     Transfer to New Minor's Trust.  In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.     Spendthrift Provisions.  The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. No title in any share shall vest in a beneficiary prior to distribution. No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.     Accrued and/or Undistributed Income.  Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

RM:7095661:1

12

ARTICLE VI

TRUSTEES' POWERS, DUTIES AND DISCRETION

A.   Powers.   Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.   To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

2.   To invest and reinvest in any and all kinds of securities, domestic or foreign, including common and preferred stocks, bonds, mutual funds, commodities, options (covered and uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on property; and money market funds, commercial paper, repurchase agreements, United States Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash investment medium; and investment trusts and in common trust funds; and any real property (including a private residence); and any personal or mixed property; and any business, mining or farming operation or other venture; or in any other interest or investment medium, including the purchase of insurance on the life of any individual, even if such investment would not be of a character authorized by applicable law but for this provision, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries;

3.   To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4.   To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5.   To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6.   To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

RM:7095661:1

13

7.     To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8.     To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9.     To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10.     To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

11.     To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.     To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution. Any property distributed in kind shall be valued at the date of distribution. No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.     To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14.     To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15.     Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16.     To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

RM:7095661:1

14

17.    To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.    Accountings and Compensation. Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor. Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered. The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time. Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C.    Discretion.

1.    The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.    It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

D.    Right of Guardian to Direct Investments. The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more

RM:7095661:1

15

investment alternatives as are approved by Tribal Council or its Designee from time to time. In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

### ARTICLE VII

### ADDITIONAL BENEFICIARY PROTECTION

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

    A.    Protection From Substance Abuse or Compulsive Disorders.

        1.    If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

        (a)    uses or consumes any illegal drug or other illegal substance;

        (b)    is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

        (c)    compulsively gambles or exhibits other compulsive behavior; or

        (d)    is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall

RM:7095661:1

16

advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

2.       In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use  (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

3.       The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

4.     If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

5.     If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous).  If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee.  If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

6.     Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources. While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

7.     It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare. Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section. Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

B.     Protection From Threat of Loss. If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists. In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto. If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless

RM:7095661:1

19

from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

## ARTICLE VIII

## TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

## ARTICLE IX

## INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

RM:7095661:1

20

## ARTICLE X

## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE XI

## DEFINITIONS

A.    Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.    Designee – means that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.    Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.    IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.    Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

F.      <u>Minor Qualified Enrolled Tribal Member</u> – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G.      <u>Per capita payment</u> – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.      <u>Qualified Enrolled Tribal Member</u> – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.      <u>Tribe</u> – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

J.      <u>Tribal Council</u> – means the governing body of the Seminole Tribe of Florida.

K.      <u>Value of beneficiary's share of trust property</u> – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time incentive distributions and final distributions under Article III b. 3., hereof.  The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

L.      <u>Withdrawing Beneficiary's Distribution Age</u> – means the attained age in years of the Withdrawing Beneficiary (as defined in Article XVI A.) at which the Withdrawing Beneficiary's share of the Trust property shall be distributed to him or her pursuant to Article XVI. Unless and until changed by Tribal Council, the Withdrawing Beneficiary's Distribution Age shall be twenty-one years.

RM:7095661:1

## ARTICLE XIV

### ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

## ARTICLE XV

### EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

## ARTICLE XVI

### WITHDRAWAL FROM MEMBERSHIP IN TRIBE

A.    Withdrawing Beneficiary. This Trust is created and administered for the benefit of Minor Qualified Enrolled Tribal Members. In the event that the membership in the Tribe of a beneficiary of this Trust ("Withdrawing Beneficiary") is withdrawn (whether such membership is withdrawn by the Withdrawing Beneficiary or his or her guardian), the provisions of this Article shall apply to the Withdrawing Beneficiary's share of the Trust property, notwithstanding any other provision herein to the contrary.

B.    Administration and Distribution of Withdrawing Beneficiary's Share. As soon as practicable following a Withdrawing Beneficiary's withdrawal from membership in the Tribe, the Tribe shall notify the Trustee of such withdrawal. Thereafter, no portion of any contributions to the Trust by the Grantor, or expenses of administration, shall be allocated to the Withdrawing Beneficiary's share of the Trust, but the Trustee shall continue to allocate to the Withdrawing

RM:7095661:1

24

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: CHAIRMAN

WACHOVIA BANK, N.A.,
Trustee

By: _Debra Charbonnet_

Title: _SVP_

STATE OF FLORIDA          )
                          )  SS:
COUNTY OF BROWARD  )

   I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _Mitchell Cypress_ , the _CHAIRMAN_ of the

Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced

_____ as identification.

   WITNESS my hand and official seal in the State and County last said this _15th_ day of

_March_____ , 2010.

         _Nicole Canton_____
         Notary Public, State of Florida at Large
         _Nicole Canton_____
         Typed, printed or stamped name of Notary Public

RM:7095661:1

27

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT AGREEMENT

## SCHEDULE A

Received from the Trustee of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005 for deposit to the above-captioned trusts:

See Attached.

Dated: __3-15__ , 2010

WACHOVIA BANK, N.A.
Trustee
By: _Debra Charleon St_

Title: _SVP_

RM:7095661:1

29

STATE OF FLORIDA      )
                                ) SS:

COUNTY OF BROWARD   )

      I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _DEBRA CHARBONNET_____, the _SENIOR VICE PRESIDENT_ of Wachovia Bank, N.A., as Trustee, who is <u>personally known to me</u> or who has produced _____ as identification.

      WITNESS my hand and official seal in the State and County last said this _15th_ day of _MARCH_____, 2010.

_Christie Kotsch_____
Notary Public, State of Florida at Large

_CHRISTIE KOTSCH_____
Typed, printed or stamped name of Notary Public



CHRISTIE KOTSCH
MY COMMISSION # DD694041,
EXPIRES: July 10, 2011
Fl. Notary Discount Assoc Co

# Fee Schedule*
## (For Trustee Services – Wachovia Personal Trust)

| | Market Value | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 - $500,000,000 | .08% |
| Next | $500,000,000 - $750,000,000 | .07% |
| Next | $750,000,000 - $1,000,000,000 | .05% |
| Over | $1,000,000,000 | Annual Flat Fee TBD |

*Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on September 1, 2010.

*All Other Investment Fees Reflected on Separate Schedule(s).

*Fee is Paid Monthly but Accrued Daily.

Accepted By: _____ Date: _____

 WACHOVIA WEALTH MANAGEMENT

EXHIBIT
G

# Fee Schedule*

## (For Trustee Services – Wachovia Personal Trust)

| | Market Value | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 | .11% |
| Next | $250,000,000 - $500,000,000 | .09% |
| Next | $500,000,000 - $750,000,000 | .08% |
| Next | $750,000,000 - $1,000,000,000. | 06% |
| Over | $1,000,000,000 - Annual Flat Fee TBD | |

*Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on August 1, 2011.

*All Other Investment Fees Reflected on Separate Schedules.

*Fees Accrue on a Daily Basis and Fund Unitized Price is Net of Fees.

**Accepted By:** _~ ₂₇₍₎ ₱ ₐ ₚ ~_  **Date:** _₆ ₂₈ ₁_

_Chief Financial Officer_

 **WACHOVIA WEALTH MANAGEMENT**



EXHIBIT

H

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the *13th* day of *January*, 2012, between the

**SEMINOLE TRIBE OF FLORIDA**, a federally recognized Indian tribe under 25 U.S.C. § 476

(hereinafter referred to as "Grantor" or "Tribe"), and **WELLS FARGO BANK, N.A.**, as successor

in interest of WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association,

and its successors in interest by merger (hereinafter collectively referred to as "Trustee").

### WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor

Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").

Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and

all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust

Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and

purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as

the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT dated *1/13/2012* as successor by merger of the SEMINOLE TRIBE OF

FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated February 23, 2010,

as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA

PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the

SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

dated April 20, 2005".

{2271708;1}



EXHIBIT
I

## ARTICLE I
## IRREVOCABLE GRANTOR TRUST

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the Internal Revenue Code of 1986, as amended, and that it be irrevocable. Grantor may, at any time, and from time to time, demand that the Trustee transfer to the Grantor such asset or assets of any separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

## ARTICLE II
## PURPOSE

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions provided herein and, in the meantime, Trustee shall make distributions as may be required to provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical needs.

## ARTICLE III
## DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

A.   Division.  One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is

{22717085;1}

2

entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust. A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved. The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

B. Distributions.

1. Discretionary Distributions. If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose. Such distribution may be made in the discretion of the Trustee, either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct

{22717085;1}

3

payments to a third party. In exercising its discretion to invade the beneficiary's separate share of

trust property for the purposes described above, the Trustee shall consider the Tribal guidelines, if

any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any

distributions shall be made first from income and then from principal. Trustee acknowledges that, as

of the date of this trust, Grantor separately provides for all of the medical expenses of its members

and that no beneficiary will qualify for distributions under this Article III B. 1. for as long as Grantor

continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the

payment of its members' medical expenses. Any income or principal that is not distributed pursuant

to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided

in Article III, B. 3. herein.

        2.    Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the

benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general

trust principles of fiduciary duty and management. The Trust is specifically created as a Florida

agreement, and the construction, validity and effect of this agreement and the rights and duties of the

beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida,

and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee

hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross

negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a

beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate

share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such

litigation.

        3.    Mandatory Distributions. Subject to the provisions of Article VII, the Trustee

shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

{22717085;1}

4

a.  Distribution to Trusts for Incarcerated or Incapacitated Tribal

Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such

beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be

made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED

MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated

Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of

under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall

hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its

Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such

beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or

for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting

Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA

PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held

as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If

there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the

beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is

simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share

of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in

such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated

Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or

distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The

provisions of this paragraph a. shall override all other mandatory distribution provisions contained in

this Article III B. 3.

{22717085;1}

5

b.   Annual Distributions.  Beginning on the beneficiary's twenty-first (21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h. of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

c.   Primary Education Incentive Distributions.  In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder. Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c.

{22717085;1}

6

of this Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

   d. Financial Literacy Incentive Distribution. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

   e. Two-Year Degree Incentive Distribution. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and/or d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such

{22717085;1}

distribution.  Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

          f.    <u>Four-Year Degree Incentive Distribution</u>.   In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c., d., and/or e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary has not previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

{22717085;1}

g.    Military Service Incentive Distribution. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c., d., e., and/or f. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

h.    Final Distribution. On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property. With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

4.    Trustee's Liability for Distributed Funds. Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

5.    Notice of Distributions. Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees

{22717085;1}

9

to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

      6.     <u>Confidentiality</u>.  Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

      7.     <u>Death of Beneficiary</u>.  Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

      8.     Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

<div align="center">

**ARTICLE IV**
**TRUSTEE SUCCESSION**

</div>

      A.     The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

{22717085;1}

B.     Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.     Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.     Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee. No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.     No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court. Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

F.     Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

G.     Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control. The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

{22717085;1}

11

## ARTICLE V
## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.   Transfer to New Minor's Trust. In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.   Spendthrift Provisions. The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. No title in any share shall vest in a beneficiary prior to distribution. No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.   Accrued and/or Undistributed Income. Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

{22717085;1}

12

## ARTICLE VI
## TRUSTEES' POWERS, DUTIES AND DISCRETION

A.    Powers.   Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.    The paramount objective of the Grantor is preservation of principal. The return on investments is a secondary consideration. In that context, the Trustee shall limit investments to fixed-income securities with strong credit quality and shall be prohibited from investing in common stocks and other "equity-like" investments. The Trustee shall have no duty to diversify under the Prudent Investor Rule as set forth in Section 518.11, Fla. Stat., and shall not be responsible for losses resulting from a lack of diversification of the assets into other asset classes;

2.    To cause any securities belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

3.    To vote in person or by general or limited proxy, or refrain from voting, any securities for any purpose; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

4.    To borrow money from any lender, including any Trustee hereunder,  to extend or renew any existing indebtedness and pledge any securities in the trust upon such terms and conditions as Trustee deems appropriate;

5.    To sell at public or private sale, contract to sell, convey, exchange, transfer, and otherwise deal with the trust property,  and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

6.    To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

7.    To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

8.    To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocations or distributions.  Any property distributed in kind shall be valued at the date of distribution.  No

{22717085;1}

13

adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

        9.    To deposit funds in another department of any Corporate Trustee hereunder;

        10.    Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

        11.    To delegate to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks, the power to give instructions regarding the purchase, sale or management of securities to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any securities held hereunder; and

        12.    To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

        B.    <u>Accountings and Compensation</u>.  Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor.  Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered.  The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time.  Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees.  Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

        C.    <u>Discretion</u>.

        1.    The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the

{22717085;1}

14

payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.   It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

<div align="center">

**ARTICLE VII**
**ADDITIONAL BENEFICIARY PROTECTION**

</div>

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

A.   Protection From Substance Abuse or Compulsive Disorders.

1.   If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

(a)   uses or consumes any illegal drug or other illegal substance;

(b)   is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

(c)   compulsively gambles or exhibits other compulsive behavior; or

(d)   is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

{22717085;1}

15

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

2.      In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

3.      The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not

{27717085;1}

16

disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

4.. If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

5. If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous). If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee. If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

6. Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources.

{22717085;1}

17

While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

7.    It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare.  Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section.  Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

B.    Protection From Threat of Loss.  If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists.  In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto.  If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could

{22717085;1}

18

otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

### ARTICLE VIII
### TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

### ARTICLE IX
### INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

{22717085;1}

## ARTICLE X
## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE XI
## DEFINITIONS

A.      Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.      Designee – means that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.      Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.      IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.      Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

F.      Minor Qualified Enrolled Tribal Member – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

{22717085;1}

20

G.     Per capita payment – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.     Qualified Enrolled Tribal Member – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.     Tribe – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

J.     Tribal Council – means the governing body of the Seminole Tribe of Florida.

K.     Value of beneficiary's share of trust property – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time Incentive distributions and final distributions under Article III b. 3., hereof.  The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

L.     Withdrawing Beneficiary's Distribution Age – means the attained age in years of the Withdrawing Beneficiary (as defined in Article XVI A.) at which the Withdrawing Beneficiary's share of the Trust property shall be distributed to him or her pursuant to Article XVI. Unless and until changed by Tribal Council, the Withdrawing Beneficiary's Distribution Age shall be ___21___ years.

<div align="center">

**ARTICLE XII**
**MISCELLANEOUS**

</div>

{22717085;1}

A.     Headings. Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.     In General. Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.     Jurisdiction. Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.

## ARTICLE XIII
## IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA. In the event that this Agreement is terminated for any reason and there are assets in the trust on the date of termination, distribution of a beneficiary's share of those assets may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIV
## ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

{22717085;1}

22

### ARTICLE XV
### EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

### ARTICLE XVI
### WITHDRAWAL FROM MEMBERSHIP IN TRIBE

A.      Withdrawing Beneficiary.  This Trust is created and administered for the benefit of Minor Qualified Enrolled Tribal Members. In the event that the membership in the Tribe of a beneficiary of this Trust ("Withdrawing Beneficiary") is withdrawn (whether such membership is withdrawn by the Withdrawing Beneficiary or his or her guardian), the provisions of this Article shall apply to the Withdrawing Beneficiary's share of the Trust property, notwithstanding any other provision herein to the contrary.

B.      Administration and Distribution of  Withdrawing Beneficiary's Share.  As soon as practicable following a Withdrawing Beneficiary's withdrawal from membership in the Tribe,  the Tribe shall notify the Trustee of such withdrawal. Thereafter, no portion of any contributions to the Trust by the Grantor, or expenses of administration, shall be allocated to the Withdrawing Beneficiary's share of the Trust, but the Trustee shall continue to allocate to the Withdrawing Beneficiary's share the amount of Trust income that is attributable to such share. The Trustee shall hold and administer the Withdrawing Beneficiary's share until the Withdrawing Beneficiary has attained the Withdrawing Beneficiary's Distribution Age, as defined in Article XI L., at which time the Trustee shall distribute the Withdrawing Beneficiary's entire share of the Trust to the

{22717085;1}

23

Withdrawing Beneficiary, free and clear of any further obligation of the Trustee to the Withdrawing Beneficiary hereunder.

        C.    Application of Trust Provisions to Withdrawing Beneficiary's Share. Except as directed by Tribal Council, the provisions of this Trust Agreement shall apply to the Withdrawing Beneficiary's share except that (i) no amounts shall be distributed to the Withdrawing Beneficiary pursuant to Article III  B. prior to the Withdrawing Beneficiary attaining the Withdrawing Beneficiary's Distribution Age; (ii) neither the Withdrawing Beneficiary nor his or her guardian shall have any right to direct investments of the Withdrawing Beneficiary's share pursuant to Article VI D.; (iii) no portion of the Withdrawing Beneficiary's share shall be transferred to the Incapacitated Members' Trust or Incarcerated Members' Trust pursuant to Article III B. 3. a.; and (vi) no portion of the Withdrawing Beneficiary's share shall be withheld from the Withdrawing Beneficiary pursuant to Article VII as and when the Withdrawing Beneficiary attains the Withdrawing Beneficiary's Distribution Age.

{22717085;1}

24

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

*Nancy Willie*

*Patricia A. Diamond*

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: *Chairman of the Tribal Council*

WELLS FARGO BANK, N.A., Trustee

By: *Debra Charbonnet*

Title: *SVP*

{22717085;1}

25

STATE OF FLORIDA     )
                          ) SS: .
COUNTY OF BROWARD  )

     I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by ___James E Billie___, the ___Chairman___ of the Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced

     ___FL. ID_____ as identification.

     WITNESS my hand and official seal in the State and County last said this _'7_ day of ___Feb_____, 2012.

                                Michelle L Osceola
                                Notary Public, State of Florida at Large

                                Typed, printed or stamped name of Notary Public

MICHELLE L OSCEOLA
MY COMMISSION # EE140216
EXPIRES October 23, 2015
(407) 398-0153   FloridaNotaryService.com

{22717085;1}

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF BROWARD    )

     I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by DEBRA CHARBONNET , the SVP of Wells Fargo Bank, N.A., as Trustee, who is personally known to me or who has produced FLA DL as identification.

     WITNESS my hand and official seal in the State and County last said this 9th day of FEB , 2012.

                                      Notary Public, State of Florida at Large

                                        Typed, printed or stamped name of Notary Public

NADEJDA PETROVA
Notary Public - State of Florida
My Comm. Expires Jan 3, 2014
Commission # DD 949606

{22717085;1}

27

SEMINOLE TRIBE OF FLORIDA

MINORS' PER CAPITA PAYMENT AGREEMENT

SCHEDULE A

Received from the Trustee of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated February 23, 2010, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005 for deposit to the above-captioned trusts:

See Attached.

Dated: _____2 - 9_____, 2012          **WELLS FARGO BANK, N.A.**, Trustee

By: _Delra Charl__

Title: _SVP_

{22717083;1}

28

# Wealth Management Investment Solutions

## Seminole Tribe of Florida
## Minors' Per Capita Payment Trust
## Fee Schedule*

### (For Trustee Services – Wells Fargo Investment and Fiduciary Services)

| | Market Value | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 - | .10% |
| Next | $250,000,000 - $500,000,000 | .08% |
| Next | $500,000,000 - $750,000,000 | .07% |
| Next | $750,000,000 - $1,000,000,000 | .05% |
| Over | $1,000,000,000 - | .02% |

*This is an Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on January 1, 2013.

*This Schedule Includes Separate Account Management. All Other Investment Fees Reflected on Separate Schedules.

*Fees Accrue on a Daily Basis and Fund Unitized Price is Net of Fees.

Accepted By: _James Rolle_ Date: _9/27/12_
Seminole Tribe of Florida
CFO



**EXHIBIT**

**J**



*received 5/18/15*



# Seminole Minors Trust
## Fee Proposal

**Presented by:**

**Tom Joyce**

**Terri Johnson**

**Melissa Barnhardt**

May 14, 2015



EXHIBIT

K



Together we'll go far

# Fee Proposal

- Current fee structure

  - Services for Trustee, Investment Management and Recordkeeping
  - 17 bps total fee
  - Structure includes one tiered and one flat fee
  - All fees paid from trust and netted in NAV

- Proposed fee structure

  - Services for Trustee, Investment Management and Recordkeeping
  - 14 bps total fee
  - Structure would change to a single fee schedule, covering all services
  - Fees could be paid:
    - From Trust and netted in NAV
    - From trust but charged direct to participants (not in NAV)
    - Combination of methods

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

---

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Seminole Tribe of Florida</u>
Plaintiff
        vs.

<u>Wells Fargo Bank, N.A., Debra Charbonnett, Thomas Joyce, Terri Johnson, Melissa L. Barnhardt, Kim Scott,</u>
<u>Marc Spelane, Michael S. Carris, Mark Lake</u>
Defendant

---

**II.      TYPE OF CASE**

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☒ Trust litigation

---

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
   ☒   Monetary;
   ☒   Non-monetary
   ☐   Non-monetary declaratory or injunctive relief;
   ☐   Punitive

IV.   **NUMBER OF CAUSES OF ACTION: (    )**
   (Specify)

   8

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐   Yes
   ☒   No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒   No
   ☐   Yes – If "yes" list all related cases by name, case number and court:

   no

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☒   Yes
   ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Albert L. Frevola Jr      FL Bar No.: 857416
   Attorney or party                                          (Bar number, if attorney)

   Albert L. Frevola Jr   01/12/2016
      (Type or print name)                              Date

ng # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally
recognized Indian tribe, on behalf of its current and
former MINOR TRIBE MEMBERS who are and were
beneficiaries of the Seminole Tribe of Florida Minors'
Per Capita Payment Trust Agreement (as amended from
time to time) and JOHN DOES 1-3,
          Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE; TERRI
JOHNSON; MELISSA LADER BARNHARDT; KIM
SCOTT; MARC SPELANE; MICHAEL S. CARRIS;
and MARK LAKE,
          Defendants.
_____/

**SUMMONS**      On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

          YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

**WELLS FARGO BANK, N.A.**
By Serving:  Its Registered Agent
Corporation Service Company
1201 Hayes Street
Tallahassee, FL  32301-2525

          The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq.,
Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor,
Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either
before service on Plaintiff's attorneys or immediately thereafter. If the Defendant fails to do so, a default will
be entered against the Defendant for the relief demanded in the Complaint.

          DATED the 14th day of January, 2016          JAN 27 2016

                                        HOWARD C. FORMAN
                                        Clerk of the Court

                                        By _____
                                                  As Deputy Clerk

ing # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized
Indian tribe, on behalf of its current and former MINOR
TRIBE MEMBERS who are and were beneficiaries of the
Seminole Tribe of Florida Minors' Per Capita Payment Trust
Agreement (as amended from time to time) and JOHN DOES
1-3,

          Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET;
THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL
S. CARRIS; and MARK LAKE,

          Defendants.

_____/

**SUMMONS**    On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

       YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

          Thomas E. Joyce
          350 East Las Olas Boulevard, Suite 1900
          Fort Lauderdale, FL 33301-4217

       The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorneys or immediately thereafter. If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

       DATED the 14th day of January, 2016.     **JAN 27 2016**

          HOWARD C. FORMAN
          Clerk of the Court

          By _____
                 As Deputy Clerk

**HOWARD C. FORMAN**

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case.  If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book.  If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

ing # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized Indian tribe, on behalf of its current and former MINOR TRIBE MEMBERS who are and were beneficiaries of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement (as amended from time to time) and JOHN DOES 1-3,

         Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET; THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL S. CARRIS; and MARK LAKE,

         Defendants.

_____/

## **SUMMONS**   On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

        Terri Johnson
        608 2nd Avenue South, 9th Floor
        Minneapolis, MN 55479

The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorneys or immediately thereafter.  If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

DATED the 14th day of January, 2016.     JAN 27 2016

        HOWARD C. FORMAN
        Clerk of the Court

        By _____
           As Deputy Clerk

HOWARD C. FORMAN

( 

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized Indian tribe, on behalf of its current and former MINOR TRIBE MEMBERS who are and were beneficiaries of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement (as amended from time to time) and JOHN DOES 1-3,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET; THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL S. CARRIS; and MARK LAKE,

        Defendants.

_____/

### SUMMONS   On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

          Michael S. Carris
          2980 Harpoon Jane
          Saint James City, FL 33956

      The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorneys or immediately thereafter.  If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

      DATED the 14th day of January, 2016.      JAN 27 2016

          HOWARD C. FORMAN
          Clerk of the Court

          By _____
               As Deputy Clerk

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

ing # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized Indian tribe, on behalf of its current and former MINOR TRIBE MEMBERS who are and were beneficiaries of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement (as amended from time to time) and JOHN DOES 1-3,

         Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET; THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL S. CARRIS; and MARK LAKE,

         Defendants.

_____/

<u>**SUMMONS**</u>     On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

Melissa Lader Barnhardt    (or)       Melissa Lader Barnhardt
350 East Las Olas Boulevard, Suite 1900     4361 SW 34th Lane
Fort Lauderdale, FL                Fort Lauderdale, FL 33312

     The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorneys or immediately thereafter. If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

     DATED the 14th day of January, 2016.     JAN 27 2016

                         HOWARD C. FORMAN
                         Clerk of the Court

                         By _____
                                 As Deputy Clerk

*** FILED: BROWARD COUNTY, FL HOWARD FORMAN, CLERK 1/21/2016 2:34:42 PM ****

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case.  If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book.  If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized
Indian tribe, on behalf of its current and former MINOR
TRIBE MEMBERS who are and were beneficiaries of the
Seminole Tribe of Florida Minors' Per Capita Payment Trust
Agreement (as amended from time to time) and JOHN DOES
1-3,

          Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET;
THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL
S. CARRIS; and MARK LAKE,

        Defendants.

_____/

## **SUMMONS**    On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

                Mark Lake
                1525 West WT Harris Blvd., NC1176
                Charlotte NC 28262

      The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq.,
Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor,
Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either
before service on Plaintiff's attorneys or immediately thereafter.  If the Defendant fails to do so, a default
will be entered against the Defendant for the relief demanded in the Complaint.

      DATED the 14th day of January, 2016.     JAN 27 2016

                HOWARD C. FORMAN
                Clerk of the Court

                By _____
                     As Deputy Clerk

HOWARD C. FORMAN

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

ing # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized
Indian tribe, on behalf of its current and former MINOR
TRIBE MEMBERS who are and were beneficiaries of the
Seminole Tribe of Florida Minors' Per Capita Payment Trust
Agreement (as amended from time to time) and JOHN DOES
1-3,

           Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET;
THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT: MARC SPELANE; MICHAEL
S. CARRIS; and MARK LAKE,

           Defendants.

_____/

**SUMMONS**        On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

Marc Spelane              (or)        Marc Spelane
401 S. Tryon Street, TH-14            4811 Sandtyn Dr.
Charlotte, NC 28288              Waxhaw, NC 28173

    The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr.,
Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway,
Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on
the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiff's attorneys or immediately thereafter. If the Defendant fails to do
so, a default will be entered against the Defendant for the relief demanded in the Complaint.

    DATED the 14th day of January, 2016.       JAN 27 2016

                    HOWARD C. FORMAN
                    Clerk of the Court

                    By _____
                         As Deputy Clerk

HOWARD C. FORMAN

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

ing # 36599908 E-Filed 01/14/2016 06:26:25 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized
Indian tribe, on behalf of its current and former MINOR
TRIBE MEMBERS who are and were beneficiaries of the
Seminole Tribe of Florida Minors' Per Capita Payment Trust
Agreement (as amended from time to time) and JOHN DOES
1-3,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET;
THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL
S. CARRIS; and MARK LAKE,

        Defendants.

_____/

**SUMMONS**   On Corrected C

THE STATE OF FLORIDA:

To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

          Kim Scott
          608 2nd Avenue South, Suite 700
          Minneapolis, MN 55402

     The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq.,
Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor,
Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either
before service on Plaintiff's attorneys or immediately thereafter.  If the Defendant fails to do so, a default
will be entered against the Defendant for the relief demanded in the Complaint.

     DATED the 14th day of January, 2016.     JAN 27 2016

          HOWARD C. FORMAN
          Clerk of the Court

          By _____
              As Deputy Clerk

HOWARD C. FORMAN

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.  CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized
Indian tribe, on behalf of its current and former MINOR
TRIBE MEMBERS who are and were beneficiaries of the
Seminole Tribe of Florida Minors' Per Capita Payment Trust
Agreement (as amended from time to time) and JOHN DOES
1-3,

             Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET;
THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER
BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL
S. CARRIS; and MARK LAKE,

             Defendants.

_____/

**SUMMONS**     On Corrected Complaint

THE STATE OF FLORIDA:

To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

          Debra Charbonnet
          3314 Wood Thrush Dr., Unit 114
          Punta Gorda, FL 33950

     The Defendant is required to serve written defenses to the Complaint on Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, Attorneys for Plaintiff, whose address is 633 South Federal Highway, Eighth Floor, Fort Lauderdale, Florida 33301, within twenty (20) days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorneys or immediately thereafter. If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

     DATED the 14th day of January, 2016.     JAN 27 2016

          HOWARD C. FORMAN
          Clerk of the Court

          By _____
             As Deputy Clerk

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the Court to hear your side of the case. If you do not file you response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book. If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's attorney.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que apa recen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requirir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally
recognized Indian tribe, on behalf of its current and
former MINOR TRIBE MEMBERS who are and
were beneficiaries of the Seminole Tribe of Florida
Minors' Per Capita Payment Trust Agreement (as
amended from time to time) and JOHN DOES 1-10,

       Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE; TERRI
JOHNSON; MELISSA LADER BARNHARDT;
KIM SCOTT; MARC SPELANE; MICHAEL S.
CARRIS; and MARK LAKE,

       Defendants.

_____/

## PLAINTIFFS' NOTICE OF CORRECTION OF SCRIVENER'S ERROR

Plaintiffs SEMINOLE TRIBE OF FLORIDA and JOHN DOES 1-10, hereby file its

Notice of Correction of Scrivener's Error made in the following document:

1.  Plaintiffs Complaint filed January 12, 2016 contained the following error:

    a.  Defendant JOHN DOES 1-10 was incorrectly named in the style of the

       case.  Instead, the style should have read JOHN DOES 1-3.

2.    The undersigned apologizes to the Clerk for this error, and will file a

corrected Complaint.

3.    The Complaint has not been served yet and will be served with the

corrected style.

4.  In addition, the Summonses have been filed but not issued as of yet, and will be refiled with the correct style.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via the Florida Courts E-Filing Portal on this 20th day of January, 2016.

CONRAD & SCHERER, LLP
Counsel for Plaintiff
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone:     (954) 462-5500
Facsimile:     (954) 463-9244

BY /s/ALBERT L. FREVOLA, JR.
WILLIAM R. SCHERER
Florida Bar No. 169454
wscherer@conradscherer.com
ALBERT L. FREVOLA, JR.
Florida Bar No. 857416
afrevola@conradscherer.com
JACK S. KALLUS
Florida Bar No. 56111
jsk@conradscherer.com

**Email Service:**
wrspleadings@conradscherer.com
alfpleadings@conradscherer.com
jskpleadings@conradscherer.com
mcr@conradscherer.com
eservice@conradscherer.com

2

ling # 36800661 E-Filed 01/20/2016 06:33:41 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally
recognized Indian tribe, on behalf of its current and
former MINOR TRIBE MEMBERS who are and
were beneficiaries of the Seminole Tribe of Florida
Minors' Per Capita Payment Trust Agreement (as
amended from time to time) and JOHN DOES 1-3,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE; TERRI
JOHNSON; MELISSA LADER BARNHARDT;
KIM SCOTT; MARC SPELANE; MICHAEL S.
CARRIS; and MARK LAKE,

        Defendants.

_____/

## NOTICE OF FILING CORRECTED COMPLAINT

Plaintiffs SEMINOLE TRIBE OF FLORIDA and JOHN DOES 1-3, hereby file their

corrected Complaint by refiling the Complaint with a correction to the name of the Defendant

JOHN DOES 1-10 to JOHN DOES 1-3 in the style of the case.


*(THIS SECTION INTENTIONALLY LEFT BLANK)*

CASE NO.:  CACE 16-000592 (08)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via

the Florida Courts E-Filing Portal on this 20th day of January, 2016.

CONRAD & SCHERER, LLP
Counsel for Plaintiff
633 South Federal Highway
Fort Lauderdale, FL  33301
Telephone:     (954) 462-5500
Facsimile:      (954) 463-9244

BY /s/ALBERT L. FREVOLA, JR.
WILLIAM R. SCHERER
Florida Bar No. 169454
wscherer@conradscherer.com
ALBERT L. FREVOLA, JR.
Florida Bar No. 857416
afrevola@conradscherer.com
JACK S. KALLUS
Florida Bar No. 56111
jsk@conradscherer.com

**Email Service:**
wrspleadings@conradscherer.com
alfpleadings@conradscherer.com
jskpleadings@conradscherer.com
mcr@conradscherer.com
eservice@conradscherer.com

2

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

CASE NO.

SEMINOLE TRIBE OF FLORIDA, a Federally
recognized Indian tribe, on behalf of its current and
former MINOR TRIBE MEMBERS who are and
were beneficiaries of the Seminole Tribe of Florida
Minors' Per Capita Payment Trust Agreement (as
amended from time to time) and JOHN DOES 1-3,

          Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA
CHARBONNET; THOMAS JOYCE; TERRI
JOHNSON; MELISSA LADER BARNHARDT;
KIM SCOTT; MARC SPELANE; MICHAEL S.
CARRIS; and MARK LAKE,

          Defendants.

_____/

## COMPLAINT

Plaintiffs, SEMINOLE TRIBE OF FLORIDA, an Indian tribe, on behalf of its current and

former Minor Tribal Members who are and were beneficiaries of the Seminole Tribe of Florida

Minors' Per Capita Payment Trust Agreement (as amended from time to time), (the "Tribe"), and

JOHN DOES 1-3 by and through undersigned counsel, hereby sues and files this Complaint against

Defendants WELLS FARGO BANK, N.A., ("Wells Fargo") (and as successor in interest to

Wachovia Bank, N.A. -- collectively "Trustee")  DEBRA CHARBONNET ("Charbonnet"),

THOMAS JOYCE ("Joyce"), TERRI JOHNSON ("Johnson"),  MARC SPELANE ("Spelane"),

MICHAEL S. CARRIS ("Carris), MARK LAKE ("Lake"), MELISSA LADER BARNHARDT

("Barnhardt"), and KIM SCOTT ("Scott") and allege:

1

"Bank failures are caused by depositors who don't deposit enough
money to cover losses due to mismanagement." Dan Quayle

## INTRODUCTION

1.     The Seminole Tribe of Florida seeks to recover millions of dollars of fees
fraudulently charged Minor Tribe Members when Wells Fargo was supposed to be acting as a
fiduciary trustee to protect the financial interests of those same minors. Instead Wells Fargo
engaged in a decade-long fraudulent scheme using deficient and confusing account statements to
conceal the collection of unauthorized fees to the minor beneficiaries. The Tribe also seeks to
recover for its Minor Tribe Members at least one hundred million dollars in lost value to the trust
as a result of the Trustee's gross mismanagement of the trust assets by negligently employing
imprudent investment strategies. It is evident that Wells Fargo focused its attention on concealing
the collection of unauthorized fees instead of adopting a viable investment protocol. It appears as
if, the Trustee established the trust, placed it in cruise-control, failed to properly advise the Tribe
or its minor beneficiaries on investment strategies, and invested in a deficient portfolio in order to
defraud the minor beneficiaries out of millions of dollars in fraudulent fees. The bank's collection
of fraudulent fees and the gross mismanagement of the trust is a breach of fiduciary duty to the
beneficiaries and the proximate cause of the plaintiffs damages.

## BACKGROUND

2.     The Tribe is an organized Indian tribe with a sovereign tribal government whose
headquarters is located at 6300 Stirling Road, Hollywood, Florida 33024. The Tribal Council of
the Seminole Tribe of Florida is the governing body of the Seminole Tribe of Florida. The Tribe

2

has Indian reservations in Hollywood, Tampa, Immokalee, Brighton, and Big Cypress, Florida, and other property that is held in trust by the United States of America for the benefit of the Tribe, and which is collectively referred to herein as "Tribal Land".

3.      The Seminole Tribe conducts its tribal affairs pursuant to a written Constitution and a set of By Laws approved and adopted by the Secretary and the requisite number of eligible tribal members who cast their votes at a properly convened Secretarial Election. Under Article V of the Amended Constitution and Bylaws of the Seminole Tribe, the Tribe is governed by a duly elected Tribal Council which is recognized by the Secretary as the Tribe's constitutionally constituted governing body.

4.      Under §7 of the Tribal Constitution the Tribe is mandated to "promote public health, education, charity, and such other services as may contribute to the social advancement of the members of the Seminole Tribe of Florida."

5.      The Tribe provides the same essential governmental services on Tribal Land that states typically provide off Tribal Land, including, but not limited to, police and fire protection, emergency medical services, public schools, public transportation, garbage pick-up, business regulation and road construction and maintenance ("Essential Governmental Services" or "EGS").

6.      The State provides no services in connection with any activity that is conducted on Tribal Land, including the provision of Essential Governmental Services, the leasing of Tribal Land or gaming activities.

7.      The Tribe owns and operates extensive entertainment and gaming facilities on Tribal Land, including the Seminole Hard Rock Hotel and Casinos on its Hollywood, Florida, reservation ("Seminole Hollywood Casino") and on its Tampa, Florida, reservation ("Seminole Tampa Casino").

3

8.      The main purpose of gaming activities is to promote tribal economic development, self-sufficiency and self-government by providing a source of funds with which the Tribe can provide Essential Governmental Services.

9.      Revenue from the gaming industry is used to invest in health care, education and economic development. On tribal land, this little money is the difference between a drug rehabilitation program and no program; a nutrition program and no nutrition program, between an alternative school or a senior citizen center and nothing. These Essential Governmental Services also helps to create jobs, rebuild and revitalize their cultures, and achieve other community objectives.

10.     From the revenue derived from the gaming industry the Tribe created a trust account with a financial institution to hold per capita gaming distributions for the benefit of minor Tribal members to help promote tribal economic development, self-sufficiency, and strong tribal governments. The Trust was also established to protect and preserve the interests of minor children who are entitled to receive any of the per capita payments.

11.     The Minors' trust fund is essential to the Tribe's economic viability and therefore, the more money each tribal member receives from the distribution upon reaching the age of eligibility leads to increased self-sufficiency and less of a burden on the precious limited tribal resources. These funds substantially affect the entire Seminole nation and its well-being.

12.     In fact, the Tribe has seen an increase in its population over the last decade which is partly contributable to the establishment of the Minors' trust. The trust has led to a revitalization in the Tribe and the EGS provided by the Tribe has even greater import.

## MINOR'S TRUST

13.     In 2005 the Tribe began the process of establishing a Minors' trust and prior to the formation of the trust the Tribe and Wells Fargo's predecessor in interest, Wachovia Bank, National Association ("Wachovia"), negotiated the language of the trust, the purpose of the trust, the Trustees powers and duties and the fees associated with the administration of the Minors' Trust.

14.     After months of negotiations, on April 20, 2005, the trust for the benefit of its minor Tribal members, which is known as the "Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement" (hereinafter referred to as the "2005 Minors' Trust") was established. See attached as Exhibit "A".

15.     The Tribe appointed Wachovia, to serve as the Trustee for the 2005 Minors' Trust and Defendant Carris executed the Trust on behalf of Wachovia. Bank.

16.     During the first year of the Trust the Tribe contributed $16.8 million and with additional funding each month and the addition of new Tribal Minor Beneficiaries the value of the Trust principal has grown to now approximately $1.4 Billion.

## TRUST DOCUMENTS

17.     The main purpose of the 2005 Minors' Trust was to set up an account for the receiving and investing a portion of the per capita payments to which Minor Qualified Enrolled Tribal Member would be entitled until he or she attains the age of eighteen (18) years.

> Granter intends for this Trust....... **for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she attains the age of eighteen (18) years and to make distributions pursuant to the terms of this trust prior to the time such Minor Qualified Enrolled Tribal Member attains the age of eighteen (18) years** as may be required to provide for his or her extraordinary or emergency medical needs as determined hereunder.

Article II

5

18.    As Trustee, Wachovia along with the individual defendants acting as employees and agents of the Trustee owed a fiduciary duty to Tribal Minors enrolled in the trust as beneficiaries and is liable to any beneficiary for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. In addition, the 2005 Minors' Trust was specifically created as a Florida agreement, and at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law.

> Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. **The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith.** If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.
>
> Article III B. 2
> **[Emphasis added]**

19.    Article III of the Trust established a detailed structure for the Trustee to follow for the collection of contributions and distribution of the funds to the beneficiary's.

20.    The Trustee was provided powers to hold and administer the Trust estate for the benefit of the beneficiaries consistent with the directions of 2005 Minors' Trust Agreement and with general trust principles of fiduciary duty and management.

> 1. To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality of diversification considered proper for trust investments;
>
> Article VI. A.1

6

21.     Among many powers bestowed upon the Trustee by the 2005 Minors' Trust one of

the main duties of the Trustee was to hold, manage, care for and protect the trust property and,

except as otherwise specifically limited by the 2005 Minors' Trust itself, the Trustee was

empowered to take the following actions:

> 2. To invest and reinvest in any and all kinds of securities, domestic
> or foreign, including common and preferred stocks, bonds, mutual
> funds, commodities, options (covered and uncovered}, hedge funds,
> debentures, notes, commodity. contracts, mortgages and options on
> property; and money market funds, commercial paper, repurchase
> agreements, United States Treasury obligations, certificates of
> deposit, savings accounts, checking accounts and any other cash
> investment medium; and investment trusts and in common trust
> funds; and any real property (including a private residence); and any
> personal or mixed property; and any business, mining or farming
> operation or other venture; or in any other interest or investment
> medium, including the purchase of insurance on the life of any
> individual, even if such investment would not be of a character
> authorized by applicable law but for this provision, all without
> diversification as to kind or amount, without being restricted in any
> way by any statute or court decision (now or hereafter existing)
> regulating or limiting investments by fiduciaries;

Article VI. A.2

22.     Another duty of the Trustee was to provide an accounting of all receipts and

disbursements allocable to each share of the trust at least quarterly to the Minor beneficiary or their

parents or Guardian(s), and to provide copies of each such accounting to the Tribe as well as to

account for the interest of each beneficiary separately.

> Accountings and Compensation. Trustee shall render an accounting
> of all receipts and disbursements allocable to each share of the trust
> at least quarterly to the parents or Guardian(s) of the beneficiary
> thereof, and provide copies of each such accounting to Grantor.
> Failure of the recipient to object to an accounting within ninety (90)
> days shall be deemed acceptance of the accounting by said recipient.
> Trustee shall be reimbursed for all reasonable expenses incurred in
> the management and protection of the trust and shall have the right
> to receive reasonable compensation for services rendered. The
> compensation of any corporate Trustee shall be in accordance with
> its schedule of fees in effect from time to time. Trustee agrees to

7

> prepare all required tax returns for the Trust based upon its usual
> and customary fees. Trustee agrees to give Grantor at least thirty
> (30) calendar days notice prior to any increase in any fees.

Article VI. B.

23.     Attached to the 2005 Minors' Trust was a Fee Schedule. The negotiated schedule, the Tribe believed, encompassed the complete fee structure that Wachovia, as Trustee, was to charge the Minor beneficiaries to administer the 2005 Minors' Trust. See attached Fee Schedule as Exhibit "B". It was later discovered that the Trustee engaged in a prolonged scheme to defraud the minor beneficiaries out of millions of dollars in unauthorized fees.

### SUCCESSIVE TRUSTS DOCUMENTS

24.     As the trust corpus began to swell with additional funding each month by the Tribe and the addition of new Tribal Minor Beneficiaries it became necessary to make changes to the trust agreement. In order to implement these vital changes the Tribe merged the 2005 trust into 3 successive trust instruments and the fee schedule was modified five (5) times over the next seven (7) years.

25.     On November 1, 2007, the Tribe merged the 2005 Minors' Trust into the 2007 Minors' Trust and reappointed Wachovia to serve as the Trustee for the 2007 Minors' Trust. (hereinafter referred to as the "2007 Minors' Trust") See attached as Exhibit "C". The 2007 Minors' Trust was executed by defendant Carris on behalf of Wachovia.

26.     The 2007 Minors' Trust remained substantially similar to the 2005 Minors' Trust but was merged to mainly address additional categories for distributions and additional beneficiary protections.

27. On May 8, 2008, the Tribe and Wachovia entered into an amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule. See attached as Exhibit "D"

28. The Tribe was always concerned with the fees associated with the administration of the trust. A chief point with the Tribe's then CFO, Jim Raker (hereinafter "Raker"), was ensuring that as the trust kept growing the fees for the trust were as low as possible. In fact, Raker would routinely exchange emails on this topic with defendants Carris, Charbonnet, Spelane and Lake in an ongoing effort to negotiate lower fees.

29. At no point prior to adopting the May 8, 2008 fee schedule was the Tribe advised of any additional fees being charged separate and apart from the agreed upon trustee fee. The trustee actively concealed the existence of additional fees being charged to the minor beneficiaries and knowingly misled the Tribe into believing the agreed upon trustee fee as reflected in the fee schedule was the only fee being incurred for the administration of the trust and reported on the statements.

30. With the trust corpus exploding, (mostly attributable to the Tribe depositing additional funds on a monthly basis and less to do with the actual performance of the trust portfolio) a little over a year later the Tribe and Wachovia again entered into an amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to July 1, 2008. See attached as Exhibit "E".

31. Once again, Wachovia actively omitted any reference to the existence of additional fees being charged to the minor beneficiaries beyond those set forth on the agreed upon fee schedule. In hindsight it is now clear why the Trustee was not concerned with negotiating a lower

9

trust fee since they were collecting hidden fees and charging more fees as a percentage of the growing corpus due to additional steady contributions from the Tribe.

32.     Thereafter on March 9, 2010, the Tribe merged the 2007 Minors' Trust into the 2010 Minors' Trust and Wachovia remained the Trustee for the 2010 Minor Trust (hereinafter referred to as the "2010 Minors' Trust"). See attached as Exhibit "F". The 2010 Minors' Trust was executed by defendant Charbonnet on behalf of Wachovia.

33.     The 2010 Minors' Trust remained substantially similar to the preceding 2007 Minors' Trust.

34.     With the trust corpus exceeding a billion dollars, (again as a result of additional funds being deposited by the Tribe and the increase in population and not through the investment strategy of the Trustee of the Trust) on September 15, 2010, the Tribe and Wachovia entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to September 1, 2010. See attached as Exhibit "G". This Fee Schedule contained a footnote stating "All Other Investment Fees Reflected on Separate Schedule(s)". However, Wells Fargo never provided the Tribe or the Minor Beneficiaries with any other schedules.

35.     Hand in hand with the increase in the trust corpus was the implementation of a new fee schedule driving the fees downward. However, the Tribe did not suspect that although the trustee fees were being adjusted downward the Trustee was also charging and collecting from the minor beneficiaries' hidden fees not disclosed on any fee schedule provided to the Tribe or the minor beneficiaries.

36.     Thereafter, on June 28, 2011 the Tribe and Wachovia entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and retroactive to August 1, 2011. See attached as Exhibit "H".

37.     Again, the fee schedule was amended to reflect the increase in the amount of funds in the trust, (largely due to the Tribe depositing additional funds on a monthly basis and less to do with the actual performance of the trust portfolio) adjusting the Trustee fees downward. References to any fees aside from the trustee fee is strikingly absent from any communications between the Tribe and the Trustee.

38.     Then on January 13, 2012, the Tribe merged the 2010 Minors' Trust into the 2012 Minors' Trust and appointed Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, National Association and its successor in interest by merger as Trustee (hereinafter referred to as the "2012 Minors' Trust"). See attached as Exhibit "I". The 2012 Minors' Trust was executed by defendant, Debra Charbonnet.

39.     The 2012 Minors' Trust differentiated itself from the 3 previous trust agreements by redefining the scope of the Trustee investment powers. In particular Article VI states the following:

> 1. The paramount objective of the Grantor is preservation of principal. The return on investments is a secondary consideration. In that context, the Trustee shall limit investments to fixed-income securities with strong credit quality and shall be prohibited from investing in common stocks and other "equity-like" investments. The Trustee shall have no duty to diversify under the Prudent Investor Rule as set forth in Section 518.11, Fla. Stat., and shall not be responsible for losses resulting from a lack of diversification of the assets into other asset classes

Article VI. A. 1.

11

40.     Critically, the Trustee made no attempt to seek the approval of the minor beneficiaries or their Guardians when altering and adopting this new investment strategy and breached its fiduciary duty when it failed to inform the minor beneficiaries and their guardians of any important adjustment being considered or implemented in investment or other management strategy as required by Fla. Stat. §736.0813.

41.     In fact, the alteration in the trust language meant Wells Fargo could continue collecting its fees as the trust corpus grew due to continued contributions from the Tribe while exerting minimal effort to grow the corpus through prudent investment management of the trust accounts.

42.     Thereafter, on September 24, 2012 the Tribe and Wells Fargo entered into another amended Fee schedule. This fee schedule was meant to be an addendum to the April 20, 2005 fee schedule and effective on January 1, 2013. See attached as Exhibit "J." Again, this Fee Schedule contained a footnote stating "All Other Investment Fees Reflected on Separate Schedule(s)". However, the Tribe and the minor beneficiaries are not in possession of any other schedules.

43.     The September 24, 2012 fee schedule was no different than the previous amended schedules whereby the Trustee fees were adjusted and the representatives of the Trustee never mentioned any other types of fees being charged and collected from the minor beneficiaries for the administration of the trust.

## SPRING 2015 FRAUD REVELATION

44.     In the spring of 2015, the Tribe conducted a routine review of the Minors' Trust account records, and the Tribe began to uncover an elaborate fraudulent scheme by the Trustee involving the charging of unauthorized fees to tribe minor beneficiaires outside the negotiated fee schedule.

45.     The Tribe contacted defendant Scott on multiple occasions to determine the basis

for fee charges the Tribe had not previously authorized. As a result of those inquires by the Tribe,

on or about April 24, 2015, defendant Scott, provided the Tribe for the first time a secret internal

memo, dated May 9, 2005 between defendant Michael Carris of Wachovia Personal Trust

("WPT") and David Harrison of Wachovia Retirement Services ("WRS"). The memo is the

instrument Carris and Wachovia Personal Trust utilized to retain Wachovia Retirement Services

to provide servicers on behalf of Wachovia Personal Trust.

---

SMF

Wachovia
GA 8014
191 Peachtree Street, 23rd Floor
Atlanta GA 30303

(404) 332-6819
(404) 332-6816

# Memo                                                         WACHOVIA

**Date**      5/9/05

**To**        Michael Carris

**From**      David Harrison


**Regarding**   Seminole Tribe of Florida Minors' Per Capita Payment Trust

Wachovia Personal Trust ("WPT") has entered into an agreement with the Seminole Tribe of Florida
(the "Tribe") whereby Wachovia Bank, N.A ("Wachovia") will serve as Trustee for the Seminole
Tribe of Florida Minors' Per Capita Payment Trust (the "Trust"). Under the terms of the Trust,
Wachovia will provide certain allocation, recordkeeping and administrative services (collectively the
"Services") to properly account for the interest of each minor beneficiary under the Trust.

WPT wishes to retain Wachovia Retirement Services ("WRS") to provide the Services on behalf of
WPT. WPT understands and agrees that WRS will not serve in any fiduciary capacity related to
these services. WRS will not exercise any discretionary authority or discretionary control
respecting the administration or management of the Trust. WRS will rely solely on directions from
the Tribe and WPT when performing its ministerial duties.

WPT will be responsible for all legal agreements between Wachovia and the Tribe, including
documentation regarding the establishment of the Trust and the appointment of Wachovia as
Trustee. WRS may provide WPT with agreements and other documents intended to facilitate the
administration of the Trust; however, WPT is responsible for reviewing these documents and
executing them on behalf Wachovia. WRS does not warrant or otherwise guarantee these
agreements and documents to be legally adequate to address the administration of the Trust.

The purpose of this memo is to document the general duties and responsibilities of WRS. The
specific services to be provided by WRS are listed on Attachment 1. WRS and WPT understand
that this memo will not address every situation that arises with respect to the Services provided by
WRS. WPT acknowledges that these situations are to be resolved in such a manner that ensures

---

13

46.     The memo outlines the services of Wachovia Retirement Services, including maintaining account valuations, records on all participants, preparation of monthly individual participant statements, process distributions, report distributions and tax reporting.  These services duplicate the same duties Wachovia Personal Trust was assigned to handle through the Trust agreements and in the 2005 Fee schedule with the Tribe.

47.     The Tribe and the Minor beneficiaries were never informed of Wachovia Retirement Services' engagement and any additional fees associated with retention of Wachovia Retirement Services further highlighting the self-dealing the Trustee engaged in to defraud the minor beneficiaries into paying millions of dollars in unsanctioned fees for essentially the same services.

48.     To better understand these additional fees, the Tribe organized a meeting with the Trustee on May 14, 2015.

49.     At the meeting, the Trustee, represented by defendants Joyce, Johnson and Barnhardt, sought to conceal their fraudulent scheme of collecting unauthorized fees from the Tribe by attempting to entice the Tribe to execute a new reduced fee structure.

50.     The new Fee Proposal outlined the current fee structure and proposed restructuring and lowering the fees. Strikingly absent from the fee proposal are all the categories of fees the Trustee was charging the minor beneficiaries. Also absent from the meeting were the minor beneficiaries and/or their guardian(s) to whom the Trustee owed a fiduciary duty to discuss any fee changes. See attached as Exhibit "K"

51.     Furthermore, shortly after the meeting in Spring of 2015 the Trustee admitted to fraudulent charging and collecting unauthorized fees from the tribe minor beneficiaires over the course of multiple years administering the Trust.

14

52.     During the meeting the Tribe requested account statements, balance figures, total fees charges and other important data from the Trustee which contained necessary information for the Tribe to calculate the extent of the unauthorized fees and further expose the extent of the Trustee's fraudulent scheme.

53.     Instead of promptly providing the Tribe with the requested information, the Trustee engaged in conduct to further conceal and cover up the extent of the Trustee's fraudulent conduct and upon information and belief further attempted to conceal the magnitude of its nefarious scheme.

54.     Incredibly, over the course of the next couple months, the Tribe made follow up requests (no less than eleven (11) times) from defendant Scott and Barnhardt but either received no response or was actively deceived by the Trustee regarding the location and availability of the information.

55.     Instead of providing the information necessary to fully account for the fraudulent fees charged, the Trustee continued to cover up the scope of its misdeeds by offering a miniscule refund of one of the unauthorized fees to placate the Tribe for years of collecting unauthorized fees from the tribe minor beneficiaires.

56.     Fueled by the Trustee's revelations at the May meeting, the Tribe engage in an extensive internal audit of the Trust account to expose the magnitude of the Trustee's fraud and independently account for the fees charged using the incomplete information provided by the Trustee.  Based on the data already in its possession and the minimal information provided by the Trustee, the Tribe attempted to reconstruct the charges from the inception of the trust through present day.

15

57.     Having little success in internally reengineering the fees charged to the minor beneficiaries the Tribe also engaged the services of a forensic accounting firm.

58.     Using the combined efforts of the Tribe's Accounting Department and the forensic accounting firm the Tribe began to expose a significant amount and types of fees being charged by the Trustee.

## UNAUTHORIZED FEES

### Monthly vs. Quarterly Statements

59.     The audit revealed that Wachovia initially created two different account numbers for the administration of the trust even though both accounts contained the same exact corpus. Instead of sending the Tribe and the minor beneficiaries and their guardians both account statements monthly and reflecting the same information about the fees and expenses being charged, the Trustee created three different sets of account statements:

      a.   a monthly statement sent to the tribal minor beneficiaries which contained no disclosure of fees or expenses charged to the minor beneficiaries;

      b.   a monthly statement sent to the tribe that disclosed some of the fees being charged to the minor beneficiaries; and

      c.   a quarterly statement reflecting some of the same fees and expenses and a host of other fees and expenses, which as explained below, the Tribe believed to be cumulative of the monthly statements.

60.     By splitting the account statements in two, the Trustee created a confusing arrangement that aided the Trustee's ability to conceal and obscure from the Tribe and the minor beneficiaries the complete scope of the fraudulent fees charged for the administration of the trust.

61.     Once the Trustee admitted to the charging of unauthorized fees and explained how they were reported among the differing account statements, it became clear that the account statements were another instrument utilized by the Trustee to deceive the Tribe and the minor beneficiaries and misrepresent the extent of the fees being inappropriately collected.

62.     The statements primarily did not contain adequate information for even a seasoned CPA to properly verify or calculate the amount of Trustee fees charged.  For instance, the Trustee fees are supposed to be calculated based on the average daily balance in the account.  The account statements do not contain daily balance information.  Eventually Wells Fargo provided the Tribe with an excel file containing the daily balance activity for the investment account as well as the transactional data for the account.  Until the tribe learned about the Trustee's fraudulent conduct it had no reason to question the accuracy of the calculations

63.     However, in order to utilize the information in the spreadsheet, the Tribe's and the forensic accounting firm had to employ advanced Excel techniques to write formulas and queries to assemble the data into a useable format. The data then had to be verified back to the account statements and certain data had to be manually reconstructed in order to verify and calculate the fees charged as compared to what should have been charged.  The task was time-consuming and onerous even for CPAs with extensive forensic accounting experience and remains incomplete.

64.     Aside from the permitted trustee fees being charged to the tribe minor beneficiaires, the Trustee was also fraudulently collecting at least six (6) additional unauthorized fees for the administration of the trust namely:

        a.    the aforementioned Wachovia Retirement Service fee ("WRS"),

        b.    a 12b-1 fee,

        c.    a revenue share fee,

17

      d.  a sub-transfer agency fee, and

      e.  a EB Asset fee, and

      f.  a EB-Trustee/Custodian Trustee Fee.

    65.    In an effort to conceal the complete scope of the charges for the administration of the trust, Wachovia and then Wells Fargo, would mail quarterly and annual Statements to the Tribe for the account ending ■■■.

18

# Wachovia Trust Statement

WACHOVIA BANK, N A
350 E LAS OLAS BLVD, ST 1900
FT LAUDERDALE, FL 33301

## *Account Statement*

**Statement Period:** 07/01/2009 - 09/30/2009

**Account Number:** ▓▓▓▓▓▓   **IP Number:** ▓▓▓▓▓▓

**Account Title:** SEMINOLE TRIBE OF FLORIDA
MINOR'S PER CAPITA PAYMENT
TRUST AGREEMENT UAD ▓▓▓07
WACHOVIA BANK, NA, TRUSTEE

## *For Answers Concerning Your Account Please Contact:*

**Trust Advisor :** BRYAN SINCLAIR
704-427-0936  or  800-745-7998
bryan.sinclair@wachovia.com

## *Table of Contents:*

| | |
|---|---|
| Account Summary | 3 |
| List of Assets | 4 |
| Transaction Detail | 6 |
| Important Information Concerning Your Account | 22 |

WACHOVIA BANK  N A
RISK/FIDUCIARY CONTROL
ATTN  JENNIFER JOYNER
100 N  MAIN STREET, NC6785
WINSTON-SALEM , NC  27101

19



IRT - MINNEAPOLIS
608 2ND AVE S
MAC N9303-09C
MINNEAPOLIS, MN 55402

**SEMINOLE TRIBE OF FLORIDA
MINOR'S PER CAPITA PAYMENT TRUST
AGREEMENT UAD 11/1/2007
WELLS FARGO BANK, N.A., TRUSTEE**

TRADE DATE, NOT REVIEWED
ACCOUNT NUMBER     4550
QUARTERLY STATEMENT
JANUARY 1, 2015   THROUGH MARCH 31, 2015

CEOTID

ACCOUNT CONTACT: KIM SCOTT
TELEPHONE NUMBER:

66.     To further its scheme to defraud, Wachovia and then Wells Fargo would mail

monthly and annual statements to the Tribe for the account ending in ████.



**WACHOVIA**

Fiduciary Services

WACHOVIA BANK, N.A.
1525 WEST W.T. HARRIS BLVD, 3C5
CHARLOTTE, NC 28288-1176

SEMINOLE TRIBE OF FLORIDA
MINORS TRUST

WACHOVIA BANK, NA, TRUSTEE

ACCOUNT NUMBER 

ENCLOSED IS YOUR CUSTOMER ACCOUNTING
FOR THE PERIOD FROM 01/01/09 TO 12/31/09
SHOULD YOU HAVE ANY QUESTIONS, PLEASE
CONTACT YOUR CONSULTANT

IF YOU ARE A PARTICIPANT IN THE COMMON TRUST FUNDS,
A COPY OF THE MOST RECENT ANNUAL REPORT IS AVAILABLE
UPON REQUEST WITHOUT CHARGE.

1    73    3    917 E0555 80945180
SEMINOLE TRIBE OF FLORIDA
JIM RAKER
6300 STIRLING ROAD
HOLLYWOOD FL 33024

Generally, the market prices or values of the securities were obtained from independent quotation services. Where market prices are not available from quotation services, Wachovia may use such prices, which to the best of its knowledge reflect the fair market value of such securities. In either case, these prices should not be considered to be bids or offers and may be subject to fluctuations in market conditions. Although the prices are believed to be accurate, Wachovia does not guarantee the accuracy of such prices.

Gains and losses on the sale, exchange, splits or spin-offs of securities are based on information available at the end of the statement period. Because some of this information may not be available to the industry from the security issuer when needed to produce this statement, certain transactions may be subject to a subsequent adjustment of the cost basis which may result in a restatement of earnings.
Investments in stocks, bonds, mutual funds and other securities:

---------------------------------------------------------
| ARE NOT FDIC INSURED | ARE NOT BANK GUARANTEED | MAY LOSE VALUE |
---------------------------------------------------------

Acquisition/Disposition and Purchases/Sales of Loan and Insurance assets are not reflected on the enclosed statement. A summary of loan and insurance transactions is being sent under separate cover. Please note, cash transactions which correspond to loan/insurance assets are listed and categorized by transaction type (e.g. Loan Principal Repaid, Loan Interest, etc.) in the enclosed statement

Estimated annual income is based on a projection of historical earnings and may not represent actual performance. Settlement date accountings, purchases and sales of securities are shown as of the contract settlement date which is normally the third business day after the date of execution (trade date). Trade date accountings show transactions based on trade date

21



WELLS
FARGO

RETIREMENT SERVICES
1525 W WT HARRIS BLVD
CHARLOTTE, NC 28262

# SEMINOLE TRIBE OF FLORIDA MINORS TRUST WELLS FARGO BANK, N.A., TRUSTEE

ACCOUNT NUMBER▪▪▪▪0377
ANNUAL STATEMENT
JUNE 1, 2010    THROUGH DECEMBER 31, 2010

ACCOUNT CONTACT: DEBRA CHARBONNET
TELEPHONE NUMBER: 954/765-3955

WELLS FARGO BANK, N.A., HEREBY CERTIFIES THAT
THE ENCLOSED STATEMENT FURNISHED PURSUANT TO
29 CFR 2520.103-5(C) IS COMPLETE AND ACCURATE

SEMINOLE TRIBE OF FLORIDA
JIM RAKER
6300 STIRLING RD
HOLLYWOOD FL 33024

*[signature]*

0301

67.     During the life of the trust, the Tribe adopted an accounting practice to prudently track the activity in the Minor Trust and to prepare the Tribe's accounting records based on the monthly statements provided by the Trustee for account ▪▪▪▪. The Tribe believed the information in the Quarterly Statements for account ▪▪▪▪ was duplicative and had no reason to suspect that the Quarterly Statements were fraudulent or contained different information than the monthly statements. Unbeknownst to the Tribe, the Quarterly Statements sent by the Trustee contained at

22

least three (3) different categories of fees and summarized "expenses" without explanation and was the main vehicle the Trustee used to conceal its fraudulent practices.

68. Also absent from the monthly 0377 statements were any fee disclosures and absent from **all** of the statements was the market value of the assets in the Minor Trust. This information is necessary to calculate the value of the assets and the fees charged based on the market value. Without this number it is virtually impossible to calculate whether the fees charged to the Tribe were proper (hence the necessity in creating the advanced accounting formulae adopted by the accountants working on this matter)



23

69.    Although the Trustee provided account information to the Tribe in the monthly and quarterly statements, the Trustee had an absolute fiduciary duty to provide the same or more information to each of the Tribe's Minor Beneficiaries of the Trust. However, **none** of the statements sent to the Tribal Minor Beneficiaries or their guardians reflected any fee charges. Indeed, despite the specific fiduciary duties the Trustee owed to the Minor beneficiaries –who were the ones actually paying the fees – the Trustee purposely omitted from the monthly statements sent to the minor beneficiaries any information regarding fees.



24

01/03/2013 to 02/02/2013
Page 2 of 2

## INVESTMENT PERFORMANCE

| | 3 Months | Year to Date | 1 Year | 3 Years | 5 Years | 10 Yrs /Since Inception | Inception Date |
|---|---|---|---|---|---|---|---|
| **Other** | | | | | | | |
| Seminole Tribe Minor Trt* | -0.02% | -0.17% | 0.66% | 2.22% | 2.16% | 3.01% | 04/09/03 |

Highlight indicates funds in which you are invested

The performance of the investments in your account may be different from the average annual return for the same investments because the timing of purchases and withdrawals into your account has an impact, either positive or negative on your account return. Past performance is no guarantee of future results.

Fund information contained herein (including performance information) is obtained from reliable sources, including the mutual fund companies, but is not guaranteed by Wells Fargo Bank, N.A. as to completeness or accuracy. Wells Fargo Bank, N.A. shall not be liable for any errors in content or for any actions taken in reliance thereon. Certain funds listed may impose redemption fees on shares that are transferred or exchanged out of the applicable fund before the applicable minimum holding period. An investor should consider the funds' investment objectives, risks, charges and expenses carefully before investing or sending money. This and other important information about the investment company can be found in the fund prospectus. To obtain a copy of the prospectus, please contact the fund company or call a Retirement Service Representative. Please read the prospectus carefully before investing.

## INVESTMENT SUMMARY

| | Shares Held | | Price | | Market Value | |
|---|---|---|---|---|---|---|
| | Beginning | Ending | Beginning | Ending | Beginning | Ending |
| **Other** | | | | | | |
| Seminole Tribe Minor Tr | ▬ | ▬ | $12 600 | $12 582 | ▬ | ▬ |
| **Total Assets** | | | | | ▬ | ▬ |

## CUSTOMER SERVICE

| | If you want to: | Contact or go to: |
|---|---|---|
| For Questions about the Account | • Update or correct addresses | Representatives Available<br>(954)966-6300 ext 11466<br>Monday - Friday 9:00am - 4:00 pm |

For questions on this statement. Call (954)966-6300 x11466

Please review the investment and activity information in this statement. If you have any questions regarding this information, please call the Customer Service Line immediately. Failure to advise Wells Fargo promptly, will constitute acceptance of this information as correct, and Wells Fargo will not be responsible for lost earnings.

70.   Further, the statements provided to the Minor beneficiaries were misleading as to the success of the investment strategies applied to the Trust principal being held for each beneficiary. Although the statements did contain a line item called "Investment Gain/Loss" and did discuss "investment performance" the statements always gave the impression that the portfolio

25

was growing in value without making it clear that the growth was actually coming primarily from the added monthly contributions by the Tribe and not prudent investment management by the Trustee. The statements omitted information that the added value was actually being reduced by the fees being charged pro rata to the Minor beneficiary which in some cases exceeded the investment related growth from the same period. As such, a reasonable Minor beneficiary would have no way of knowing that in some instances he or she was actually losing money due to the Trustee's failure to employ prudent investment strategies and the excessive fraudulent fees being charged.

## Wachovia Retirement Services Fee – At Least $6,068,188.79 Fraudulently Overcharged

71. Following the internal memo between Wachovia Personal Trust and Wachovia Retirement Services, on or about October 2005, Wachovia began implementing its scheme to defraud the minor beneficiaries by charging the minor beneficiaries a Wachovia Retirement Services fee.

72. This fee only appears on quarterly statements from the account ending in █████. The monthly statements sent to the Tribe and not to the minor beneficiaries contained absolutely no indication that this fee was being charged by the Trustee. Again, since the Tribe reasonably tracked the accounts using the monthly statements, the Tribe had no reason to suspect other fees were being buried in the supposedly cumulative quarterly statements.

26

**WELLS FARGO**

PAGE 12

| SCHEDULE OF BENEFIT PAYMENTS AND OTHER CASH DISBURSEMENTS | | SEMINOLE TRIBE OF FLORIDA |
| FOR THE PERIOD JULY 1, 2011 THROUGH SEPTEMBER 30, 2011 | | ACCOUNT NUMBER ▮▮▮▮4550 |

| DATE | DESCRIPTION | CASH |
|------|-------------|------|
| | EXPENSES | |
| | ADMINISTRATIVE EXPENSES | |
| | WELLS FARGO BANK FEE | |
| 7/20/11 | FEE<br>WELLS FARGO BANK FEE | 54,073.48- |
| 8/22/11 | FEE<br>WELLS FARGO BANK FEE | 54,858.96- |
| 9/20/11 | FEE<br>WELLS FARGO BANK FEE | 56,203.01- |
| 9/23/11 | FEE<br>WELLS FARGO BANK FEE | 56,203.01- |
| 9/28/11 | FEE<br>WELLS FARGO BANK FEE | 59,860.60- |
| | TOTAL WELLS FARGO BANK FEE | 168,793.04- |
| | TOTAL ADMINISTRATIVE EXPENSES | 168,793.04- |
| | OTHER EXPENSES | |
| | MISC FEES AND EXPENSES | |
| 7/06/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES | 86,130.39- |
| 8/02/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES | 90,402.09- |
| 9/02/11 | CASH DISBURSEMENT<br>PAID TO NA<br>MISC FEES AND EXPENSES | 92,775.18- |

73.     From the information provided to the Tribe it appears that the Trustee continually charged the Wachovia Retirement Services fees to the minor beneficiaries through June 2015 totaling in excess of **$6,068,188.79.**  These totals are likely lower than the actual fees charged and

collected by the Trustee because the Trustee has yet to provide the Tribe (or any beneficiary) with documentation and information necessary to accurately calculate the fees. Instead, the Tribe has had to construct sophisticated workarounds in an attempt to roughly estimate the fee totals.

74.     Even with the combined efforts of multiple CPA's the above number is most likely understated since the Tribe is missing information from April 2005 through July 2011. The Tribe has requested this information from Wells Fargo multiple times and Wells Fargo is actively concealing the information from the Tribe to delay or block a complete accounting to the Minor beneficiaries who, to date, the Trustee has failed to notify of any improper.

75.     These statements were and are clearly fraudulent and intended to deceive the minor beneficiaries since they failed to provide daily balances along with other data necessary for any third-party to calculate the total fees.

### Revenue Share Fees – At Least $1,116,444.90 Fraudulently Overcharged

76.     Another fraudulent charge the Trustee collected from the tribe minor beneficiaires was a revenue share fee collected by the Trustee directly from the various mutual funds in which the Minor Trust funds were invested in during the period from June 2009 to April 2015.

77.     The mutual funds would pay the Trustee a fee for choosing to invest in a particular fund. The fund and the Trustee would enter into a private agreement memorializing this relationship and establishing a revenue share fee. The Tribe was never given access to these agreements and the beneficiaries were never provided notice of this relationship. In fact, this is another piece of information requested by the Tribe from Wells Fargo in early 2015 which has yet to be provided.

78.     When the mutual fund ceased making revenue share payments, the Trustee, with no notice to the minor beneficiaries began charging the minor beneficiaires this fee. From June

2009 through April 2015 the Trustee regularly charged the tribe minor beneficiaires a Revenue Share fee totaling **$1,116,444.90.**

79.     This fee only appears on the quarterly 4550 account statements and was never disclosed on the monthly statements provided to the Tribe or the Minor beneficiaries. Furthermore, these statements only went to the Tribe and never to the minor beneficiaries to whom the Trustee owed a duty to account.



29

80.     Moreover, the Trustee is under a duty to make affirmative disclosures to the beneficiaries of its intention to undertake a "nonroutine" transaction, and a decision in determining the trustee compensation would fall under this category. However, the Trustee never informed any of the minor beneficiaries of receiving a revenue share kickback from the mutual fund or charging the Tribe this fee.

81.     The Trustee was under a fiduciary duty to inform the minor beneficiaries of the relationship between the fund and the Trustee to allow the minor beneficiaries to evaluate the motivations behind the investment in the particular fund.  Instead, the Trustee engaged in an ongoing scheme to intentionally deceive the minor beneficiaries and their guardian(s) through the use of fraudulent account statements.  In addition to returning any revenue share fee actually charged directly to the minor beneficiaries, Wells Fargo should also pay back or disgorge any such fee paid by a third party which would have otherwise resulted in better investment returns for the minor beneficiaries.

**Sub-Transfer Agency Fees  – At Least $766,050.40 Fraudulently Overcharged**

82.     The Trustee commenced charging the tribe minor beneficiaires the Sub Transfer Agency Fee on August 2010 and fraudulently charged this fee on a semiregularly basis through February 2015 totaling **$766,050.40.**

83.     This fee appeared on the 0377 account statements which only went to the Tribe and was never sent to the minor beneficiaries to whom the Trustee owed a duty to disclose. However, since these statements were created to intentionally deceive the Tribe and the minor beneficiaries, the Tribe and the minor beneficiaries were indeed fooled into believing these fees fell under the umbrella of the approved Trustee fee. Also, had the Tribe attempted to calculate the fees to

determine if this was indeed part of the fee schedule or exceeded the approved fees, the 0377

statement intentionally lacked vital information to reengineer the totality of the fees.



**EB-Trustee/Custodian Trustee Fees – At Least $636,349.35 Fraudulently Overcharged**

84.     The Trustee also commenced charging the tribe minor beneficiaires the EB- Asset

Fee in August 2005 and semiregularly charged this fee through June 2015 totaling in excess of

**$636,349.35**

85.     This fee also appeared on the 0377 account statements which were only sent to the Tribe and was never mailed to the minor beneficiaries to whom the Trustee owed a duty to disclose. Again, based on the intentionally misleading nature of the name of the fee as a "Trustee / Custodian Fee" and obvious lack of sufficient information in the 0377 statement to enable the tribe to accurately calculate the basis for the fee, the Tribe reasonably believed this was part of the agreed upon Trustee fees and not an additional fee not previously agreed upon.



32

**EB Asset Fee – At Least $80,326.87 Fraudulently Overcharged**

86.     The Trustee commenced charging the tribe minor beneficiaires the EB - Asset Fee in September 2005 and routinely charged the tribe minor beneficiaires this fee through April 2007 totaling in excess of **$80,326.87.**

87.     Again, this fee only appears on the 0377 account statement, which the Trustee only mailed to the Tribe and not to the minor beneficiaries to whom the Trustee owed a duty to disclose. This statement was an instrument created by the Trustee to intentionally deceive the Tribe and the minor beneficiaries and assist the Trustee in concealing the extent of fees being collected for the administration of the trust. Not only were these statements constructed to fool an unsophisticated party like the minor beneficiaries the statements were also obscure enough to confuse a team of forensic accountants.

```
FOR THE PERIOD 01/01/05        SCHEDULE OF FEES AND OTHER EXPENSES           PAGE 19
       THROUGH 12/31/05               SEMINOLE TRIBE OF FLORIDA         ACCOUNT #  ████0377
                                  MINORS' PER CAPITA PAYMENT TRUST

   DATE   DESCRIPTION                              CASH

          PAYMENT OF TRUSTEE FEES
          -----------------------
08/26/05  EB - TRUSTEE FEE - EFFECTIVE            9,360.00
          08/25/05

09/19/05  EB - TRUSTEE FEE - EFFECTIVE            3,208.00
          09/16/05

10/26/05  EB - TRUSTEE FEE - EFFECTIVE            3,216.00
          10/25/05

11/03/05  EB - TRUSTEE FEE - EFFECTIVE           18,655.03
          11/02/05 REBATE FEE FOR NOV

11/14/05  EB - TRUSTEE FEE - EFFECTIVE            4,817.09
          11/10/05 REBATE FEE FOR NOV

11/23/05  EB - TRUSTEE FEE - EFFECTIVE            3,184.00
          11/22/05

12/16/05  EB - TRUSTEE FEE - EFFECTIVE            3,224.00
          12/15/05

12/22/05  EB - TRUSTEE FEE - EFFECTIVE            5,265.33
          12/21/05 REBATE FEE FOR DEC

TOTAL PAYMENT OF TRUSTEE FEES                    50,937.45


          PAYMENT OF ASSET FEES
          ---------------------
09/12/05  ████████████████████             1,285.13
          09/09/05 FOR FUND: SEMINOLE
          TRIBE MINOR T CUSIP: 996106845
          ASSET TYPE: STANDARD

09/15/05  ████████████████████             3,655.67
          SEMINOLE TRIBE MINOR TRUST FUND
```

## 12B-1 Fees – At Least $19,189.51 Fraudulently Overcharged

88.      The Trustee also commenced charging the tribe minor beneficiaires a 12B-1 fee on August 2011 and routinely charged the tribe minor beneficiaires this fee through May 2014. Again, this fee only appears on the quarterly 4550 account statements and was never disclosed on the monthly statements provided to the Tribe or the minor beneficiaries and these statements were only delivered to the Tribe and never to the minor beneficiaries to whom the Trustee owed a duty to disclose.

34

**WELLS FARGO**

PAGE 13

SCHEDULE OF BENEFIT PAYMENTS AND OTHER CASH DISBURSEMENTS
FOR THE PERIOD JULY 1, 2011 THROUGH SEPTEMBER 30, 2011

SEMINOLE TRIBE OF FLORIDA
ACCOUNT NUMBER ██████550

| DATE | DESCRIPTION | CASH |
|------|-------------|------|
| | TOTAL MISC FEES AND EXPENSES | 269,307.68– |
| 9/07/11 | CASH DISBURSEMENT<br>PAID TO WELLS FARGO BANK,N.A<br>12B-1 FEE<br>12B-1, REV SHARE, AND/OR SHAREHOLDER SERVICING FEE<br>08/2011,VP7000236,WF ADV HERITAGE SELECT | ███ |
| | TOTAL OTHER EXPENSES | 269,816.09– |
| | TOTAL EXPENSES | 438,609.13– |
| | OTHER CASH DISBURSEMENTS | |
| | OTHER MISC DISBURSEMENT | |
| 7/08/11 | CASH DISBURSEMENT<br>PAID TO<br>OTHER MISC DISBURSEMENT | 144,195.34– |
| 7/12/11 | CASH DISBURSEMENT<br>PAID TO<br>OTHER MISC DISBURSEMENT | 48,859.38– |
| 8/09/11 | CASH DISBURSEMENT<br>PAID TO<br>OTHER MISC DISBURSEMENT | 29,134.30– |
| 8/10/11 | CASH DISBURSEMENT<br>PAID TO<br>OTHER MISC DISBURSEMENT | 129,226.23– |
| 9/07/11 | CASH DISBURSEMENT<br>PAID TO<br>OTHER MISC DISBURSEMENT | 461,091.55– |

89.     From the information the Tribe already possessed it appears through June 2015 the

Trustee has fraudulently charged the tribe minor beneficiaires in excess of **$19,189.51.**

90.     Again, Wells Fargo has repeatedly failed to provide and has actively concealed

information necessary for the Tribe to determine the frequency and amounts actually charged. In

particular, Wells Fargo remains in possession of statements from April 2005 through July 2011

for the account ending in ███ which would allow the Tribe to determine how much more the

Trustee fraudulently charged and collected from the minor beneficiaries.

35

## MISMANAGEMENT OF TRUST

91.    With the amount of fees the Trustee was fraudulently collecting from the minor beneficiaries for the administration of the Minors' Trust and the amount of money in the trust, the Trust should have historically outperformed the market, however, the Trustee's conduct relating to the administration of the trust and the adoption of imprudent investment strategies have left the performance of the trust floundering. The Trust's performance has been stifled by the investment strategies adopted by the Trustee and the fees charged to the tribe minor beneficiaires for the administration of the Trust are directly impacting the corpus of the Trust.

92.    The Trustee was all too happy to collect these fraudulent fees and allow the Trust corpus to incur significant losses. The Trustee seldom took any action to increase the profitability of the Trust and was content on allowing the Trust to auto-pilot itself into troubled waters.

93.    For example, it is a per se violation of Florida's Prudent Investor to fully invest the funds of the Minors' Trust in a single asset class and failing to diversify these funds over the life of the Trust.

94.    "The prudent investor rule requires a trustee not to avoid risk altogether but rather to evaluate the beneficiaries' risk tolerance and the purpose of the trust, choose a commensurate level of overall market risk and expected return, and avoid wasteful idiosyncratic risk." Dukeminier and Sitkoff (2013, p. 635)

95.    The Trustee is under an ongoing duty to monitor investments and to make portfolio adjustments if and when appropriate, however, none of that took place. While the Trustee was collecting exorbitant fraudulent fees from the minor beneficiaries the Trust was underperforming since the funds were fully invested in government bonds, short terms debt, mutual funds and short term treasuries. Essentially the portfolio lacked any risk.

36

96.     Even a minimal 10% adjustment to the allocation of the portfolio would have dramatically increased the gains to the Trust corpus.

97.     However, the Trustee grossly negligently failed to prudently invest the funds and adequately match the risk profile to the beneficiaries. The Tribal minors are in a unique economic position to tolerate more risk than the average American. For example, college tuition, one of the biggest financial burdens in a lifetime, is covered by the Tribe for its members. This additional "benefit" should have been considered when implementing an investment strategy.

98.     The Trustee's failure to prudently invest the Trust funds has caused the Minor Trust to underperform and has caused the minor beneficiaries and the Tribe to sustain in excess of $100,000,000 in damages for the loss of value.

99.     The adoption of these strategies by the Trustee was a direct result of gross negligence, ineptitude and inertia of officers acting as agents of and on behalf of the Trustee for the benefit of the minor beneficiaries. Specifically, throughout the life of the Trust defendant's Charbonnet, Carris, Spelane, Joyce, Scott, Barnhardt and Johnson all incompetently and in a grossly negligent manner adopted an imprudent portfolio.

100.    Astonishingly, at some points over the life of the Trust the fees exceeded the funds earned on the account. In 2013, the account suffered losses exceeding $90,000 – in other words the realized losses on investments exceeded all gains and earnings on the account for the entire year. Yet during that same time period, the Trustee charged the minor beneficiaries more than $1.8 million in fees, further highlighting the Trustee's incompetence and gross negligence managing the trust.

101.    In both 2014 and 2015, the fees consumed more than 25% of the income and investment gains earned on the account.  Total income and realized gains for 2014 was

approximately $8 million and the fees charged by the Trustee were $2.1 million – equating to approximately 26% of the income earned on the account. In 2015, that figure increased to an astronomical 32% of the earnings.

102.    The performance of the Trust also directly impacts the Tribe's financial stability in its role providing essential government services. Having received a smaller distribution upon obtaining the age of eligibility the now adult Tribal members must rely upon government services more heavily causing a drain on the limited tribal resources.

103.    Furthermore, throughout the life of the Minors' Trust the Trustee made significant changes to both the fee schedules and the investment portfolio. The Trustee was under a duty to make affirmative disclosures to the minor beneficiaries of its intention to undertake "nonroutine" transactions, and a decision in determining the trustee compensation and important adjustments being considered in investment or other management strategies would fall under this category. However, the Trustee never informed any of the minor beneficiaries of the fraudulent fees or dramatic change in prudent investment strategies.

104.    The amendments to the fee schedules were also opportunities for the Trustee to inform the Tribe and the minor beneficiaries of the scope of the fraudulent fees being charged. However, the Trustee purposely omitted and misrepresented information about the scope of fees to the Tribe or the minor beneficiaries.

105.    Coupled with the fact that the Minor Trust was collecting millions of dollars in fraudulent unauthorized fees, the minor beneficiaries having lost over a hundred million dollars in value due to grossly negligent investing practices and the Tribe now burdened with having additional members reliant upon government services, it is apparent that the Trustee fraudulently and grossly neglected its duties.

**PARTIES**

106.     Plaintiff, Seminole Tribe of Florida is a federally recognized Indian tribe and maintains its governmental headquarters in Broward County, Florida.

107.     Plaintiff, JOHN DOE 1 is a current Beneficiary of the Minors Trust who is over the age of 18 but has not received a distribution and is a qualified beneficiary under the Trust.

108.     Plaintiff, JOHN DOE 2 is an adult Tribal Member who used to be a beneficiary but received a distribution under the Trust after January 13, 2012.

109.     Plaintiff, JOHN DOES 3 is an adult guardian/parent of a current minor beneficiary of the Minors Trust who is under the age of 18 and has yet to receive a distribution.

110.     Defendant, WELLS FARGO BANK, N.A. is a national bank doing business under the laws of the United States and is the legal successor in interest to Wachovia. At all times each individual Defendant identified below was acting as an agent of and on behalf of the Trustee in implementing the fraudulent charges and the imprudent investment strategy.

111.     Defendant, MELISSA LADER BARNHADT is an individual and currently Senior Vice President, Senior Fiduciary Advisory Specialist Wells Fargo Bank and is subject to personal jurisdiction in Florida because she is a resident of Florida and under Florida Statute section 48.193(1)(a) she has engaged in business in Florida in her role as the relationship manager for Wells Fargo.

112.     Defendant, DEBRA CHARBONNET is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because she is a resident of Florida and has engaged in business in Florida in her role as the relationship manager for Wachovia.

113.     Defendant, THOMAS JOYCE is an individual and currently the Senior Trust and Fiduciary Manager Senior Vice President at Wells Fargo and is subject to personal jurisdiction in

Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

114.   Defendant, TERRI JOHNSON is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

115.   Defendant, KIM SCOTT is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wells Fargo and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

116.   Defendant, MARC SPELANE is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

117.   Defendant, MICHAEL S. CARRIS is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f),

because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

118. Defendant, MARK LAKE is subject to personal jurisdiction in Florida under Florida Statute section 48.193(1)(a) because he has engaged in business in Florida in his role as the relationship manager for Wachovia and, under Florida Statute section 48.193(1)(f), because his acts caused injury to property within Florida arising out of an act or omission outside Florida, while, at the same time, he engaged in solicitation or service activities within Florida.

## JURISDICTION AND VENUE

119. This Court has jurisdiction over the claims as the amount in controversy exceeds $15,000.00, exclusive of interest, costs, and attorney's fees.

120. Venue is proper in the Circuit Court for the 17th Judicial Circuit, in and for Broward County, Florida, because it is where the causes of action accrued, where one or more of the Plaintiffs reside, and where many of the underlying events alleged in this Complaint occurred.

121. All conditions precedent to the commencement and prosecution of this action, if any, have been performed, waived, satisfied, or excused. Plaintiffs have retained the undersigned counsel and are obligated to pay them a reasonable fee for their services.

122. All the allegations contained in this Complaint arise out of the conduct associated with interests in Broward County, Florida.

## CAUSES OF ACTION

### Count I – Breach of Fiduciary Duty
### (By Plaintiffs Against All Defendants)
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for breach of fiduciary duty.

41

123.    The defendants undertook a duty to advise, counsel and protect the plaintiffs in directing, managing and investing the funds under their control. As defendants owed Plaintiffs a fiduciary duty.

124.    As Trustee, Wells Fargo owes a fiduciary duty to the minor beneficiaries under the Minors' Trust agreement.

125.    The Defendants have a fiduciary duty to deal honestly and with good faith towards the minor beneficiaries.

126.    Defendants breached their fiduciary duty, through the improper collection of unauthorized fees and absence of good faith by otherwise engaging in the wrongful conduct described herein.

127.    The defendants breached their fiduciary duty by failing to invest the trust funds in such a way as to protect the corpus and generate the income required to provide for the beneficiaries.

128.    The breach of the fiduciary duty resulted in and was the proximate cause of the damages suffered by the Plaintiffs.

WHEREFORE, the plaintiffs demand judgment for damages against the defendants, in an amount to be determined at trial, attorneys' fees and costs pursuant to Florida Statute § 736.1004, and respectfully request the Court grant such further relief it deems just, fair and equitable.

## Count II– Gross Negligence
### (By Against All Defendants)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for negligence

129.    When Wells Fargo took over the trust as part of its acquisition of Wachovia, it undertook the obligations imposed on the trustee as stated in the governing trust document.

42

130.    Wells Fargo had a duty and obligation to the Plaintiffs under the law as a Trustee of the Trust and a fiduciary to the Plaintiff to conform to certain standards of conduct for the protection of the Plaintiff against unreasonable risks.

131.    Wells Fargo did not conform to the standards required as evidenced by its breach of trust and breach of fiduciary duties towards the Plaintiff. Wells Fargo breached that duty by failing to preserve the trust corpus and investing in an imprudent manner.

132.    As further alleged herein, Wells Fargo's' and its representative's conduct constitute an extreme departure from the ordinary standard of conduct. Such outrageous lack of care represents an extreme departure from the ordinary standard of conduct.

133.    The plaintiffs have suffered injury as result of Wells Fargo's actions, lack of appropriate actions and great indifference to the Plaintiff's rights as a result of its gross negligence and other dereliction of duties which amount to a reckless and careless disregard for the interests of the Tribal Minor Beneficiaries to whom they owed the utmost highest duty of loyalty and trust.

134.    The injury and the damages sustained by the plaintiffs was the legal and proximate cause of the grossly negligent conduct of the defendant's.

WHEREFORE, the plaintiffs, demand judgment for damages against the defendants, in an amount to be determined at trial, attorneys' fees and costs pursuant to Florida Statute § 736.1004, and respectfully request the Court grant such further relief it deems just, fair and equitable.

### Count III – Breach of Trust
**(By Plaintiff Against Wells Fargo, Barnhardt, Johnson and Joyce)**
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for Breach of Trust .

135.    The defendants had a duty to in direct, manage and invest the trust corpus under their control.

43

136.    As Trustee, Wells Fargo owes a duty to the minor beneficiaries under the Minors' Trust agreement.

137.    The defendants had a duty invest the trust funds in such a way as to protect the corpus and generate the income required to provide for the beneficiaries.

138.    The defendants breached their duty by adopting an imprudent investment strategy and failed to take into account the appropriate risk profile of the beneficiaries.

139.    The defendants then breached their duty by failing to inform the beneficiaries of any change in investment strategies.

140.    The defendants also breached their duty by failing to provide an adequate accounting of the Trust to the Minor beneficiaries or their guardians as required under the governing trust documents.

141.    The breach of the fiduciary duty resulted in and was the proximate cause of the damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against defendants Wells Fargo, Barnhardt, Johnson and Joyce for specific performance, damages, costs, prejudgment interest, and any other relief as the Court deems just and proper.

### Count IV– Professional Malpractice
### (By Plaintiffs Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 122 as through fully alleged in this claim for professional malpractice

142.    Wells Fargo was employed by the Tribe to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

143.    Wells Fargo breached its duty of care to the beneficiaries. Wells Fargo failure to adopt prudent investment strategies and its collection of unauthorized fees amounted to a breach of Wells Fargo's duty of care.

44

144.    Had Wells Fargo adopted generally accepted practices for the trust portfolio the trust corpus would be greater and the beneficiaries would be eligible for larger distribution upon reaching the age of majority.

145.    Wells Fargo's negligence was the legal and proximate cause of damages to the Tribe.

WHEREFORE, Plaintiffs requests that the Court enter judgment in its favor and against Defendant Wells Fargo for damages and costs, and any such other relief the Court deems appropriate.

### Count V – Unjust Enrichment
### (By Plaintiffs Against Wells Fargo)
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for unjust enrichment.

146.    Plaintiffs provided benefits to Wells Fargo by paying fees for the administration of the Minor's Trust.

147.    Wells Fargo voluntarily accepted the payments of unauthorized fees, such as, the the WRS fee, a 12b-1 fee, a revenue share fee, a sub-transfer agency fee, and a EB Asset fee and EB-Trustee/Custodian Trustee Fee appreciated the value of the benefit conferred upon them, and retained this benefit.

148.    It would be inequitable for Wells Fargo to retain those benefits because those charges were not disclosed and the statements never fully disclosed the entire universe of charges.

149.    As a direct and proximate result, Wells Fargo has been unjustly enriched by the retention of those unauthorized charges to the minor beneficiaries. In equity and good conscience the fees should be returned to the minor beneficiaries.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for damages, prejudgment interest, costs, and any other relief as the Court deems just and proper.

### Count VI– Accounting
### (By Plaintiffs Against Wells Fargo)

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for an accounting.

150.    The Tribe has an interest in the performance of the Minors' Trust.

151.    The Defendant had a duty to provide accountings under the terms of the Trust and Florida Statute 736.08135.

152.    All accountings made to date have been incomplete, missing information and do not even qualify as informal accountings. Wells Fargo, as Trustee has not provided the minor beneficiaries with an adequate accounting or information for the minor beneficiaries to calculate the fees collected during the life of the trust.

153.    There is an inadequate remedy at law as to the financial information.

154.    The Plaintiff asks the Honorable Court, to order the Defendant to provide an accounting for the period between April 20, 2005 and the present that comply with all Florida Statutes. This will result in an accounting that is clear, complete and in a form that a minor beneficiary can understand.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for an accounting of fees charged and collected by Wells Fargo and all subsequent trustees in their role administering the Minors' Trust.

**Count VII – Violation of Prudent Investor Rule**
**(By Plaintiff Against Wells Fargo)**

The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for Violation of Fla. Stat. 518.11.

155.    Wells Fargo was appointed by the Tribe as Trustee for the 2012 Minors' Trust to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

156.    Florida Statute 518.11, Investments by Fiduciaries, Prudent Investor Rule, is a set of duties that a fiduciary must follow.

157.    Wells Fargo never complied with any of those duties, including but not limited to consulting the minor beneficiaries about the investment objectives of the Trust. The Defendant never reviewed the investments of the Trust to evaluate the investments according to market conditions. The majority of the assets of the trust were left to languish in a money market fund. There was no overall investment strategy. There was no attempt to diversity the investments or to make investments that were in the interests of the minor beneficiaries.

158.    Wells Fargo never pursued an investment strategy in accordance with Florida Statute 518.11 that considered both the reasonable production of income and safety of capital, consistent with the fiduciary's duties and purposes of the trust.

159.    Wells Fargo never considered the general economic conditions, the role each investment played within the overall portfolio, or the expected total return including both income yield and appreciation of capital.

160.    Florida requires a fiduciary to invest and manage investment assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust.

47

161.     Wells Fargo was required to exercise reasonable care and caution in the creation and management of the investment portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust.

162.     Wells Fargo breached its duty of care to the beneficiaries. Wells Fargo failed to adopt prudent investment strategies and failed to follow generally accepted practices for the investment of the trust portfolio.

163.     Wells Fargo failed to takes all the steps a reasonable investor would take to properly manage the Minor Trust investment portfolio and breached his fiduciary duties by not following the prudent investor rules explicitly defined by Florida Statute 518.11.

164.     Wells Fargo's negligence was the legal and proximate cause of damages to the beneficiaries.

WHEREFORE, Plaintiffs requests that the Court enter judgment in its favor and against Defendant Wells Fargo for damages and costs, and any such other relief the Court deems appropriate.

### Count VIII– Fraud
#### (By Against Wells Fargo, Barnhardt, Scott, Johnson and Joyce)
The plaintiffs, incorporate by reference the facts alleged in paragraphs 1 through 120 as through fully alleged in this claim for negligence

165.     Wells Fargo was appointed by the Tribe as Trustee for the 2012 Minors' Trust to provide trust administration services to the minor beneficiaries and as Trustee owed a duty to the minor beneficiaries.

166.     Wells Fargo knowingly and fraudulently charged and collected millions of dollars in unauthorized fees from the minor beneficiaries, such as, the WRS fee, a 12b-1 fee, a revenue share fee, a sub-transfer agency fee, and a EB Asset fee and EB-Trustee/Custodian Trustee Fee.

48

167.    Wells Fargo and its agents/representatives has admitted in collecting unauthorized fees from the minor beneficiaries.

168.    Wells Fargo intended that the Trust statements would conceal the entire extent of fees being charged to the minor beneficiaries so that Wells Fargo could continue serving as Trustee to the Minors' Trust. The minor beneficiaries reasonably believed that the misleading statements were the full embodiment of the fees negotiated with Wells Fargo.  Had the minor beneficiaries known the statements were structured to conceal millions of dollars in unauthorized fees, Plaintiffs would not have continued the relationship with Wells Fargo.

169.    In addition, Defendants Barnhardt, Scott, Johnson and Joyce have engaged in an ongoing to scheme to frustrate the minor beneficiaries from obtaining the information necessary to fully account for the fraudulent fees charged.  For months the Tribe, on behalf of its minor beneficiaries, have made numerous requests (no less than eleven (11) times) from defendant Scott and Barnhardt but either received no response or was advised that the information was being located.

170.    Instead of providing the information necessary to fully account for the fraudulent fees charged, Barnhardt, Scott, Johnson and Joyce attempted to cover up the scope of its misdeeds by offering a miniscule refund of one of the unauthorized fees and a reduced fee structure to placate the Tribe for years of collecting unauthorized fees from the tribe minor beneficiaires

171.    As a direct and proximate result of the fraud by Defendant's Wells Fargo, Barnhardt, Scott, Johnson and Joyce, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment against Wells Fargo for damages, prejudgment interest, costs, and any other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

DATED this 20th day of January, 2016.

/s/ALBERT L. FREVOLA, JR.
William R. Scherer
Florida Bar No. 169454
wscherer@conradscherer.com
ALBERT L. FREVOLA, JR.
Florida Bar No. 857416
afrevola@conradscherer.com
JACK S. KALLUS
Florida Bar No. 56111
jkallus@conradscherer.com
CONRAD & SCHERER, LLP
633 S. FEDERAL HIGHWAY 8 FL
FORT LAUDERDALE, FL 33301
Tel.: (954) 462-5500
Fax: (954) 463-9244
*Attorneys for Plaintiffs*

RE:   SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

SEMINOLE TRIBE OF FLORIDA
HOLLYWOOD, FLORIDA

RESOLUTION NO. C-157-05

WHEREAS,   the Seminole Tribe of Florida is an organized Indian Tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

WHEREAS,   the Tribal Council, by Ordinance No. C-01-05, approved a new Seminole Tribe of Florida Revenue Allocation & Per Capita Distribution Plan (hereinafter "Plan"); and

WHEREAS,   the Tribal Council, the governing body of the Seminole Tribe of Florida, proposes to create a grantor trust (hereinafter "Minors' Trust") for the benefit of the Seminole Tribe of Florida's current and future Minor Qualified Enrolled Tribal Members (hereinafter "Minors") which would comply with the requirements of the Indian Gaming Regulatory Act and the Plan; and

WHEREAS,   Section 7 of the Plan provides for the deposit of any per capita distribution payments in excess of $3,500.00 of the Minors during any month into the Minors' Trust created for the benefit of such Minors as approved by the Tribal Council for the future health, education and welfare of said Minors; and

WHEREAS,   each Minor's share in the Minors' Trust shall be separately accounted for. Per capita payments deposited into the Minors' Trust shall be invested with income earned being allocated among the shares of the Minors in respect to the principal allocated to such shares for future distribution. The principal and income allocated to the Minor's share of the Minors' Trust may be distributed or applied for the benefit of such Minor as provided for in the Minors' Trust. The independent trustee shall distribute the remaining principal and any accumulated income allocated to said Minor's share of the Minors' Trust as and when the Minor attains the age of 18 unless the Minor is incompetent or incarcerated. In that event, the independent trustee shall distribute the Minor's entire accumulated share of the Minors' Trust to the acting independent trustee of the Seminole Tribe of Florida Incompetent Members Per Capita Payment Trust Agreement or Seminole Tribe of Florida Incarcerated Members Per Capita Payment Trust Agreement, as applicable, then in existence to be held as a separate share for the benefit of the former Minor.; and

WHEREAS,   the Treasurer of the Seminole Tribe of Florida recommends the establishment of the Minors' Trust and the appointment of Wachovia Bank, N.A. as the independent trustee for the Minors' Trust pursuant to a proposed Minors' Per Capita Payment Trust Agreement, a copy of which is attached hereto, marked Exhibit "A," and by   this reference is incorporated herein; and

WHEREAS,   the Tribal Council having reviewed the proposed Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement is otherwise fully advised

EXHIBIT

A

RE:   SEMINOLE TRIBE OF FLORIDA MINOR'S PER CAPITA PAYMENT TRUST AGREEMENT

RESOLUTION NO. C-157-05

PAGE 2 OF 2

NOW THEREFORE BE IT RESOLVED:  that the Tribal Council of the Seminole Tribe of Florida hereby approves the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A.; and

BE IT FURTHER RESOLVED:  that the Chairman of the Tribal Council is hereby authorized and directed to execute the  Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A. with the Secretary of the Seminole Tribe of Florida to attest to his signature; and

BE IT FURTHER RESOLVED:  that the Treasurer of the Seminole Tribe of Florida is hereby authorized and directed to deposit the designated portion of the Minors' per capita payments into the Minors' Trust in accordance with the Plan and the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement with Wachovia Bank, N.A.; and

BE IT FURTHER RESOLVED:  that Wachovia Bank, N.A. is hereby appointed as the independent trustee for the Minors' Trust and the Treasurer of the Seminole Tribe of Florida is hereby authorized and directed to compensate Wachovia Bank for its services as the independent trustee for the Minors' Trust; and

BE IT FURTHER RESOLVED:  that this Resolution is hereby adopted after a motion made by  Max B. Osceola, Jr., seconded by David R. Cypress, and a roll call vote as follows:

Chairman Mitchell Cypress.................................................................. .....AYE
Vice-Chairman Moses B. Osceola......................................................... .....AYE
Council Representative David R. Cypress............................................ ......AYE
Council Representative Roger Smith..................................................... ......AYE
Council Representative Max B. Osceola, Jr........................................... .....AYE

DONE THIS THE 20TH DAY OF April, 2005, at a special meeting of the Tribal Council, duly convened at the Big Cypress Seminole Indian Reservation, Hendry County, Florida, with a quorum being present, by a vote of 5 For, 0 Against, with 0 Abstentions.

Chairman
TRIBAL COUNCIL

ATTEST:

Secretary
TRIBAL COUNCIL

*[handwritten: Signed Minors Trust Docs]*

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT
### (Terminates at Age 18)

THIS AGREEMENT is made as of the __*20*__ day of __*April*__, 2005,

between the SEMINOLE TRIBE OF FLORIDA, a federally recognized tribe under 25 U.S.C. §476

(hereinafter referred to as the "Grantor"), and WACHOVIA BANK, NATIONAL ASSOCIATION,

a national banking association, and its successors in interest by merger (hereinafter together referred

to as "Trustee").

### WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor

Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").

Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and

all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust

Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and

purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as

the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT".

### ARTICLE I

### IRREVOCABLE GRANTOR TRUST

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the

Internal Revenue Code, and that it be irrevocable. Grantor may, at any time, and from time to time,

demand that the Trustee transfer to the Tribe such asset or assets of any separate trust or share

created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et. seq. ("IGRA").

<div align="center">

**ARTICLE II**

**PURPOSE**

</div>

Grantor intends for this Trust to comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she attains the age of eighteen (18) years and to make distributions pursuant to the terms of this trust prior to the time such Minor Qualified Enrolled Tribal Member attains the age of eighteen (18) years as may be required to provide for his or her extraordinary or emergency medical needs as determined hereunder.

<div align="center">

**ARTICLE III**

**DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS**

</div>

A.   Division. One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article X, to which each beneficiary is entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the

trust shall be administered and accounted for it as though it were a separate trust. A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate trusts be combined for ease of administration, provided that the separate character of the beneficiaries' shares be preserved. The Trustee shall account for the interest of each beneficiary separately, and a trust account statement shall be available at least quarterly to Guardian of the beneficiary.

      B.    <u>Distributions</u>.

          1.    <u>Discretionary Payments</u>. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate trust share and, after paying from each beneficiary's separate trust share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein. If, before any beneficiary reaches the age of eighteen (18) years, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary may request a distribution from the beneficiary's share of the trust to apply to such purpose, either through reimbursement of documented and verified expenditures made for the benefit of the beneficiary or payments to be made to a third party. Any decision of the Trustee to invade the beneficiary's separate trust share for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions made hereunder shall be from income first and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no

distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed when he or she attains the age of eighteen (18) years pursuant to Article III, B. 3.

2.    <u>Fiduciary Duty</u>.  Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management.  The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law.  No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

3.    <u>Upon Attaining the Age of Majority</u>.  Except as otherwise provided herein, upon any beneficiary attaining the age of eighteen (18) years, the Trustee shall distribute that beneficiary's entire accumulated share of the trust outright to him or her, or to the Grantor or Grantor's designee to effect such distribution to such beneficiary.  In the event that a beneficiary is incarcerated in any penal institution or detention facility upon the beneficiary's attaining age eighteen (18) years, the Trustee shall instead distribute the beneficiary's entire accumulated share of the trust to the acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED MEMBERS PER

CAPITA PAYMENT TRUST AGREEMENT then in existence to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. In the event that a beneficiary is incompetent (as determined under Tribal guidelines) at the time he or she attains the age of eighteen (18) years, such beneficiary's entire accumulated trust shall instead be distributed to the acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCOMPETENT MEMBERS PER CAPITA PAYMENT TRUST AGREEMENT then in existence to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. Trustee shall not have a duty to see to the proper application of the distributed funds and Trustee's receipt shall serve as full acquittal of its obligations hereunder.

4.     Notice of Distributions.  Trustee agrees to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder, except for those which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1.

5.     Confidentiality.  Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

6.     Death of Beneficiary.  In the event a beneficiary dies before he or she attains the age of eighteen (18), his or her share of the trust shall terminate and any assets remaining in the trust at his or her death, including any accrued net income, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe Probate Code, as if the beneficiary had then died intestate and without creditor, or if such Code is not then in existence, or if there be no such person entitled to receive those assets under such Code, then to those persons who would then be entitled to receive such assets under the Florida Probate Code, as if the beneficiary had then died

FTL:1319418:5

intestate and without creditor as a resident of Florida.

## ARTICLE IV

## TRUSTEE SUCCESSION

A.     The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

B.     Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.     Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.     Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee, from the duty to audit the acts or accounts of any prior trustee, or from duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.     The Guardian of a beneficiary shall receive notice and have authority to act for such beneficiary under this Article.

F.     No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court.  Grantor expressly waives compliance

FTL:1319418:6

by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

G.     Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to it any or all of his or her powers.

H.     Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control. The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

## ARTICLE V

## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.     <u>Transfer to New Minor's Trust</u>. In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.     <u>Spendthrift Provisions</u>. The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. No title in any share shall vest in a beneficiary prior to distribution. No beneficiary shall have a preferred claim on, or any

FTL:131941 8:5

beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument

shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall

not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

      **C.**     <u>Accrued and/or Undistributed Income</u>.  Unless otherwise specifically provided herein,

income received after the last income payment date and undistributed at the termination of any estate

or interest shall, together with any accrued income, be paid by Trustee as income to the persons

entitled to the next successive interest in the proportions in which they take that interest, subject,

however, to any power of appointment hereinabove given.

## <u>ARTICLE VI</u>

## <u>TRUSTEES' POWERS, DUTIES AND DISCRETION</u>

      **A.**     <u>Powers</u>.  Trustee shall hold, manage, care for and protect the trust property and,

except as otherwise limited herein, shall have the following powers and, except to the extent

inconsistent herewith, those now or hereafter conferred by law:

        **1.**     To retain any property (including stock of any corporate trustee hereunder or
of a parent or affiliate company) originally constituting the trust or subsequently added thereto,
although not of a type, quality or diversification considered proper for trust investments;

        **2.**     To invest and reinvest in any and all kinds of securities, domestic or foreign,
including common and preferred stocks, bonds, mutual funds, commodities, options (covered and
uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on
property; and money market funds, commercial paper, repurchase agreements, United States
Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash
investment medium; and investment trusts and in common trust funds; and any real property
(including a private residence); and any personal or mixed property; and any business, mining or
farming operation or other venture; or in any other interest or investment medium, including the
purchase of insurance on the life of any individual, even if such investment would not be of a
character authorized by applicable law but for this provision, all without diversification as to kind or
amount, without being restricted in any way by any statute or court decision (now or hereafter
existing) regulating or limiting investments by fiduciaries;

        **3.**     To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4.     To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5.     To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6.     To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

7.     To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8.     To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9.     To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10.    To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

11.    To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.    To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution. Any property distributed in kind shall be valued at the date of distribution. No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.    To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14. To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15. Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16. To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

17. To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B. **Accountings and Compensation.** Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor. Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered. The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time. Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C. **Discretion.**

1. The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the

FTL:1319418:6

payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2. It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

D. <u>Right of Guardian to Direct Investments</u>. The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more investment alternatives as are approved by the Tribe from time to time. In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

## ARTICLE VII

## TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

## ARTICLE VIII

## INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or

trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

## ARTICLE IX

## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE X

## DEFINITIONS

A. Code. All references herein to the "Internal Revenue Code" or to the "Code" shall refer to the Internal Revenue Code of 1986 as it now exists or may hereafter be amended or any substitute Federal Internal Revenue Code subsequently enacted.

B. Corporate Trustee. Whenever used herein, the term "Corporate Trustee" shall mean any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

C. Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member.

D. IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

FTL:1319418:6

E.  Incompetent Qualified Enrolled Tribal Member – means any Qualified Enrolled Tribal Member who has attained the age of eighteen (18) years, but who has been determined to be incompetent by the Tribal Council, including a Tribal member declared incompetent by a court of competent jurisdiction.

F.  Minor Qualified Enrolled Tribal Member – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G.  Per capita payment – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.  Qualified Enrolled Tribal Member – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.  RAP – means Seminole Tribe of Florida's Revenue Allocation & Per Capita Distribution Plan.

J.  Resolution and Ordinance – means the formal documents through which the Tribal Council exercises its legislative authority. For purposes of this Trust and the Revenue Allocation & Per Capita Distribution Plan, the terms Resolution and Ordinance shall have the same definitions as set forth in Article IV, Sections 1 and 2 of the Amended Bylaws of the Seminole Tribe of Florida.

K.  Secretary – means the Secretary of the Interior or authorized representative.

L.  Tribe – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

M.  Tribal Council – means the governing body of the Seminole Tribe of Florida.


ARTICLE XI

MISCELLANEOUS

A.    Headings.  Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.    In General.  Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.    Jurisdiction.  Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.


## ARTICLE XII

## IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA.  In the event that this Agreement is terminated for any reason, distribution of a beneficiary's share may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIII

### ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

### ARTICLE XIV

### EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

_____

_____

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: _CHAIRMAN_
_Seminole Tribe of FlORIDA -_

WACHOVIA BANK, N.A., _TRIbal Council_
Trustee

By: _____

Title: _V.P, Sr. TRUST ADVISOR_

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF BROWARD    )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _Mitchell Cypress_, the _Chairman_ of the Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced _Seminole Tribe of FL identification_ as identification.

WITNESS my hand and official seal in the State and County last said this _20_ day of _April_, 2005.



_____
Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

Diego M. Orozco
Commission # DD301194
Expires: DEC. 21, 2008
www.AaronNotary.com

FTL:1319418:6

STATE OF FLORIDA     )
                          ) SS:

COUNTY OF BROWARD   )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _Michael S. Carris_ , the _VP, Sr. Trust Advisor_ of

Wachovia Bank, N.A., as Trustee, who is personally known to me or who has produced

___Known___ as identification.

WITNESS my hand and official seal in the State and County last said this _25_ day of

_April_, 2005.

_____

Notary Public, State of Florida at Large

_Cathy Ann Seguine_

Typed, printed or stamped name of Notary Public

Cathy Ann Seguine
MY COMMISSION # DD273774 EXPIRES
June 17, 2007
BONDED THRU TROY FAIN INSURANCE INC.

<u>SEMINOLE TRIBE OF FLORIDA</u>

<u>MINORS' PER CAPITA PAYMENT AGREEMENT</u>
(Terminates At Age 18)

<u>SCHEDULE A</u>

Received from the **SEMINOLE TRIBE OF FLORIDA**, for deposit to the above-captioned trusts:

**Cash - $10.00**

Dated: ___April 20___, ~~2004~~ 2005

WACHOVIA BANK, N.A.
Trustee
By: _____

Title: VP, SR. TRUST ADVISOR

FTL:131941B:6

# Fee Schedule

Seminole Tribe of Florida Minors' Per Capita Payment Trust



Wachovia Bank, N.A. serves as Trustee, Investment Manager and Recordkeeping Agent for the Seminole Tribe of Florida Minors' Per Capita Payment Trust ("Trust")

## Trustee Service Charges

- Annual fee of 10 basis points on the total market value of the assets

## Account and Tax Preparation Charges

| | |
|---|---|
| Per participant charge for the first twelve full months after assets are received | $24.00 |
| Annual per participant charge for statements in excess of 4 | $8.00 |
| Annual Tax Preparation Fee | TBD |

## Miscellaneous

1. The charge for distribution checks is $20.00 per check plus postage
2. The check stop payment charge is $20.00 per check
3. Fees are calculated and charged to the participants' account monthly
4. Fees quoted do not include out-of-pocket expenses incurred.
5. Services not detailed above or special requests will be quoted at the time of the request

## Trust Assets Allocation

| Fund Name / Class Share | CUSIP # | Ticker | % Allocation |
|---|---|---|---|
| Evergreen Treasury Money Market I | ▬▬▬ | ETYXX | 20 |
| Evergreen Adjustable Rate I | 299913202 | EKIZX | 40 |
| Evergreen US Government Income | 300237666 | EUSYX | 40 |

A prospectus for each of the aforementioned funds has been provided to the undersigned who are duly authorized to act on behalf of the Seminole Tribe of Florida with respect to the Trust

Evergreen Funds - Wachovia receives from the Evergreen Funds $12 per participant account per fund for shareholder and administrative services  Certain Evergreen Funds may impose redemption fees on shares that are transferred or exchanged out of the fund before the applicable minimum holding period.  Please read the applicable fund's prospectus for more information about the fund and any applicable redemption fees.

Fee Schedule Accepted for The Seminole Tribe of Florida:

By _____

_____, Chairman

Date: _____, 2005


WACHOVIA


**EXHIBIT**
B

ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS' PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER CAPITA PAYMENT TRUST

<div align="center">

SEMINOLE TRIBE OF FLORIDA
HOLLYWOOD, FLORIDA

</div>

**RESOLUTION NO. C-034-08**

**WHEREAS,** the Seminole Tribe of Florida is an organized Indian Tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

**WHEREAS,** the Tribal Council of the Seminole Tribe of Florida is the governing body of the Seminole Tribe of Florida; and

**WHEREAS,** Section 2710(b)(3)(C) of the Indian Gaming Regulatory Act of 1988 ("IGRA"), 25 U.S.C. §§ 2701 et seq. (1988), provides that an Indian Tribe may make per capita gaming distributions to Tribal members provided that, among other things, the interests of minor Tribal members in their per capita gaming distributions are protected and preserved; and

**WHEREAS,** Section 290.15 of Title 25 of the Code of Federal Regulations, 25 C.F.R. § 290.15 (2007), provides that an Indian Tribe may establish a trust account with a financial institution to hold per capita gaming distributions for the benefit of minor Tribal members; and

**WHEREAS,** the Seminole Tribe of Florida, as a sovereign Indian nation, has the right, authority and ability to establish a trust governed by IGRA, the laws of the State of Florida, and the laws of the Seminole Tribe of Florida to hold and administer per capita gaming distributions for the benefit of the minor members of the Seminole Tribe of Florida; and

**WHEREAS,** the Seminole Tribe of Florida established a trust for the benefit of its minor Tribal members on April 20, 2005, which is known as the "Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement" (hereinafter referred to as the "2005 Minors' Trust") to which some of the minor members' shares of per capita gaming distributions were contributed for such members' benefit; and

**WHEREAS,** Article III.B.3. of the 2005 Minors' Trust provides that, subject to certain limited exceptions, each minor member's share of the 2005 Minors' Trust must be distributed outright to such member upon attaining the age of eighteen (18) years, and does not provide incentives for a minor member to complete his or her high school or college education, attain financial literacy, serve in the United States military or refrain from the use of drugs or other controlled substances; and



RE:   ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE
EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS'
PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING
DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE
APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER
CAPITA PAYMENT TRUST

RESOLUTION NO. C-034-08

PAGE TWO

WHEREAS,   it is determined to be in the best interests of the minor members of the Seminole Tribe of
Florida that the assets of the 2005 Minors' Trust be held, administered and distributed in a
manner which provides incentive to such minor members to continue their education, achieve
financial literacy, serve in the United States military and avoid the use of controlled
substances; and

WHEREAS,   to that end, it is proposed that the Seminole Tribe of Florida establish and implement a new
trust to hold, administer and distribute per capita gaming distributions for the benefit of its
minor members in the form attached hereto as Exhibit "A", which trust would be known as the
"Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement Under Agreement
Dated October 17, 2007, as successor by merger of the Seminole Tribe of Florida Minors' Per
Capita Payment Trust Agreement dated April 20, 2005" (hereinafter referred to as the "2007
Minors' Trust"); and

WHEREAS,   the 2007 Minors' Trust has not been rejected by the Bureau of Indian Affairs and complies
with IGRA in fulfilling the Seminole Tribe of Florida's duty to safeguard the per capita
gaming distributions of minor Tribal members; and

WHEREAS,   Article V.A. of the 2005 Minors' Trust provides for the transfer of all of the trust property of
the 2005 Minors' Trust to a new trust for administration and distribution in accordance with
the provisions of such new trust, provided that the amount of a beneficiary's vested interest in
the property of the 2005 Minors' Trust is not reduced by reason of such transfer; and

WHEREAS,   it is proposed that the 2005 Minors' Trust be merged with and into the 2007 Minors' Trust,
that a assets of said 2005 Minors' Trust as well as a portion of the future per capita gaming
distributions to minor Tribal members, as determined by Tribal Council from time to time, be
held and administered for the benefit of such minor Tribal members in accordance with the
terms of the 2007 Minors' Trust without reduction in the amount of any beneficiary's vested
interest in the trust property; and

WHEREAS,   it is proposed that Wachovia Bank, National Association, a national banking association, and
its successors in interest by merger (hereinafter referred to as "Wachovia"), be appointed to
serve as the Trustee of the 2007 Minors' Trust upon the same terms and conditions as it served
heretofore as Trustee of the 2005 Minors' Trust; and

E:   ADOPTION OF A NEW MINORS' PER CAPITA PAYMENT TRUST; THE MERGER OF THE
     EXISTING MINORS' PER CAPITA PAYMENT TRUST WITH AND INTO THE NEW MINORS'
     PER CAPITA PAYMENT TRUST; THE CONTRIBUTION OF FUTURE PER CAPITA GAMING
     DISTRIBUTIONS TO THE NEW MINORS' PER CAPITA PAYMENT TRUST; AND THE
     APPOINTMENT OF WACHOVIA BANK, N.A. AS TRUSTEE OF THE NEW MINOR'S PER
     CAPITA PAYMENT TRUST

RESOLUTION NO. C-034-08

PAGE THREE

NOW THEREFORE BE IT RESOLVED: that the Tribal Council of the Seminole Tribe of Florida hereby
adopts the 2007 Minors' Trust on behalf of the minor members of the Seminole Tribe of Florida and
authorizes the Chairman to execute the same for and on behalf of the Seminole Tribe of Florida; and

BE IT FURTHER RESOLVED: that the 2005 Minors' Trust shall be merged with and into the 2007 Minors'
Trust and that all trust assets of the 2005 Minors' Trust shall become part of, and shall be administered and
distributed in accordance with the terms and conditions of, the 2007 Minor's Trust; and

BE IT FURTHER RESOLVED: that Wachovia be, and hereby is, appointed to serve as Trustee of the 2007
Minors' Trust upon the same terms and conditions that Wachovia served as Trustee of the 2005 Minors'
Trust; and

BE IT FURTHER RESOLVED:  that this resolution is hereby adopted after motion duly made by David R.
Cypress, seconded by Max B. Osceola, Jr., and a roll call vote as follows:

       Chairman Mitchell Cypress....................................AYE
       Vice-Chairman Richard Bowers, Jr.........................AYE
       Council Representative David R. Cypress................AYE
       Council Representative Roger Smith...........................AYE
       Council Representative Max B. Osceola, Jr...............AYE

DONE THIS THE 17TH DAY OF OCTOBER, 2007 at the special meeting of the Tribal Council, duly
convened at the Tampa Seminole Indian Reservation, Florida, with a quorum being present, by a vote of 5
For, 0 Against, with no Abstentions.

Chairman
TRIBAL COUNCIL

ATTEST:

Secretary
TRIBAL COUNCIL

## SEMINOLE TRIBE OF FLORIDA
## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the _1st_ day of _NOVEMBER_ , 2007, between the

SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe under 25 U.S.C. § 476

(hereinafter referred to as "Grantor" or "Tribe"), and WACHOVIA BANK, NATIONAL

ASSOCIATION, a national banking association, and its successors in interest by merger (hereinafter

collectively referred to as "Trustee").

<div align="center">WITNESSETH:</div>

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor

Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").

Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and

all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust

Estate".  The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and

purposes and subject to the terms and conditions hereinafter set forth.  This Trust shall be known as

the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT UNDER AGREEMENT DATED _NOVEMBER 1st_, 2007, as successor by merger of

the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST

AGREEMENT dated April 20, 2005."

<div align="center">ARTICLE I</div>

<div align="center">IRREVOCABLE GRANTOR TRUST</div>

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the

Internal Revenue Code of 1986, as amended, and that it be irrevocable.  Grantor may, at any time,

and from time to time, demand that the Trustee transfer to the Tribe such asset or assets of any

separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

<div align="center">

ARTICLE II

PURPOSE

</div>

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions provided herein and, in the meantime, Trustee shall make distributions as may be required to provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical needs.

<div align="center">

ARTICLE III

DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

</div>

A.    Division.  One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust. A new share shall be

<div align="center">2</div>

created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved. The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

B.      Distributions.

1.      Discretionary Payments. If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose. Such distribution shall be made either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct payments to a third party. Any decision of the Trustee to invade the beneficiary's separate share of trust property for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions shall be made first

from income and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided in Article III, B. 3. herein.

      2.    Fiduciary Duty. Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

      3.    Mandatory Distributions. Subject to the provisions of Article VII, the Trustee shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

      a.    Distribution to Trusts for Incarcerated or Incapacitated Tribal Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be

made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED

MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated

Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of

under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall

hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its

Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such

beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or

for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting

Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA

PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held

as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If

there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the

beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is

simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share

of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in

such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated

Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or

distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The

provisions of this paragraph a. shall override all other mandatory distribution provisions contained in

this Article III B. 3.

        b.    <u>Annual Distributions</u>.  Beginning on the beneficiary's twenty-first

(21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h.

of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's

share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

        c.      <u>Primary Education Incentive</u>. In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder. Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c. of this Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

        d.      <u>Financial Literacy Incentive</u>. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which

6

any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

        e.    <u>Two-Year Degree Incentive Distribution</u>.  In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution.  Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

f.  Four-Year Degree Incentive Distribution.  In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. and e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to a distribution under this paragraph f., if the beneficiary has not previously received a distribution pursuant to paragraph e. of this Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to a distribution under this paragraph f., if the beneficiary previously received a distribution pursuant to paragraph e. of this Article III B. 3. hereof.  Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

g.  Military Service Incentive. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. e., and f. of this Article III B. 3., within thirty (30) following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only

8

upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

h.   Final Distribution.   On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property.   With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

4.   Trustee's Liability for Distributed Funds.   Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

5.   Notice of Distributions.   Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

6.   Confidentiality.   Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

7.      <u>Death of Beneficiary</u>. Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

8.      Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

<div align="center">

<u>ARTICLE IV</u>

<u>TRUSTEE SUCCESSION</u>

</div>

A.      The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

B.      Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.      Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an

additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.     Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee.  No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.     No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court.  Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

F.     Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

G.     Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control.  The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

<div align="center">

ARTICLE V

ADMINISTRATIVE PROVISIONS

</div>

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.     <u>Transfer to New Minor's Trust</u>.  In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and

which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.   Spendthrift Provisions.  The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered.  No title in any share shall vest in a beneficiary prior to distribution.  No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust.  Any rights created under this trust instrument shall be mere unsecured contractual rights.  Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.   Accrued and/or Undistributed Income.  Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

### ARTICLE VI

### TRUSTEES' POWERS, DUTIES AND DISCRETION

A.   Powers.  Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.   To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

FTL:2345135:1

12

2. To invest and reinvest in any and all kinds of securities, domestic or foreign, including common and preferred stocks, bonds, mutual funds, commodities, options (covered and uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on property; and money market funds, commercial paper, repurchase agreements, United States Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash investment medium; and investment trusts and in common trust funds; and any real property (including a private residence); and any personal or mixed property; and any business, mining or farming operation or other venture; or in any other interest or investment medium, including the purchase of insurance on the life of any individual, even if such investment would not be of a character authorized by applicable law but for this provision, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries;

3. To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4. To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5. To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6. To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

7. To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8. To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9. To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10. To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

FTL:2345135:1

11.     To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.     To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution.  Any property distributed in kind shall be valued at the date of distribution.  No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes.  No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.     To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14.     To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15.     Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16.     To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

17.     To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.     Accountings and Compensation.  Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor.  Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the

management and protection of the trust and shall have the right to receive reasonable compensation for services rendered. The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time. Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C.    Discretion.

1.    The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.    It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

D.    Right of Guardian to Direct Investments. The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more investment alternatives as are approved by Tribal Council or its Designee from time to time. In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

## ARTICLE VII

## ADDITIONAL BENEFICIARY PROTECTION

FTL:2345135;1

15

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

A.  Protection From Substance Abuse or Compulsive Disorders.

1.  If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

(a)  uses or consumes any illegal drug or other illegal substance;

(b)  is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

(c)  compulsively gambles or exhibits other compulsive behavior; or

(d)  is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of

beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

2.      In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

3.      The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

4.      If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

5.      If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of

FTL:2345135:1

17

treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous). If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee. If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

      6.    Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources. While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

      7.    It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare. Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section. Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or

FTL:2345135:1

psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

B.   Protection From Threat of Loss. If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists. In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto. If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

## ARTICLE VIII

## TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

## ARTICLE IX

## INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

## ARTICLE X

## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE XI

### DEFINITIONS

A.    Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.    Designee – means that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.    Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.    IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.    Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

F.    Minor Qualified Enrolled Tribal Member – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G.    Per capita payment – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.    Qualified Enrolled Tribal Member – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.    Tribe – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

J.      Tribal Council – means the governing body of the Seminole Tribe of Florida.

K.      Value of beneficiary's share of trust property – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time incentive distributions and final distributions under Article III b. 3., hereof. The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

## ARTICLE XII

## MISCELLANEOUS

A.      Headings. Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.      In General. Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.      Jurisdiction. Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.

FTL:2345135:1

22

## ARTICLE XIII

## IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA. In the event that this Agreement is terminated for any reason and there are assets in the trust on the date of termination, distribution of a beneficiary's share of those assets may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIV

## ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

## ARTICLE XV

## EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

FTL:2345135:1

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

O'Hara  Tommie

Laura Billie

SEMINOLE TRIBE OF FLORIDA,
Grantor

By: _____

Title: Chairman Seminole Tribe of Florida

WACHOVIA BANK, N.A.,
Trustee

By: _____

Title: _____
    **Michael S. Carris, J.D., CFP®**
    **Senior Vice President & Trust Advisor**

FTL:2345135:1

24

STATE OF FLORIDA    )
                     ) SS:
COUNTY OF BROWARD  )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by *MITCHELL CYPRESS*, the *CHAIRMAN* of the Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced _____ as identification.

WITNESS my hand and official seal in the State and County last said this *1st* day of *NOVEMBER*, 2007.



Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

EMANUEL R. SUKHU
MY COMMISSION # DD 574410
EXPIRES: November 16, 2010
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA        )
                        ) SS:
COUNTY OF BROWARD       )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by _MICHAEL S. CARRIS_____ , the _SR. VICE PRESIDENT_ of Wachovia Bank, N.A., as Trustee, who is personally known to me or who has produced _____ _____ _____ _____ as identification.

WITNESS my hand and official seal in the State and County last said this _1st__ day of _NOVEMBER_, 2007.

Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

EMANUEL R. SUKHU
MY COMMISSION # DD 574410
EXPIRES: November 18, 2010
Bonded Thru Notary Public Underwriters

SEMINOLE TRIBE OF FLORIDA

MINORS' PER CAPITA PAYMENT AGREEMENT
(Terminates At Age 18)

SCHEDULE A

Received from the SEMINOLE TRIBE OF FLORIDA, for deposit to the above-captioned trusts:

Cash - $10.00

Dated: *November 1st*, 2007

WACHOVIA BANK, N.A.
Trustee
By: _____

Title: _____ **Michael S. Carris, J.D., CFP®**
**Senior Vice President & Trust Advisor**

*Exhibit D*

# Wealth Management Investment Solutions

## Seminole Tribe of Florida
## Minors' Per Capita Payment Trust

## Fee Schedule
### (For Trustee Services – Wachovia Personal Trust)

| Market Value | | Annual Fee |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 | .08% |
| Over | $500,000,000 | TBD |

• Addendum to Fee Schedule Dated April 20, 2005.

• This Addendum Shall Be Effective on July 1, 2008

• All Other Investment Fees Reflected on Separate Schedule(s).

Accepted By: _James Rake_ Date: May 8, 2008

## WACHOVIA WEALTH MANAGEMENT

```
EXHIBIT
  D
```

# Wealth Management Investment Solutions

## Fee Schedule
### (For Trustee Services – Wachovia Personal Trust)

| Market Value | | Annual Fee |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 | .08% |
| Over | $500,000,000 | .07% |

·Addendum to Fee Schedule Dated April 20, 2005.

·This Addendum Shall Be Effective on July 1, 2008

·All Other Investment Fees Reflected on Separate Schedule(s).

Accepted By: _____ Date: _____

 **WACHOVIA WEALTH MANAGEMENT**

EXHIBIT
E

EXHIBIT A

## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the _9th_ day of _March_____, 2010, between the SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe under 25 U.S.C. § 476 (hereinafter referred to as "Grantor" or "Tribe"), and WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association, and its successors in interest by merger (hereinafter collectively referred to as "Trustee").

WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)"). Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated _March 9, 2010_, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005".

## ARTICLE I

## IRREVOCABLE GRANTOR TRUST

**EXHIBIT**

_F_

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the Internal Revenue Code of 1986, as amended, and that it be irrevocable. Grantor may, at any time, and from time to time, demand that the Trustee transfer to the Tribe such asset or assets of any separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

<div align="center">

**ARTICLE II**

**PURPOSE**

</div>

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of receiving and investing a portion of the per capita payments to which each current and future Minor Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions provided herein and, in the meantime, Trustee shall make distributions as may be required to provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical needs.

<div align="center">

**ARTICLE III**

**DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS**

</div>

A.    <u>Division</u>.  One (1) separate share of this trust shall be created for each of Grantor's current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is

RM:7095661:1

<div align="center">2</div>

entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust. A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved. The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

**B.** **Distributions.**

1. **Discretionary Payments.** If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose. Such distribution shall be made either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct payments to a third party. Any decision

RM:7095661:1

3

of the Trustee to invade the beneficiary's separate share of trust property for the purposes described above shall be made in accordance with Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust. Any distributions shall be made first from income and then from principal. Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no distributions shall be made to a beneficiary under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses. Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided in Article III, B. 3. herein.

      2.    <u>Fiduciary Duty</u>.  Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management. The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law. No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith. If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

      3.    <u>Mandatory Distributions</u>.  Subject to the provisions of Article VII, the Trustee shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

RM:7095661:1

4

a.    Distribution to Trusts for Incarcerated or Incapacitated Tribal Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The provisions of this paragraph a. shall override all other mandatory distribution provisions contained in this Article III B. 3.

RM:7095661:1

5

     b.     Annual Distributions.  Beginning on the beneficiary's twenty-first (21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h. of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

     c.     Primary Education Incentive.  In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder.  Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c. of this

Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

    d. <u>Financial Literacy Incentive</u>. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

    e. <u>Two-Year Degree Incentive Distribution</u>.  In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such

RM:7095661:1

7

distribution. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

        f.     Four-Year Degree Incentive Distribution.  In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. and e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary has not previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

RM:7095661:1

8

g.   Military Service Incentive. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. d. e., and f. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

h.   Final Distribution.   On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property.   With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

4.   Trustee's Liability for Distributed Funds.   Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

5.   Notice of Distributions.   Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees

to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

      6.      Confidentiality.   Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

      7.      Death of Beneficiary.  Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

      8.      Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

<div align="center">

ARTICLE IV

TRUSTEE SUCCESSION

</div>

A.      The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

RM:7095661:1

B.      Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.      Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.      Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee.  No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.      No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court.  Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

F.      Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

G.      Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control.  The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

RM:7095661:1

11

## ARTICLE V

## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.    Transfer to New Minor's Trust.  In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.    Spendthrift Provisions.  The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered.  No title in any share shall vest in a beneficiary prior to distribution.  No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust.  Any rights created under this trust instrument shall be mere unsecured contractual rights.  Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.    Accrued and/or Undistributed Income.  Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

RM:7095661:1

12

## ARTICLE VI

## TRUSTEES' POWERS, DUTIES AND DISCRETION

A.   <u>Powers</u>.   Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.   To retain any property (including stock of any corporate trustee hereunder or of a parent or affiliate company) originally constituting the trust or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

2.   To invest and reinvest in any and all kinds of securities, domestic or foreign, including common and preferred stocks, bonds, mutual funds, commodities, options (covered and uncovered), hedge funds, debentures, notes, commodity contracts, mortgages and options on property; and money market funds, commercial paper, repurchase agreements, United States Treasury obligations, certificates of deposit, savings accounts, checking accounts and any other cash investment medium; and investment trusts and in common trust funds; and any real property (including a private residence); and any personal or mixed property; and any business, mining or farming operation or other venture; or in any other interest or investment medium, including the purchase of insurance on the life of any individual, even if such investment would not be of a character authorized by applicable law but for this provision, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries;

3.   To acquire an undivided interest (e.g. as tenant in common) in any trust asset;

4.   To cause any securities or other property, real or personal, belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

5.   To vote in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which Trustee's possession of voting discretion would subject the issuing company or Trustee to any law, rule or regulation adversely affecting either the company or Trustee's ability to retain or vote company securities, shall be voted as directed by the beneficiaries then entitled to receive or have the benefit of the income from the trust; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

6.   To lease trust property for any period of time though commencing in the future or extending beyond the term of the trust;

RM:7095661:1

13

7.     To borrow money from any lender, including any Trustee hereunder, to borrow on margin, to extend or renew any existing indebtedness and mortgage or pledge any property in the trust upon such terms and conditions as Trustee deems appropriate;

8.     To make loans, extend credit, or pledge any property in the trust to or for the benefit of a beneficiary upon such terms and conditions as Trustee deems appropriate;

9.     To sell at public or private sale, contract to sell, convey, exchange, transfer, lease, rent and otherwise deal with the trust property, real or personal, and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

10.     To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

11.     To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

12.     To distribute income and principal in cash or in kind, or partly in cash, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocation or distribution. Any property distributed in kind shall be valued at the date of distribution. No adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

13.     To deposit funds in another department of any Corporate Trustee hereunder or in a bank that is affiliated with any such Corporate Trustee;

14.     To maintain reasonable reserves out of income (when sufficient principal cash is not available) for depreciation, depletion, mortgage amortization, obsolescence, taxes and special assessments, repair and alteration of any real property and improvements which are assets of the trust;

15.     Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

16.     To delegate between themselves or to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks and to have access to safe deposit boxes, the power to give instructions regarding the purchase, sale or management of investments to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any assets held hereunder; provided, however, that this provision shall not entitle a Trustee to participate in a decision if such Trustee is expressly excluded from participation under any other provision of this Agreement; and

RM:7095661:1

14

17.     To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.     <u>Accountings and Compensation</u>. Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor. Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered. The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time. Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees. Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C.     <u>Discretion</u>.

1.     The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.     It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

D.     <u>Right of Guardian to Direct Investments</u>. The Guardian(s) of each beneficiary shall have the right to direct that such beneficiary's share of the trust property be invested in one or more

RM:7095661:1

15

investment alternatives as are approved by Tribal Council or its Designee from time to time.  In the event no such direction is made, a beneficiary's share shall be invested in such investment alternatives as the Trustee shall determine from time to time in the Trustee's discretion.

<div align="center">

ARTICLE VII

ADDITIONAL BENEFICIARY PROTECTION

</div>

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

A.      Protection From Substance Abuse or Compulsive Disorders.

1.      If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

(a)      uses or consumes any illegal drug or other illegal substance;

(b)      is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

(c)      compulsively gambles or exhibits other compulsive behavior; or

(d)      is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall

RM:7095661:1

<div align="center">16</div>

advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

2.      In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

3.      The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

17

4.     If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

5.     If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous). If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee. If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

6.     Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources. While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

7.      It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare.  Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section.  Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

B.      Protection From Threat of Loss.  If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists.  In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto.  If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless

RM:7095661:1

19

from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

## ARTICLE VIII

## TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

## ARTICLE IX

## INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

RM:7095661:1

20

ARTICLE X

COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

ARTICLE XI

DEFINITIONS

A.      Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.      Designee – means  that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.      Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.      IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.      Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

RM:7095661:1

21

F.   <u>Minor Qualified Enrolled Tribal Member</u> – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

G.   <u>Per capita payment</u> – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.   <u>Qualified Enrolled Tribal Member</u> – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.   <u>Tribe</u> – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

J.   <u>Tribal Council</u> – means the governing body of the Seminole Tribe of Florida.

K.   <u>Value of beneficiary's share of trust property</u> – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time incentive distributions and final distributions under Article III b. 3., hereof.  The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

L.   <u>Withdrawing Beneficiary's Distribution Age</u> – means the attained age in years of the Withdrawing Beneficiary (as defined in Article XVI A.) at which the Withdrawing Beneficiary's share of the Trust property shall be distributed to him or her pursuant to Article XVI. Unless and until changed by Tribal Council, the Withdrawing Beneficiary's Distribution Age shall be twenty-one years.

RM:7095661:1

22

## ARTICLE XIV

## ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

## ARTICLE XV

## EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

## ARTICLE XVI

## WITHDRAWAL FROM MEMBERSHIP IN TRIBE

A.      Withdrawing Beneficiary. This Trust is created and administered for the benefit of Minor Qualified Enrolled Tribal Members. In the event that the membership in the Tribe of a beneficiary of this Trust ("Withdrawing Beneficiary") is withdrawn (whether such membership is withdrawn by the Withdrawing Beneficiary or his or her guardian), the provisions of this Article shall apply to the Withdrawing Beneficiary's share of the Trust property, notwithstanding any other provision herein to the contrary.

B.      Administration and Distribution of Withdrawing Beneficiary's Share. As soon as practicable following a Withdrawing Beneficiary's withdrawal from membership in the Tribe, the Tribe shall notify the Trustee of such withdrawal. Thereafter, no portion of any contributions to the Trust by the Grantor, or expenses of administration, shall be allocated to the Withdrawing Beneficiary's share of the Trust, but the Trustee shall continue to allocate to the Withdrawing

RM:7095661:1

24

IN WITNESS WHEREOF Grantor and the witnesses to the Grantor have executed this instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this instrument in the presence of each other, effective the day and year first above written at Hollywood Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

SEMINOLE TRIBE OF FLORIDA,
Grantor

By

Title: CHAIRMAN

WACHOVIA BANK, N.A.,
Trustee

By: Debra Charbonnet

Title: SVP

RM:7095661:1

26

STATE OF FLORIDA      )
                           ) SS:
COUNTY OF BROWARD   )

       I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _Mitchell Cypress_, the _Chairman_ of the

Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced

_____ as identification.

       WITNESS my hand and official seal in the State and County last said this _15th_ day of

_March_ , 2010.

                                        _Nicole Canton_
                                        Notary Public, State of Florida at Large
                                        _Nicole Canton_
                                        Typed, printed or stamped name of Notary Public

RM:7095661:1

27

SEMINOLE TRIBE OF FLORIDA

MINORS' PER CAPITA PAYMENT AGREEMENT

SCHEDULE A


Received from the Trustee of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005 for deposit to the above-captioned trusts:


See Attached.


Dated: _3 - 15_____, 2010          WACHOVIA BANK, N.A.
                                      Trustee
                                      By: _Debra Charlesworth_____

                                      Title: _SVP_____

RM:7095661:1

29

STATE OF FLORIDA    )
                     ) SS:
COUNTY OF BROWARD  )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State

aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was

acknowledged before me by _DEBRA CHARBONNET_____, the _SENIOR VICE PRESIDENT_ of

Wachovia Bank, N.A., as Trustee, who is <u>personally known to me</u> or who has produced

_____ as identification.

WITNESS my hand and official seal in the State and County last said this _15th_ day of

_MARCH_____, 2010.



_____
Notary Public, State of Florida at Large

CHRISTIE KOTSCH
_____
Typed, printed or stamped name of Notary Public

CHRISTIE KOTSCH
MY COMMISSION # DD694041
EXPIRES: July 10, 2011
Fl. Notary Discount Assoc. Co

# Fee Schedule*

## (For Trustee Services – Wachovia Personal Trust)

| Market Value | | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 | .10% |
| Next | $250,000,000 - $500,000,000 | .08% |
| Next | $500,000,000 - $750,000,000 | .07% |
| Next | $750,000,000 - $1,000,000,000 | .05% |
| Over | $1,000,000,000 | Annual Flat Fee TBD |

*Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on September 1, 2010.

*All Other Investment Fees Reflected on Separate Schedule(s).

*Fee is Paid Monthly but Accrued Daily.

**Accepted By:** _____ **Date:** _____



**WACHOVIA WEALTH MANAGEMENT**

EXHIBIT

G

# Fee Schedule*
## (For Trustee Services – Wachovia Personal Trust)

| | Market Value | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 | .11% |
| Next | $250,000,000 - $500,000,000 | .09% |
| Next | $500,000,000 - $750,000,000 | .08% |
| Next | $750,000,000 - $1,000,000,000 | .06% |
| Over | $1,000,000,000 - Annual Flat Fee TBD | |

*Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on August 1, 2011.

*All Other Investment Fees Reflected on Separate Schedules.

*Fees Accrue on a Daily Basis and Fund Unitized Price is Net of Fees.

**Accepted By:** _Jmi-s- Y a C_   **Date:** _6 28_

_Chief Financial Officer_



**WACHOVIA WEALTH MANAGEMENT**

EXHIBIT
H



## SEMINOLE TRIBE OF FLORIDA

## MINORS' PER CAPITA PAYMENT TRUST AGREEMENT

THIS AGREEMENT is made as of the *13th* day of *January*, 2012, between the
SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe under 25 U.S.C. § 476
(hereinafter referred to as "Grantor" or "Tribe"), and WELLS FARGO BANK, N.A., as successor
in interest of WACHOVIA BANK, NATIONAL ASSOCIATION, a national banking association,
and its successors in interest by merger (hereinafter collectively referred to as "Trustee").

### WITNESSETH:

Grantor desires to create a trust for the benefit of the Grantor's current and future Minor
Qualified Enrolled Tribal Members (hereinafter sometimes referred to as "beneficiary(ies)").
Grantor hereby transfers to Trustee the property listed on the attached Schedule A. That property and
all investments and reinvestments thereof and additions thereto shall be referred to as the "Trust
Estate". The Trustee agrees to hold, administer and distribute the Trust Estate for the uses and
purposes and subject to the terms and conditions hereinafter set forth. This Trust shall be known as
the "SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST
AGREEMENT dated *1/13/2012* as successor by merger of the SEMINOLE TRIBE OF
FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated February 23, 2010,
as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA
PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the
SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT
dated April 20, 2005".

{2271708;1}



## ARTICLE I
## IRREVOCABLE GRANTOR TRUST

Grantor intends that this Trust qualify as a grantor trust under Section 675(4)(C) of the

Internal Revenue Code of 1986, as amended, and that it be irrevocable. Grantor may, at any time,

and from time to time, demand that the Trustee transfer to the Grantor such asset or assets of any

separate trust or share created under this Trust Agreement as the Grantor shall direct in exchange for

an asset or assets of equivalent value. This right shall be nonfiduciary in nature and its existence and

exercise shall not be conditioned upon the identity of the Trustee. The Grantor hereby relinquishes

any and all rights to alter, amend, revoke or terminate this Agreement, other than the right to amend

this Agreement for the sole purpose of bringing the Trust into compliance with the Indian Gaming

Regulatory Act, 25 U.S.C. Section 2701 et seq. ("IGRA").

## ARTICLE II
## PURPOSE

Grantor intends that this Trust comply with the requirements of IGRA for the purpose of

receiving and investing a portion of the per capita payments to which each current and future Minor

Qualified Enrolled Tribal Member is entitled until he or she satisfies the conditions for distributions

provided herein and, in the meantime, Trustee shall make distributions as may be required to

provide for the Minor Qualified Enrolled Tribal Member's extraordinary or emergency medical

needs.

## ARTICLE III
## DIVISION, CONTRIBUTIONS AND DISTRIBUTIONS

A.    Division. One (1) separate share of this trust shall be created for each of Grantor's

current Minor Qualified Enrolled Tribal Members. Each share shall be separately held, administered

and disposed of as provided herein. It is Grantor's intention to contribute to the trust each month a

portion of the monthly per capita payment, as defined in Article XI, to which each beneficiary is

{22717085;1}

2

entitled by reason of his or her membership in the Tribe. The Trustee shall allocate the contribution among the shares of the beneficiaries as directed by Grantor. Each beneficiary's separate share of the trust shall be administered and accounted for as though it were a separate trust. A new share shall be created for any future born Minor Qualified Enrolled Tribal Member as of the date that he or she is first entitled to a per capita payment. It is Grantor's specific intention and direction that the assets of the separate shares be combined for ease of administration, provided that the character of the beneficiaries' separate shares be preserved. The Trustee shall account for each share of each beneficiary separately, and a trust account statement shall be available at least quarterly to the Guardian of the beneficiary. The Trustee shall collect the per capita payments and any income attributable to each beneficiary's separate share of the trust property and, after paying from each beneficiary's share the necessary expenses of administration that are properly chargeable against such income, hold, administer and distribute the income and principal of such share for the benefit of the beneficiary as provided herein.

B.    Distributions.

1.    Discretionary Distributions.   If, before the beneficiary has received a distribution of all trust property which comprises such beneficiary's separate share of trust property, the beneficiary incurs, or will incur, expenses for extraordinary or emergency medical treatment, the payment of which is not already provided for by the Grantor, insurance or otherwise, the Guardian of such beneficiary (or the beneficiary himself/herself, if the beneficiary has attained the age of eighteen (18) years while a separate trust share is being maintained for such beneficiary hereunder) may request a distribution from the beneficiary's share of the trust property to apply to such purpose. Such distribution may be made in the discretion of the Trustee, either through reimbursement of documented and verified expenditures made by or for the benefit of the beneficiary or through direct

{22717085;1}

3

payments to a third party.  In exercising its discretion to invade the beneficiary's separate share of trust property for the purposes described above, the Trustee shall consider the Tribal guidelines, if any, which the Tribe shall make available to the Trustee during the administration of the Trust.  Any distributions shall be made first from income and then from principal.  Trustee acknowledges that, as of the date of this trust, Grantor separately provides for all of the medical expenses of its members and that no beneficiary will qualify for distributions under this Article III B. 1. for as long as Grantor continues to do so. Grantor shall advise the Trustee of any changes in its policy with respect to the payment of its members' medical expenses.  Any income or principal that is not distributed pursuant to this Article III, B. 1. shall be accumulated for the beneficiary's benefit and distributed as provided in Article III, B. 3. herein.

   2. <u>Fiduciary Duty</u>.  Trustee shall hold and administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management.  The Trust is specifically created as a Florida agreement, and the construction, validity and effect of this agreement and the rights and duties of the beneficiaries and the Trustee thereof shall at all times be governed by the laws of the State of Florida, and, to the extent it is not inconsistent with Florida law, by applicable Tribal law.  No Trustee hereunder shall be liable to any beneficiary except for damages attributable to the Trustee's gross negligence, willful malfeasance or bad faith.  If, in the event of litigation between the Trustee and a beneficiary, the Trustee prevails, the Trustee shall be entitled to reimbursement from the separate share of said beneficiary of all reasonable costs incurred by the Trustee in connection with such litigation.

   3. <u>Mandatory Distributions</u>.  Subject to the provisions of Article VII, the Trustee shall distribute each beneficiary's separate share of trust property to such beneficiary as follows:

{22717085;1}

a.    Distribution to Trusts for Incarcerated or Incapacitated Tribal Members. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incarcerated in any penal institution or detention facility, such distribution shall be made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCARCERATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incarcerated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incarcerated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If, at the time a beneficiary is otherwise entitled to a distribution under this Trust, such beneficiary is incapacitated (as determined by the Tribal Council), all distributions hereunder to or for the benefit of the beneficiary shall cease, and such distribution shall be made to the then acting Trustee of the SEMINOLE TRIBE OF FLORIDA INCAPACITATED MEMBERS' PER CAPITA PAYMENT TRUST AGREEMENT then in existence ("Incapacitated Members' Trust") to be held as a separate share for the benefit of such beneficiary and disposed of under the terms thereof. If there is no Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. If a beneficiary is simultaneously incapacitated and incarcerated, Trustee shall distribute the beneficiary's entire share of the trust to one or both of the Incarcerated Members' Trust or the Incapacitated Members' Trust in such proportions as the Tribal Council or its Designee shall direct. If there is neither an Incarcerated Members' Trust nor an Incapacitated Members' Trust then in existence, Trustee shall hold and/or distribute the beneficiary's share in the manner directed by the Tribal Council or its Designee. The provisions of this paragraph a. shall override all other mandatory distribution provisions contained in this Article III B. 3.

{22717085;1}

b.  <u>Annual Distributions</u>.  Beginning on the beneficiary's twenty-first (21st) birthday, and continuing until the applicable Final Distribution Date (as defined in paragraph h. of this Article III B. 3.), Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust property (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter.

c.  <u>Primary Education Incentive Distributions</u>.  In addition to the annual distributions provided above, beginning on the later of (i) the thirtieth (30th) day following the date on which the beneficiary provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's (A) graduation from high school, or (B) obtaining a passing score on the Tests of General Education Development and/or such other high school equivalency tests as are required by the State of Florida or the state of such beneficiary's residence to certify a person as having high school-level academic skills (collectively referred to herein as a "GED"), and (ii) the beneficiary's eighteenth (18th) birthday, and continuing until the applicable Final Distribution Date as hereinafter defined in section h. of this Article III B. 3., Trustee shall distribute annually to the beneficiary from such beneficiary's share of trust property an amount equal to five percent (5%) of the Value of the beneficiary's share of the trust (as defined in Article XI) in twelve (12) equal installments on the first day of each month thereafter. The Value of the beneficiary's trust property shall be the value that is determined by the Trustee as of the date that beneficiary is first entitled to distributions under this paragraph, and as re-determined by the Trustee as of each anniversary thereof while a separate trust share is being maintained for the beneficiary hereunder.  Notwithstanding anything in paragraph b. to the contrary, in the event that a beneficiary is entitled to distributions under both paragraphs b. and c.

{22717085;1}

6

of this Article III B. 3., the Value of the beneficiary's trust property for purposes of paragraph b shall be equal to the Value as determined and/or re-determined under this paragraph c.

      d.     Financial Literacy Incentive Distribution. In addition to the distributions provided in paragraphs b. and c. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of a financial literacy program approved by the Tribal Council, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to the lesser of Thirty Five Thousand Dollars ($35,000.00) or the entire remaining Value of the beneficiary's share of trust property.

      e.     Two-Year Degree Incentive Distribution. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c. and/or d. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of (i) all of the requirements of a two year Post-Secondary Educational Program approved by Tribal Council, or (ii) one-half (1/2) of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to twenty-five percent (25%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such

{22717085;1}

distribution. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph e. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph e. or pursuant to paragraph f. of Article III B. 3. hereof.

        f.     <u>Four-Year Degree Incentive Distribution</u>.   In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c., d., and/or e. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary who qualifies for distributions provided in paragraph c. (by reason of graduating from high school or obtaining a GED and having attained age eighteen (18)), provides the Trustee with proof in a form acceptable to Trustee of the beneficiary's satisfactory completion of all of the requirements of a four year Post-Secondary Educational Program approved by Tribal Council, as established by applicable program-of-study guidelines published by such post-secondary educational institution, the Trustee shall make a one-time distribution to such beneficiary from such beneficiary's share of trust property of an amount equal to (i) fifty percent (50%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary has not previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof; or alternatively, (ii) thirty three and thirty three hundredths percent (33.33%) of the Value of the beneficiary's share of trust property as of the date such beneficiary first became entitled to such distribution, if the beneficiary previously received a distribution pursuant to paragraph e. of Article III B. 3. hereof. Notwithstanding any provision in this Agreement to the contrary, the distribution described in this paragraph f. shall not be paid to any beneficiary if such beneficiary has previously received a distribution pursuant to this paragraph f.

g.     <u>Military Service Incentive Distribution</u>. In addition to the any distributions to which a beneficiary may be entitled under paragraphs b., c., d., e., and/or f. of this Article III B. 3., within thirty (30) days following the date on which any beneficiary provides the Trustee with proof in a form acceptable to Trustee that such beneficiary has been honorably discharged from United States military service or, in lieu of discharge, has re-enlisted for service in United States military (but only upon the first such re-enlistment), Trustee shall make a one-time distribution to the beneficiary from such beneficiary's share of trust property of an amount equal to 25% of the Value of the beneficiary's share of trust property as of the date such beneficiary became entitled to such distribution.

h.     <u>Final Distribution</u>. On the Final Distribution Date (as hereinafter defined), Trustee shall distribute to the beneficiary the entire remaining Value of such beneficiary's share of trust property. With respect to any beneficiary that qualified for distributions under paragraphs e. and f. of this Article III B. 3. (for having completed a two or four year Post-Secondary Educational Program), the Final Distribution Date shall be such beneficiary's twenty-fifth (25th) birthday. With respect to all other beneficiaries, the Final Distribution Date shall be such beneficiary's thirtieth (30th) birthday.

4.     <u>Trustee's Liability for Distributed Funds</u>. Trustee shall have satisfied its obligations in respect to distributions hereunder by distributing such amounts to Grantor for payment to the beneficiaries. Trustee shall not have a duty to see to the proper application of the distributed funds by Grantor, and Grantor's receipt of the same shall serve as full acquittal of the Trustee's obligations hereunder.

5.     <u>Notice of Distributions</u>. Except for those distributions which are for the extraordinary or emergency medical needs of a beneficiary pursuant to Article III B.1., Trustee agrees

{22717085;1}

9

to provide at least thirty (30) calendar days advance written notice to Grantor of its intent to make any distributions hereunder.

6. <u>Confidentiality</u>. Except as provided herein and in the Tribe's Revenue Allocation & Per Capita Distribution Plan, Trustee shall keep any and all information pertaining to the beneficiaries strictly confidential.

7. <u>Death of Beneficiary</u>. Notwithstanding anything herein to the contrary, in the event a beneficiary dies before the beneficiary has received a complete distribution of the beneficiary's entire share of trust property, the beneficiary's interest in the trust shall terminate and such beneficiary's share of the trust property, including any net income properly allocable thereto, shall be distributed to those persons entitled to receive those assets under the existing Seminole Tribe of Florida Probate Ordinance or, if such ordinance is not then in existence, or if there is no person entitled to receive those assets under such ordinance, then to those persons determined by Tribal Council or its Designee who are entitled to receive such assets under the customs and traditions of the Seminole Tribe of Florida.

8. Notwithstanding anything herein to the contrary, Trustee shall withhold and pay to the Internal Revenue Service, on behalf of the beneficiary, any and all taxes required to be withheld from such distributions and to pay the remainder of the distribution to the beneficiary in satisfaction of the Trustee's duties hereunder.

<div align="center">

**ARTICLE IV**
**TRUSTEE SUCCESSION**

</div>

A. The term "Trustee" and the pronouns therefor shall mean Trustee or Trustees from time to time qualified and acting and shall be construed as masculine, feminine or neuter, and in the singular or plural, as the sense requires.

{22717085;1}

B.      Any Trustee may resign at any time by delivering written notice of the same to the other Trustee, if any, and to Grantor, no later than thirty (30) calendar days prior to the effective date of such resignation.

C.      Notwithstanding anything contained herein to the contrary, Grantor shall have the power, at any time, by written instrument to (1) appoint any individual or corporate Trustee as an additional Trustee hereunder, (2) remove any existing Trustee, and (3) upon such removal, or in the event of any resignation or other failure to serve by a Trustee, to appoint any individual or corporate Trustee as successor Trustee.

D.      Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be liable for the acts or omissions of any prior trustee.  No successor Trustee shall have a duty to audit the acts or accounts of any prior trustee, or a duty to file claim(s) against any prior trustee or the trust estate or trust share(s).

E.      No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court.  Grantor expressly waives compliance by Trustee with any law now or hereafter in effect requiring qualification, administration or accounting by the Trustee with or to any court.

F.      Any individual Trustee may at any time or times by writing delivered to the Corporate Trustee delegate to said Corporate Trustee any or all of that individual Trustee's powers.

G.      Except as otherwise specifically provided, if at any time multiple Trustees shall be evenly divided, the decision of the Corporate Trustee shall control.  The dissenting Trustee shall have no liability for participating in or carrying out the acts of the controlling Trustee.

{22717085;1}

11

## ARTICLE V
## ADMINISTRATIVE PROVISIONS

The following provisions shall apply to the trust estate and to the separate trust shares under this Agreement:

A.    <u>Transfer to New Minor's Trust</u>. In the event that the Grantor establishes a subsequent trust to receive any portion of the per capita payments to which Minor Qualified Enrolled Tribal Members are entitled, which trust satisfies the per capita distribution requirements of IGRA and which is not rejected by the Bureau of Indian Affairs, then, upon Grantor's direction, all or any portion of the amounts held under this trust shall be transferred to the Trustee of said new trust to be held, administered and distributed in accordance with the terms of such new trust, in separate shares for the then existing beneficiaries, provided that the amount of a beneficiary's vested interest in the trust property and estate shall not be reduced by reason such transfer to the new trust.

B.    <u>Spendthrift Provisions</u>. The interest of a beneficiary in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. No title in any share shall vest in a beneficiary prior to distribution. No beneficiary shall have a preferred claim on, or any beneficial ownership interest in, any assets of the trust. Any rights created under this trust instrument shall be mere unsecured contractual rights. Loans to parent(s) or Guardian(s) of a beneficiary shall not be secured by the beneficiary's interest in the trust or any sums held in trust for such beneficiary.

C.    <u>Accrued and/or Undistributed Income</u>. Unless otherwise specifically provided herein, income received after the last income payment date and undistributed at the termination of any estate or interest shall, together with any accrued income, be paid by Trustee as income to the persons entitled to the next successive interest in the proportions in which they take that interest.

{22717085;1}

12

## ARTICLE VI
## TRUSTEES' POWERS, DUTIES AND DISCRETION

A.   <u>Powers</u>.   Trustee shall hold, manage, care for and protect the trust property and, except as otherwise limited herein, shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

1.   The paramount objective of the Grantor is preservation of principal. The return on investments is a secondary consideration. In that context, the Trustee shall limit investments to fixed-income securities with strong credit quality and shall be prohibited from investing in common stocks and other "equity-like" investments. The Trustee shall have no duty to diversify under the Prudent Investor Rule as set forth in Section 518.11, Fla. Stat., and shall not be responsible for losses resulting from a lack of diversification of the assets into other asset classes;

2.   To cause any securities belonging to the trust to be held or registered in Trustee's name or in the name of a nominee or in such other form as Trustee deems best without disclosing the trust relationship;

3.   To vote in person or by general or limited proxy, or refrain from voting, any securities for any purpose; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other securities or property received therefor;

4.   To borrow money from any lender, including any Trustee hereunder,  to extend or renew any existing indebtedness and pledge any securities in the trust upon such terms and conditions as Trustee deems appropriate;

5.   To sell at public or private sale, contract to sell, convey, exchange, transfer, and otherwise deal with the trust property,  and any reinvestments thereof from time to time for such price and upon such terms as Trustee deems appropriate;

6.   To employ accountants, bookkeepers, investment counsel, agents, attorneys and proxies and to delegate to them such powers as Trustee considers desirable and to pay reasonable compensation for their services;

7.   To compromise, contest, prosecute or abandon claims, including claims for taxes, in favor of or against the trust, and to agree to any rescission or modification of any contract or agreement;

8.   To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and to value the trust property and to sell any part or all thereof in order to make allocations or distributions.  Any property distributed in kind shall be valued at the date of distribution.  No

{22717085;1}

13

adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. No action taken by Trustee pursuant to this paragraph shall require the consent of nor be subject to question by any beneficiary;

9.    To deposit funds in another department of any Corporate Trustee hereunder;

10.    Trustee may direct that all or any part of the assets of the trust be moved from one jurisdiction to another and to change the situs of administration of the trust from one jurisdiction to another, if Trustee reasonably believes such change of governing law and/or change of situs of administration shall inure to the benefit of the beneficiaries and/or create added security for the trust;

11.    To delegate to others any powers granted by law or under the provisions hereof, including (without limitation) the power to sign checks, the power to give instructions regarding the purchase, sale or management of securities to any stockbroker, custodian or other agent and the power to execute instruments required in the purchase, sale or other transfer of any securities held hereunder; and

12.    To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges.

B.    Accountings and Compensation.  Trustee shall render an accounting of all receipts and disbursements allocable to each share of the trust at least quarterly to the parents or Guardian(s) of the beneficiary thereof, and provide copies of each such accounting to Grantor.  Failure of the recipient to object to an accounting within ninety (90) days shall be deemed acceptance of the accounting by said recipient. Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust and shall have the right to receive reasonable compensation for services rendered.  The compensation of any corporate Trustee shall be in accordance with its schedule of fees in effect from time to time.  Trustee agrees to prepare all required tax returns for the Trust based upon its usual and customary fees.  Trustee agrees to give Grantor at least thirty (30) calendar days notice prior to any increase in any fees.

C.    Discretion.

1.    The exercise by any Trustee of the discretionary powers herein granted with respect to any property given hereunder or the payment, application or accumulation of income or the {22717085;1}

14

payment or application of principal of any trust created hereunder shall be final and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

2.   It is Grantor's intention that Trustee shall have the greatest latitude in exercising such discretionary powers, and that the person or persons entitled to receive the principal of any share of the trust created hereunder shall, upon the termination of such trust, be entitled only to such principal as may remain after the last exercise of such continuing discretionary powers.

### ARTICLE VII
### ADDITIONAL BENEFICIARY PROTECTION

Notwithstanding anything in this Agreement to the contrary, the provisions of this Article shall apply with respect to any trust created under this Agreement and shall supersede the provisions of such trust(s) dealing with distributions.

A.   Protection From Substance Abuse or Compulsive Disorders.

1.   If Tribal Council or its Designee reasonably believes that any beneficiary of any trust established under this Agreement:

(a)   uses or consumes any illegal drug or other illegal substance;

(b)   is clinically dependent upon the use or consumption of alcohol or any other legal drug or chemical substance that is not prescribed by a board certified medical doctor or psychiatrist in a current program of treatment supervised by such doctor or psychiatrist;

(c)   compulsively gambles or exhibits other compulsive behavior; or

(d)   is unduly susceptible, as a result of emotional or mental pressures, to influence or coercion which would cause the beneficiary to squander trust distributions;

{22717085;1}

15

and if Tribal Council or its Designee reasonably believes that as a result of such use, consumption, compulsive behavior, influence or coercion, the beneficiary is incapable of caring for himself or herself or is likely to dissipate his or her financial resources, Tribal Council or its Designee shall advise the Trustee of the same and all distributions to such beneficiary shall be suspended pending satisfaction of the conditions contained in this Article. Tribal Council or its Designee may require the beneficiary to submit to one or more examinations (including laboratory tests of bodily fluids) determined to be appropriate by a medical doctor, psychiatrist or psychologist selected by Tribal Council or its Designee, and to provide full disclosure to the examining medical doctor or facility of beneficiary's prior medical history and treatment, history of illegal drug use, consumption of alcohol, compulsive behavior and susceptibility to influence or coercion. Based on the results of such examinations, Tribal Council or its Designee shall determine whether, to what extent and under what conditions any such distributions shall resume and shall advise Trustee of the same.

2.    In addition to the examinations described in paragraph 1. above, each beneficiary shall submit to an annual laboratory test of bodily fluids designed to detect the use of illegal drugs or substances or any otherwise legal prescription drug or chemical substance that is not prescribed for such beneficiary's use (each, a "Mandatory Drug Examination"). The beneficiary shall undergo a Mandatory Drug Examination within 30 days prior to the date upon which such beneficiary would otherwise first qualify for any mandatory distributions under Article III B. 3, and upon each anniversary thereof, and within 30 days prior to the Final Distribution Date.

3.    The beneficiary shall consent to full disclosure by the examining doctor or facility to the Tribal Council and its Designee and Trustee of the results of all examinations described in this Section. Trustee shall maintain strict confidentiality of those results and shall not

{22117085;1}

16

disclose those results to any person other than the beneficiary without the prior written permission of the beneficiary.

4.      If the beneficiary refuses to consent to any examination described in this Section or to disclosure of the results, all distributions otherwise required or permitted to be made to that beneficiary shall be suspended until the beneficiary consents to such examination and disclosure.

5.      If in the opinion of the examining medical doctor, psychiatrist or psychologist any examination indicates current or recent use of a drug or substance, or indicates a compulsive behavior disorder, influence or coercion as described above, the beneficiary shall consult with the examining medical doctor, psychiatrist or psychologist to determine an appropriate method of treatment for the beneficiary (for example, counseling or treatment on an in patient basis in a rehabilitation facility, or regular attendance at appropriate 12-step meetings such as Alcoholics Anonymous).  If the beneficiary consents to the treatment, the beneficiary shall authorize a full disclosure by the physician or facility of the treatment plan to Tribal Council and its Designee and Trustee.  If payment for such treatment is not otherwise provided by the Tribe or another source, Trustee shall pay the costs of approved treatment directly to the provider of those services from that beneficiary's trust share.

6.      Tribal Council or its Designee, in its sole discretion, may direct Trustee to suspend all distributions to the beneficiary during the trust administration until, in the case of use or consumption of an illegal drug or illegal substance (including a prescription drug or chemical for which the beneficiary has no prescription), examinations indicate no such use, and in all cases until Tribal Council or its Designee, in its sole judgment, determines that the beneficiary is fully capable of caring for himself or herself and is no longer likely to dissipate his or her financial resources.

{22717065;1}

17

While distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

       7.     It is not Grantor's intention to make Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) responsible or liable to anyone for a beneficiary's actions or welfare. Trustee shall have no duty to inquire whether a beneficiary uses drugs or other substances, has a compulsive behavior disorder or is being coerced or influenced as described in this Section. Trustee (and/or any doctor, psychiatrist or psychologist retained by Trustee, the Tribal Council or its Designee) shall be indemnified from a beneficiary's trust share and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section, including any failure to request a beneficiary to submit to medical, psychiatric or psychological examination, and including a decision to distribute suspended amounts to a beneficiary.

       B.     <u>Protection From Threat of Loss</u>. If Trustee, in Trustee's sole and absolute discretion, determines that the beneficiary of any trust created hereunder may be subject to the loss of any property interests created under this Agreement as a result of any type of legal process or other circumstance (whether foreign or domestic), making it clearly contrary to the best interests of the beneficiary to receive a distribution that is otherwise required or permitted to be made hereunder (including but not limited to the final distribution of the assets of the beneficiary's trust share), then Trustee may refrain from making all or any part of such distribution until Trustee, in Trustee's sole and absolute discretion, determines that such threat of loss no longer exists. In order to ascertain the severity of a threat, Trustee is authorized to apply assets of the trust in question for purposes of obtaining a legal opinion regarding the likelihood of loss with respect thereto. If such legal opinion assesses the risk of loss to be at least ten percent (10%) of the distribution that would or could

{22717085;1}

18

otherwise be made but for the provisions of this Section, Trustee may rely on such legal opinion to withhold distributions from the trust as herein directed and shall be indemnified and held harmless from any liability of any nature in exercising the judgment and authority provided under this Section. Circumstances in a beneficiary's life that would justify Trustee exercising the foregoing discretion include, without limitation, being a defendant in litigation, being involved in bankruptcy proceedings or similar financial or matrimonial difficulties, or living under a form of government or other condition making it highly likely that the assets distributed to the beneficiary would be subject to confiscation or expropriation. While mandatory distributions are suspended, the trust will be administered as a discretionary trust to provide for the beneficiary's extraordinary medical needs.

### ARTICLE VIII
### TRIBAL SOVEREIGNTY

Nothing in this Agreement shall be deemed to be a waiver of the sovereign immunity of the Tribe.

### ARTICLE IX
### INQUIRIES BY THIRD PARTIES

No person, bank or trust company, corporation, partnership, association or firm dealing with Trustee or holding or keeping any assets of the trust shall be required to investigate the authority of Trustee for entering into any transaction involving assets of the trust or to see to the application of the proceeds of any such transaction, or to inquire into the validity, expediency or propriety thereof, or be under any obligation or liability whatsoever, except to Trustee; and any such person, bank or trust company, corporation, partnership, association or firm shall be fully protected in making disposition of any assets of the trust in accordance with the directions of Trustee.

{22717085;1}

## ARTICLE X
## COUNSEL

Trustee may consult with legal counsel (who may be counsel to Grantor) concerning any question which may arise with reference to the duties or obligations of Trustee under this Agreement and the written opinion of such counsel shall be full and complete authorization and protection in respect of any actions taken or suffered by Trustee in good faith and in accordance with the opinion of such counsel.

## ARTICLE XI
## DEFINITIONS

A.     Corporate Trustee – means any bank or trust company having assets under management in excess of Five Hundred Million Dollars ($500,000,000) and which is qualified to conduct trust business under the laws of Florida.

B.     Designee – means that person, committee, group, board or other association of persons to whom Tribal Council has delegated its authority by Tribal resolution or ordinance.

C.     Guardian(s) – means that individual or those individuals designated by the Tribal Council of the Seminole Tribe of Florida to serve as guardian(s) of a Minor Qualified Enrolled Tribal Member. In the absence of such designation, the guardian of a Minor Qualified Enrolled Tribal Member shall be deemed to be his or her custodial parent.

D.     IGRA – means the Indian Gaming Regulatory Act of 1988 (Public Law 100-497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701-2721 (1988)) and any amendments thereto.

E.     Incapacitated – has the same meaning as "incompetent" as the term is used in IGRA.

F.     Minor Qualified Enrolled Tribal Member – means a Qualified Enrolled Tribal Member who has not attained the age of eighteen (18) years.

{22717085;1}

20

G.      Per capita payment – means the payment of money or other thing of value by Grantor to Qualified Enrolled Tribal Members that is paid directly from net revenues derived from the Tribe's gaming activities as the term is used under IGRA.

H.      Qualified Enrolled Tribal Member – means any living Tribal Member who is duly enrolled in the Seminole Tribe of Florida in accordance with the Tribal Constitution.

I.      Tribe – means the Seminole Tribe of Florida, a federally recognized Indian Tribe.

J.      Tribal Council – means the governing body of the Seminole Tribe of Florida.

K.      Value of beneficiary's share of trust property – means the fair market value of all trust property allocable to the beneficiary's share, including any income that is properly allocable thereto, as determined by the Trustee as of the relevant date. The relevant dates include the date upon which the beneficiary first becomes eligible for annual distributions, one-time incentive distributions and final distributions under Article III b. 3., hereof.  The Value is re-determined each year for purposes of determining the amount of the beneficiary's annual distributions for each such year. When a beneficiary is entitled to distributions under both paragraphs b. and c. of Article III b. 3. hereof, the Value is determined for both purposes as of the dates prescribed by paragraph c. of Article III b. 3. hereof.

L.      Withdrawing Beneficiary's Distribution Age – means the attained age in years of the Withdrawing Beneficiary (as defined in Article XVI A.) at which the Withdrawing Beneficiary's share of the Trust property shall be distributed to him or her pursuant to Article XVI. Unless and until changed by Tribal Council, the Withdrawing Beneficiary's Distribution Age shall be _21_ years.

## ARTICLE XII
## MISCELLANEOUS

{22717085;1}

21

A.    Headings. Headings used herein are for convenience and reference and shall have no force, effect or legal meaning in the construction, interpretation or enforcement of this Agreement or any provision herein.

B.    In General. Throughout this Agreement, unless the context otherwise requires, the masculine gender shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural and vice versa.

C.    Jurisdiction. Jurisdiction and venue for any litigation between the Trustee and a beneficiary shall lie only in Broward County, Florida.

## ARTICLE XIII
## IRREVOCABLE

Grantor has been advised with respect to the difference between revocable and irrevocable trusts and hereby declare that this Agreement and the trust shares created hereby are irrevocable and may not be amended, revoked or modified in any manner or respect, other than the right to amend this Agreement for the sole purpose of bringing the Trust into compliance with IGRA. In the event that this Agreement is terminated for any reason and there are assets in the trust on the date of termination, distribution of a beneficiary's share of those assets may only be made to the beneficiary, the beneficiary's Guardian or to another trust in which the beneficiary's rights are fully vested, and under no circumstances, shall any assets of this Trust revert back to the Tribe.

## ARTICLE XIV
## ACCEPTANCE BY TRUSTEE/NON-RECORDATION

Trustee hereby accepts the trust herein created. The parties hereto agree that this Agreement shall not be recorded in any public records.

{22717085;1}

22

## ARTICLE XV
## EXECUTION OF AGREEMENT

This Agreement may be signed in one or more counterparts each of which, when executed with the same formality and in the same manner as the original, shall constitute and serve as the original. In addition, a telecopied signature on this Agreement shall be accepted as binding as if it were an original signature.

## ARTICLE XVI
## WITHDRAWAL FROM MEMBERSHIP IN TRIBE

A.    Withdrawing Beneficiary. This Trust is created and administered for the benefit of Minor Qualified Enrolled Tribal Members. In the event that the membership in the Tribe of a beneficiary of this Trust ("Withdrawing Beneficiary") is withdrawn (whether such membership is withdrawn by the Withdrawing Beneficiary or his or her guardian), the provisions of this Article shall apply to the Withdrawing Beneficiary's share of the Trust property, notwithstanding any other provision herein to the contrary.

B.    Administration and Distribution of Withdrawing Beneficiary's Share. As soon as practicable following a Withdrawing Beneficiary's withdrawal from membership in the Tribe, the Tribe shall notify the Trustee of such withdrawal. Thereafter, no portion of any contributions to the Trust by the Grantor, or expenses of administration, shall be allocated to the Withdrawing Beneficiary's share of the Trust, but the Trustee shall continue to allocate to the Withdrawing Beneficiary's share the amount of Trust income that is attributable to such share. The Trustee shall hold and administer the Withdrawing Beneficiary's share until the Withdrawing Beneficiary has attained the Withdrawing Beneficiary's Distribution Age, as defined in Article XI L., at which time the Trustee shall distribute the Withdrawing Beneficiary's entire share of the Trust to the

{22717085;1}

Withdrawing Beneficiary, free and clear of any further obligation of the Trustee to the Withdrawing Beneficiary hereunder.

      C.    <u>Application of Trust Provisions to Withdrawing Beneficiary's Share</u>. Except as directed by Tribal Council, the provisions of this Trust Agreement shall apply to the Withdrawing Beneficiary's share except that (i) no amounts shall be distributed to the Withdrawing Beneficiary pursuant to Article III B. prior to the Withdrawing Beneficiary attaining the Withdrawing Beneficiary's Distribution Age; (ii) neither the Withdrawing Beneficiary nor his or her guardian shall have any right to direct investments of the Withdrawing Beneficiary's share pursuant to Article VI D.; (iii) no portion of the Withdrawing Beneficiary's share shall be transferred to the Incapacitated Members' Trust or Incarcerated Members' Trust pursuant to Article III B. 3. a.; and (vi) no portion of the Withdrawing Beneficiary's share shall be withheld from the Withdrawing Beneficiary pursuant to Article VII as and when the Withdrawing Beneficiary attains the Withdrawing Beneficiary's Distribution Age.

{22717085;1}

24

**IN WITNESS WHEREOF** Grantor and the witnesses to the Grantor have executed this

instrument in the presence of each other, and Trustee and the witnesses to Trustee have executed this

instrument in the presence of each other, effective the day and year first above written at Hollywood

Seminole Indian Reservation, Broward County, Florida.

Signed, sealed and delivered
in the presence of:

Nancy Willie

Patricia A. Diamond


**SEMINOLE TRIBE OF FLORIDA,**
Grantor

By: _____

Title: _Chairman of the Tribal Council_


**WELLS FARGO BANK, N.A.,** Trustee

By: _Debra Charbonnet_

Title: _SVP_

{22717085;1}

25

STATE OF FLORIDA    )
                   ) SS: .
COUNTY OF BROWARD  )

       I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by ___James E Billie___, the ___Chairman___ of the Seminole Tribe of Florida, the Grantor, who is personally known to me or who has produced ___J2. ID___ as identification.

       WITNESS my hand and official seal in the State and County last said this __1__ day of __Feb__, 2012.

                                   _Michelle St Osceola_
                                 Notary Public, State of Florida at Large

                                 Typed, printed or stamped name of Notary Public

**MICHELLE L OSCEOLA**
MY COMMISSION # EE140216
EXPIRES October 23, 2015
FloridaNotaryService.com
(407) 398-0163

{22719085;1}

26

STATE OF FLORIDA   )
                     ) SS:
COUNTY OF BROWARD  )

     I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by DEBRA CHARBONNET , the SVP of Wells Fargo Bank, N.A.,  as Trustee, who is personally known to me or who has produced FLA DL as identification.

     WITNESS my hand and official seal in the State and County last said this 9th day of FEB, 2012.

_____
Notary Public, State of Florida at Large

_____
Typed, printed or stamped name of Notary Public

NADEJDA PETROVA
Notary Public - State of Florida
My Comm. Expires Jan 3, 2014
Commission # DD 949606

(22717085;1)

27

SEMINOLE TRIBE OF FLORIDA

MINORS' PER CAPITA PAYMENT AGREEMENT

SCHEDULE A

Received from the Trustee of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated February 23, 2010, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated October 17, 2007, as successor by merger of the SEMINOLE TRIBE OF FLORIDA MINORS' PER CAPITA PAYMENT TRUST AGREEMENT dated April 20, 2005 for deposit to the above-captioned trusts:

See Attached.

Dated: ___2 - 9___, 2012

WELLS FARGO BANK, N.A., Trustee

By: _Debra Charles_

Title: ___SVP___

{22717085;1}

28

# Wealth Management Investment Solutions

## Seminole Tribe of Florida
## Minors' Per Capita Payment Trust
## Fee Schedule*

**(For Trustee Services – Wells Fargo Investment and Fiduciary Services)**

| Market Value | | Annual Fee Paid Monthly |
|---|---|---|
| First | $250,000,000 - | .10% |
| Next | $250,000,000 - $500,000,000 | .08% |
| Next | $500,000,000 - $750,000,000 | .07% |
| Next | $750,000,000 - $1,000,000,000 | .05% |
| Over | $1,000,000,000 - | .02% |

*This is an Addendum to Fee Schedule Dated April 20, 2005.

*This Addendum Shall Be Effective on January 1, 2013.

*This Schedule Includes Separate Account Management. All Other Investment Fees Reflected on Separate Schedules.

*Fees Accrue on a Daily Basis and Fund Unitized Price is Net of Fees.

Accepted By: _James Baker_   Date: _8/24/12_
_Seminole Tribe of Florida_
_CFO_

EXHIBIT
J





# Seminole Minors Trust
# Fee Proposal

**Presented by:**

**Tom Joyce**

**Terri Johnson**

**Melissa Barnhardt**

May 14,
2015



Together we'll go far



EXHIBIT
K

# Fee Proposal

- Current fee structure

    - Services for Trustee, Investment Management and Recordkeeping
    - 17 bps total fee
    - Structure includes one tiered and one flat fee
    - All fees paid from trust and netted in NAV

- Proposed fee structure

    - Services for Trustee, Investment Management and Recordkeeping
    - 14 bps total fee
    - Structure would change to a single fee schedule, covering all services
    - Fees could be paid:
        - From Trust and netted in NAV
        - From trust but charged direct to participants (not in NAV)
        - Combination of methods

ing # 37971304 E-Filed 02/18/2016 12:15:29 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.   CACE 16-000592 (08)

SEMINOLE TRIBE OF FLORIDA, a Federally recognized Indian tribe, on behalf of its current and former MINOR TRIBE MEMBERS who are and were beneficiaries of the Seminole Tribe of Florida Minors' Per Capita Payment Trust Agreement (as amended from time to time) and JOHN DOES 1-3,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.; DEBRA CHARBONNET; THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL S. CARRIS; and MARK LAKE,

        Defendants.

_____/

## PLAINTIFFS' NOTICE OF SERVING  FIRST SET OF INTERROGATORIES UPON DEFENDANTS

      Plaintiffs, by and through undersigned attorneys, hereby files this Notice of Serving First Set of Interrogatories upon Defendants WELLS FARGO BANK, N.A.; DEBRA CHARBONNET; THOMAS JOYCE; TERRI JOHNSON; MELISSA LADER BARNHARDT; KIM SCOTT; MARC SPELANE; MICHAEL S. CARRIS; and MARK LAKE, to be answered, in writing and under oath, in accordance with the parties' agreement or on or before May 5, 2016.

(SPACE INTENTIONALLY LEFT BLANK)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by email upon all attorneys listed on the attached Service List, on this 18th day of February, 2016.

CONRAD & SCHERER, LLP
Counsel for Plaintiffs
633 South Federal Highway
Fort Lauderdale, FL 33301
Telephone:     (954) 462-5500
Facsimile:     (954) 463-9244

BY /s/ALBERT L. FREVOLA, JR.
    WILLIAM R. SCHERER
    Florida Bar No. 169454
    wscherer@conradscherer.com
    ALBERT L. FREVOLA, JR.
    Florida Bar No. 857416
    afrevola@conradscherer.com
    JACK S. KALLUS
    Florida Bar No. 56111
    jsk@conradscherer.com

    **Email Service:**
    wrspleadings@conradscherer.com
    alfpleadings@conradscherer.com
    jskpleadings@conradscherer.com
    mcr@conradscherer.com
    eservice@conradscherer.com

2

## SERVICE LIST

**MICHAEL W. MARCIL, ESQ.**
**GEORGE LeMIEUX**
Gunster
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301-4206
Main Number: 954-462-2000
Telephone: 954-468-1386 (Direct)
Facsimile: 954-523-1722
mmarcil@gunster.com
glemieux@gunster.com
gwilkerson@gunster.com

3