UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  0:16-cv-600414-WPD

SEMINOLE TRIBE OF FLORIDA, *et al.*
          Plaintiffs,

v.

WELLS FARGO BANK, N.A., *et al.*
          Defendants.

_____/

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs SEMINOLE TRIBE OF FLORIDA and JOHN DOES 1–3 ("the Minor Beneficiaries"), by and through undersigned counsel and pursuant to Local Rule 7.1, moves this Court for an order remanding this case to the originating state court pursuant to 15 U.S.C. § 78bb(f)(3)(D) and 28 U.S.C. § 1447(c) as follows:

### I.      INTRODUCTION

This is a state law case raising traditional state law breach of trust claims by the Minor Beneficiaries against a trustee, Defendants Wells Fargo and named officers (current and former) (the "Trustee Bank").  This is not a case arising out of the fraudulent purchase or sale of securities.  As such, the Minor Beneficiaries' claims do not fall within the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), and, accordingly, this case does not belong in federal court.  For the reasons set forth in this motion, the Court should remand this case to the originating state court.

**A.      The Minor Beneficiaries' Trust**

In 2005, the Seminole Tribe of Florida -- a federally recognized Native American Tribe -- established a private trust account at Wachovia (Wells Fargo's predecessor) for the benefit of its

children.[1]  It is one of many endeavors of the Tribe for the financial benefit of its members.  The primary purpose of the trust, like the Tribe's other endeavors, is to elevate the material conditions of Tribal members, including its youth, whose income, employment, and educational attainment are considerably lower than national averages.  The Tribe funded the Trust with money it earned from its business enterprises.  Over the years -- and due primarily to the success of the Seminole Hard Rock® Hotel and Casino -- the trust grew to over $1.4 billion.

The Tribe chose Wachovia to be the professional trustee because it was a national bank and, accordingly, it believed the bank had the skill and resources required to manage a large trust for the benefit of its members' children.  Toward that end, the parties entered into written trust agreements under which Wachovia (and its successors) promised to "administer the Trust Estate for the benefit of the beneficiaries consistently with the directions of this Trust Agreement and with general trust principles of fiduciary duty and management." [See 2005 Trust Agreement, Art. IIIB.2, D.E. 1-2, p. 57].  "General trust principles" is short-hand for developing and implementing a diversified investment strategy consistent with the client's risk tolerance.[2]  But defendants did not do that.  Instead, they abandoned their fiduciary duties and obligations to the beneficiaries to focus on fee generation for the bank.

**B.**     **The Trustee Bank's Mismanagement of the Trust**

The Trustee Bank's mismanagement of the Trust had three components: 1) charging hidden and improper administrative fees; 2) adopting a grossly negligent low-growth strategy wholly

---

[1]     A person who has at least one full-blooded Seminole grandparent or a half-blooded Seminole parent qualifies for membership in the Tribe.

[2]     Florida law imposes on investment fiduciaries a statutory duty to act as a "prudent investor."  § 518.11, Fla. Stat. (2015).  Under Florida's prudent investor rule a fiduciary like the bank must consider "risk and return objectives" and diversify the portfolio where appropriate.  Id. at §§ (1)(a) & (c).

2

inconsistent with the beneficiaries' higher risk tolerance; and 3) failure to make proper disclosures to the beneficiaries consistent with its duties under Florida trust law.

As the trust grew and Tribal membership increased, the Tribe periodically renegotiated the trust agreement and related fee schedules with the bank.  The renegotiated documents were, in part, intended to reduce the amount of fees the Trustee Bank agreed to charge the Trust for trust management.  However, and unbeknownst to the Minor Beneficiaries, at the same time the Trustee Bank secretly enrolled the Trust in redundant bank programs and charged it millions of dollars in hidden fees.  The obvious purpose of these fees was to salvage fee reductions the bank agreed to when the parties renegotiated the Trust Agreement and related fee schedules as the trust grew. Without question, the claims against the Trustee Bank to recover these fees for the Trust are traditional state law breach of trust claims.

In addition to charging improper administrative fees, the Trustee Bank grossly mismanaged the Trust by investing its funds into inappropriate and underperforming government bonds, mutual funds, and short term treasuries.  That strategy netted the bank millions in fees, while costing the Trust over $100 million in lost value.

Finally, the Trustee Bank repeatedly failed to advise the Minor Beneficiaries about its investment strategy as required by Florida law and issued misleading statements to them, thereby denying them any opportunity to question or object to the investments it was making for their benefit, and for which it was being paid extraordinary fees.

There is no claim here that the securities purchased were fraudulently purchased or sold. Rather, the Minor Beneficiaries claim that the *investment strategy* the Trustee Bank employed was imprudent, including under the "prudent investor" rule adopted by most states (see § 518.11, Fla. Stat. (2015)).  Just like the Minor Beneficiaries' claims to recover improper administrative fees for the Trust, their claims to restore the Trust are traditional state law claims.

3

**C.**     **The Trustee Bank Claims SLUSA Preclusion**

After all of this came to light in 2015, in 2016 the Minor Beneficiaries filed this lawsuit against the Trustee Bank in Florida court.  Rather than defend this case on the merits (bank officials admitted to the scheme when confronted with it in 2015), the Trustee Bank sought cover under SLUSA.  SLUSA works in tandem with the Private Securities Litigation Reform Act ("PSLRA"), which was enacted after the 1990s stock market crash to protect securities markets by shielding financial institutions from state law securities class actions (which were viewed as nuisance filings intended to extort large settlements).  SLUSA closed a loophole in the PSLRA by providing a removal mechanism from state to federal court, effectively eliminating any state court forum for securities fraud related lawsuits.

The fundamental problem with defendants' removal and motion to dismiss is that this is not a securities fraud lawsuit -- not even close.  No one disputes, and it cannot be disputed, that this trust is not a "covered security," that is, one nationally traded and listed on a regulated national exchange.   And the Minor Beneficiaries do not allege that the Trustee Bank made any "misrepresentations or omissions of material fact in connection with a purchase or sale" of any interest in this trust.   Undeterred, the Trustee Bank urges that because the Trust invested in securities, and because the bank invested Trust assets in securities, all of plaintiffs' claims "coincide" with securities transactions to make them removable under SLUSA.   However, the Trustee Bank's analysis ignores that as the trustee, the Trustee Bank owns the Trust assets and, accordingly, is the "seller" and "purchaser" of any securities bought using Trust assets.  This fact alone is dispositive of the Trustee Bank's Motion to Dismiss and the Minor Beneficiaries' Motion for Remand.  The United States Supreme Court held in no uncertain terms in Chadbourne & Parke v. Troice, 134 S.Ct. 1058 (2014), that SLUSA does not apply as a matter of law where the wrongdoer (here, the bank) is the "purchaser" or "seller" of the securities at issue -- which the

4

Trustee Bank obliquely cites in their Motion to Dismiss without any discussion of the facts or holding of the case.

Troice notwithstanding, the Trustee Bank's novel interpretation of SLUSA would completely up-end the law of trusts, which, unlike securities law, traditionally is within the realm of *state law* and *state courts*.  The implications of the Trustee Bank's position here are of grave concern to experts in state trust law.  In support of this motion, are trust experts: Harvard Law Professor Robert Sitkoff's Declaration (attached as **Exhibit "1"**), and Yale Law Professor John Langbein's Affidavit (attached as **Exhibit "2"**).  Both reject the Trustee Bank's tendered application of SLUSA, which would work a destructive federal preemption as there is no substitute in the federal securities laws for a state law breach of trust lawsuit.

A holding that ordinary breach of trust lawsuits under state trust law involving a single trust are precluded by SLUSA would have far reaching consequences for trusts and trust practice.  As Professor Sitkoff explains, such a holding would:

> ➢     Render a meaningful number of existing trusts with multiple beneficiaries unenforceable -- destroying the beneficiaries' interests in those trusts -- by enabling the trustees to misappropriate and mismanage the trust property with impunity.

> ➢     Distort fiduciary administration in trusts with fewer than fifty beneficiaries by encouraging trustees to merge them to get over the fifty beneficiary threshold,[3] thereby insulating the trustee from fiduciary accountability -- a problem that could not be avoided by a trust provision

---

[3]     The power to merge trusts is normal and customary trust instrument boilerplate.  It is a default trustee power recognized by Uniform Trust Code § 417 (2000) and common law power recognized by Restatement (Third) of Trusts § 68 (2003).  Accord § 736.0417(1), Fla. Stat. (2015) (permitting trustee "[a]fter notice to the qualified beneficiaries" to "combine two or more trusts into a single trust…if the result does not impair rights of any beneficiary or adversely affect achievement of the purpose of the…trust."].

prohibiting securities holdings, because if without proper disclosure the trustee purchased securities nonetheless, redress for that breach would be precluded by SLUSA.

> ➤ Sacrifice portfolio efficiency by removing several asset classes as potential investments in violation of the "prudent investor rule" -- the Nobel Prize winning concept codified in every state, including Florida (codified at § 518.11, Fla. Stat. (2015)).

> ➤ Wipe out a large swath of trust practice, as persons who would have used a trust would be forced to use a less apt alternative or create a something new -- wasting centuries of refinement of the trust concept by common law evolution and, more recently, by state-level statutory reform such as by enactment of the Uniform Trust Code.

[Sitkoff Decl. ¶ 20].

Professor Langbien explains that "[v]irtually every modern trust presupposes that the trustee will invest and manage the property of the trust in financial assets that can be called securities." [Langbein Aff. 9].  Professor Sitkoff agrees "that trusts with securities holdings are common:"

> The typicality of trust holdings in securities, such as stocks, bonds, and mutual fund shares, traces to the displacement of land by liquid financial assets as the predominate mode of wealth accumulation, and to widespread law reform that welcomes fiduciary investment in such assets…the law of trust investment has come to welcome trust holdings in stocks, bonds, mutual funds, and other securities.

[Sitkoff Decl. ¶ 22].  Yet, that quintessential attribute is what defendants claim makes plaintiffs' lawsuit "a straight securities-fraud" action.  According to Professor Langbein, that simply cannot be.  The theory of the Trustee Bank's motion "would transform any case of routine enforcement of a private trust involving more than 50 beneficiaries into a SLUSA-prohibited class action." [Langbein Aff. ¶ 9].  In this regard, Professor Langbein points out that "SLUSA does not by its terms address the enforcement of trusts, and the congressional committee reports accompanying

6

the legislation at the time of enactment supply no indication that SLUSA was meant to affect, much less displace, the classical regime for enforcing beneficial interest in trusts," which are well recognized state law breach of trust claims.  [Id.]

Moreover, the fact that the claims here may benefit more than fifty minor beneficiaries does not transform this case into a class action.  As Professor Langbein explains, "the enforcement of trusts with multiple beneficiaries long predates the modern class action."  [Langbein Aff. ¶ 8]. Simply put, the enforcement of a single multi-beneficiary trust does not take the form of a class action regardless of the number of plaintiffs because "any [single] beneficiary can maintain suit against the trustee to enforce the duties against him" and seek restoration of the entire trust, not just the value of the beneficiaries' interest.[4]  [See Id.].

In the end, the result the Trustee Bank urges would be absurd and unjust, and it is axiomatic that Courts do not interpret statutes to produce absurd and unjust results.  See In re Graupner, 537 F.3d 1295, 1302 (11th Cir. 2008) ("Because the legislature is presumed to act with sensible and reasonable purpose, a statute should, if at all possible, be read 'so as to avoid an unjust or absurd conclusion.'").  No public policy is advanced by extending SLUSA to the state law trust claims at issue here, which would be contrary to Troice.  Accordingly, this case should be remanded.

## II.     MEMORANDUM OF LAW

### A.     The Standard for Remand

SLUSA expressly requires remand if the case may be maintained in state court:

> **D) Remand of removed actions**
>
> In an action that has been removed from a State court…if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court *shall* remand such action to such State court.

---

[4]     See discussion on "Covered Class Actions" later in this motion.

7

15 U.S.C. § 78bb(f)(3)(D) (emphasis added).  Moreover, 28 U.S.C. 1447(c) requires remand if the Court lacks subject matter jurisdiction:[5]

> **(c)** A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be* remanded.

(Emphasis added).  "A removing defendant bears the burden of proving proper federal jurisdiction." Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002).  If a district court determines that an action is not a precluded class action under SLUSA and, therefore, removal was improper, it lacks subject matter jurisdiction to further entertain it.  In that case, both 28 U.S.C. § 1447(c) and 15 U.S.C. § 78bb(f)(3)(D) require the court to remand the removed action back to the originating state court.

As will be explained in detail below, the Trustee Bank has not sustained their burden of proving proper federal jurisdiction or established any grounds for dismissal because SLUSA does not apply to the Minor Beneficiaries' claims against them.

**B.      SLUSA Elements**

To successfully remove an action under SLUSA, the removing party (the Trustee Bank) must demonstrate all of the following:

> ➢      One or more "covered securities" has been purchased or sold;
> ➢      The defendant misrepresented or omitted a material fact "in connection with the purchase or sale of such security."
> ➢      Plaintiffs' lawsuit is a "covered class action;" and
> ➢      Plaintiffs' claims are based on state law.

Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252 (2003).  The Minor Beneficiaries acknowledge that their claims are based on alleged breaches of Florida's trust and common law.

---

[5]      Section 1447(c) also provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id.

8

However, the Trustee Bank's motion fails every other prong under SLUSA.  "[A] lawsuit that does not satisfy all the SLUSA criteria must be remanded to state court."  <u>Ring v. AXA Fin., Inc.</u>, 483 F.3d 95, 98 (2d Cir. 2007).

**C.      Minor Beneficiaries Do Not Allege Any "Material" Misrepresentation In Connection With the Purchase or Sale of a Covered Security**

<u>Troice</u>, 134 S.Ct. at 1058, is dispositive of the Trustee Bank's motion and requires remand. There, plaintiffs (private investors) brought a conventional class action lawsuit against firms who offered for sale certificates of deposit in Stanford International Bank.  <u>Id.</u>  The defendant firms represented that the certificates were backed by securities, even though the certificates themselves were not securities, but Ponzi paper.  <u>Id.</u>  Plaintiffs sued the firms for fraud and violating state securities laws.  <u>Id.</u>

In response, defendants moved to dismiss under SLUSA, claiming that because plaintiffs alleged they misrepresented that the Stanford certificates were backed by covered securities, SLUSA applied to their claims.  <u>See Id.</u> at 1062–1065.  The district court granted defendants' motions to dismiss, but the Fifth Circuit reversed because defendants' alleged misrepresentations were "too 'tangentially related' to the 'crux' of" Stanford's Ponzi scheme.  <u>Id.</u> at 1065.  The United States Supreme Court affirmed the Fifth Circuit.  In so doing, it made crystal clear that SLUSA's "representation or omission of a material fact in connection with the purchase or sale of a covered security" requirement does not apply where, as here, the buyer or seller of the security at issue is the alleged wrongdoer:

> The question before us concerns the scope of [SLUSA's] phrase "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  How broad is that scope?  Does it extend further than misrepresentations that are material to the purchase or sale of a covered security?
>
> In our view, the scope of this language does not extend further. To put the matter more specifically: *A fraudulent misrepresentation or*

> *omission is not made "in connection with" such a "purchase or sale of a covered security" unless it is material to a decision by one or more individuals (**other than the fraudster**) to buy or to sell a "covered security."*

Id. at 1066 (emphasis added & internal citations omitted).  The Supreme Court held that there must be a "material connection" or "a connection that matters" between the alleged fraudulent statements or omissions and the purchase and sale of the security at issue.  Id.  A connection does not "matter" where, as here: a) the alleged wrongdoer (the Trustee Bank) is the purchaser or seller; b) the Trustee Bank made the decision to buy for its own reasons that should have been in line with its fiduciary duties to the beneficiaries; c) there is no allegation (nor could there be) that the Minor Beneficiaries made any decision or had any input into what purchases or sales the Trustee Bank made; and d) there is no allegation that the underlying security was purchased based on any fraudulent conduct or scheme of the seller in the transaction.  Under these circumstances there is no claim with a "connection" to the purchase or sale of a security because:

> [A] connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security, not to purchase or to sell an uncovered security, something about which [SLUSA] expresses no concern….*Further, the "someone" making that decision to purchase or sell **must be a party other than the fraudster**. If the only party who decides to buy or sell a covered security as a result of a lie is the liar, that is not a "connection" that matters.*

Id. (emphasis added).  The Supreme Court refused to interpret SLUSA's "in connection with" more broadly -- as defendants are asking this Court to do now -- because doing so "would interfere with state efforts to provide remedies for victims of ordinary state-law frauds" and produce absurd and unjust results, not unlike those identified by Professor Sitkoff:

> A broader interpretation would allow [SLUSA] to cover, and thereby to prohibit, a lawsuit brought by creditors of a small business that falsely represented it was creditworthy, in part because it owns or intends to own exchange-traded stock.  It could prohibit a lawsuit brought by homeowners against a mortgage broker for

10

> lying about the interest rates on their mortgages—if, say, the broker (not the homeowners) later sold the mortgages to a bank which then securitized them in a pool and sold off pieces as "covered securities."

Id.

It is hornbook trust law that "[w]hen a settlor transfers property to another as trustee or declares a trust of that property, unless the transferor manifests a different intention, *the trustee takes the settlor's full title or interest in that property*."  Restatement (Third) of Trusts § 42 (2003) (emphasis added).  This was the point made in <u>Webster v. St. Petersburg Federasl Savings & Loan</u>, 20 So. 2d 400, 403 (Fla. 1945), where the Florida Supreme Court reaffirmed that "[i]n order to create a valid voluntary trust the equitable title must pass to the [beneficiary], *while the legal title is transferred to a third person* or is retained by the settlor to be held for the purposes of the trust." (Emphasis added); <u>cf.</u> <u>Navarro Savings Ass'n v. Lee</u>, 446 U.S. 458 (1980) (recognizing, for purposes of diversity, that trustee was real party in interest by virtue of its "full power to manage and control the trust").  In fact, section 786.0816 of the Florida Statutes, entitled "Specific powers of trustee," provides that "with respect to stocks and other securities" the trustee has the power to "exercise the rights of an *absolute owner*."  § 786.0816(8), <u>Fla. Stat.</u> (2015) (emphasis added). According to Professor Sitkoff, the "normal and customary practice regarding formal title to property held in a common law trust is for legal title to be held by the trustee in the trustee's fiduciary capacity as such." [Sitkoff Decl. ¶ 14].

Because the Trustee Bank, as Trustee, is the owner of the Trust property,[6] it is the "purchaser" and "seller" of the securities it is relying on as a basis for SLUSA preclusion. Professor Sitkoff explains:

---

[6] Under the express terms of the Trust Agreement, the trust "property and all investments and reinvestments [of trust property]…shall be transferred to…the 'Trust Estate' and administered by the trustee. [2005 Trust Agreement, Art. I; D.E. 1-2, p. 54]. The agreement grants

11

> Because the Bank is the trustee of the Trust at issue in this litigation, it has legal title to the trust property, including any stocks, bonds, or other securities held in the Trust. *Accordingly, in a purchase or sale of any of the securities held in the Trust, the transactional party on the "Trust" side of the purchase or sale would be the Bank*, not the numerous (and predominately minor) beneficiaries. Likewise, if no purchase or sale of any securities held in the Trust is consummated in a given moment, at that moment legal title to those securities would remain unchanged in the hands of the Bank.

[Sitkoff Decl. ¶ 15 (emphasis added)].  As the purchaser and seller, any misrepresentation made "in connection with" the purchase and sale of securities would have been made by the Trustee Bank to the Trustee Bank.  The concept that one cannot lie to oneself was the lynchpin of the "fraudster" exception articulated in Troice.

Troice is significant in that the Supreme Court held that SLUSA was inapplicable to plaintiffs' state law claims even though some of the plaintiffs brought state law securities fraud claims, and there was *actual securities fraud* involved.  Here, the Minor Beneficiaries do not allege any securities fraud at all.  The investments made by the Trustee Bank was not fraudulent, or made into fraudulent investment products (like Stanford's Ponzi paper).  They were legitimate investments in real securities.  Rather, the gist of the Minor Beneficiaries' claims is that the Trustee Bank charged improper fees, adopted an imprudent investment strategy, and failed to make trust disclosures -- traditional state law claims.  See § 736.1001, Fla. Stat. (2015) (codifying that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust" and listing breach of trust remedies).  Obviously, if SLUSA did not preclude the fraud and state law securities claims brought in Troice, then *a fortiori* SLUSA does not apply to the Minor Beneficiaries' traditional state law trust claims here.

---

the trustee broad powers to "hold, manage, care for and protect the trust property."  [See id. Art VI ¶¶ A.1–17, p. 61–62].

12

The Trustee Bank correctly observes that the Supreme Court made clear that it was not receding from or abrogating Dabit ("We do not here modify Dabit"), where it first held that the phrase "in connection with" means to "'coincide' with a securities transaction—whether by the plaintiff or by someone else." See Merrill Lynch v. Dabit, 547 U.S. 71, 81 (2006). But, the Trustee Bank misrepresents the effect of the Supreme Court's affirmation of Dabit. By affirming Dabit, the Supreme Court clarified that it was *never* the law that a wrongdoer could be the purchaser or seller of securities, then use SLUSA as a shield against liability for any wrongdoing in connection with those transactions as defendants are trying to do here.[7] The Trustee Bank's superficial analysis of Troice is intellectually dishonest, like their unattributed partial quote from Hidalgo-Vélez v. San Juan Asset Management, 758 F.3d 98, 109 (1st Cir. 2014), that SLUSA is "strong medicine," which when read fully in context reads "SLUSA is strong medicine *and should be dispensed only in compliance with Congress' statutory prescription*" -- clearly making the opposite point than the one Defendants' urge, which is that SLUSA should be applied broadly.

None of the cases from within the Eleventh Circuit that the Trustee Bank cites support its novel proposition that holding a beneficial interest in a private trust account transforms a trust enforcement action into a SLUSA precluded claim, because the trust invested in securities. Trusts were not at issue in Herndon, 325 F.3d at 1252, which involved direct purchases and sales of variable life insurance policies (which are securities). Similarly, Behlen involved the direct purchase and sale of mutual funds (which also are securities).

---

[7]     In Dabit the Supreme Court held that "holder claims" -- i.e., those where the plaintiff alleges an inducement to retain or "hold" shares of stock, resulting in economic loss -- fell within SLUSA even though the act of holding did not involve a purchase or sale. Dabit was not remarkable given that the stocks at issue were securities and a purchase and sale had occurred earlier (resulting in the plaintiff's holding at the time of the fraud). Nothing in Dabit extends SLUSA to plaintiffs' claims, conclusively established by Troice.

The remaining cases involved investment trusts in which the beneficiaries purchased their interests.  Cordova v. Lehman Brothers, 413 F.Supp.2d 1309 (S.D. Fla. 2006), and Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340 (11th Cir. 2008), involved a massive fraud orchestrated by Pension Fund of America, who marketed and sold interests in retirement trust accounts -- an investment product comprised of life insurance and mutual fund components. Beneficial interests in the trusts in Cordova and Instituto were offered for purchase and sale like a commercial investment product.  Beneficial interests in the Minor Beneficiaries' Trust were never purchased or sold.  The Tribe settled the trust in the first instance for the benefit of its member beneficiaries, who paid nothing for their beneficial interests.  Insofar as Cordova and Instituto or other cases decided before Troice, and relied on by the Trustee Bank that SLUSA is a shield against liability, it has been repudiated or overruled by implication as a result of Troice.

The non-binding order the Trustee Bank cites from Spencer v. Wachovia Bank, 2006 WL 3408043, *1 (S.D. Fla. 2006), another investment trust case, does not support the application of SLUSA here either.  Although not stated in the order, the complaint filed there accused Wachovia of using trust accounts as a "robotic feeder system" for bank securities, and luring purchasers through a "national advertising campaign" and "marketing blitz" created by the bank.  [See Spencer Cmplt., DE-1, Case No.: 05-81016].  In other words, the gist of Spencer's lawsuit was that Wachovia engaged in securities fraud using investment trusts.

Troice controls the application vel non of SLUSA here.  Because the Trustee Bank owns the Trust assets and, accordingly, is the purchaser and seller of any securities within it, the Minor Beneficiaries' claims fall within Troice's fraudster exception.  The Court should reject the Trustee Bank's artful wordsmithing and attempt to recast the Minor Beneficiaries' claims to avoid the fraudster exception -- a practice Courts frown upon.  See Wilson v. Wells Fargo Advisors, LLC, 2012 WL 5240815, *1 (D. Del. 2012) (cautioning that a broad interpretation of SLUSA "does not

14

transform every breach of fiduciary duty into a federal securities violation" and "defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA.").  Accordingly, this case should be remanded.

**D.      No "Covered Class Action" As Defined by SLUSA in Fact or in Law**

Even assuming that this case does not fall within <u>Troice's</u> "fraudster" exception (which it does), this case should still be remanded because there is no "covered class action" here.  SLUSA defines a covered class action in relevant part as follows:

> (i) any single lawsuit in which – (I) damages are sought *on behalf of more than 50 persons or prospective class members*, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or (II) one or more named parties seek to recover damages *on a representative basis on behalf of themselves and other unnamed parties similarly situated*, and questions of law or fact common on those persons or members of the prospective class predominate over any question affecting only individual persons or members…

15 U.S.C. § 78bb(f)(5)(B) (emphasis added).

**1.      Minor Beneficiaries Have One Claim, Not An Aggregation of Multiple Claims**

Here, the Minor Beneficiaries' claims fall outside of SLUSA's definition of "covered class action" because no plaintiff is bringing a claim "on behalf of" anyone else.  Under well-settled trust law, any beneficiary of a trust can sue to restore it.  What this means is that in a case involving multiple beneficiaries in a single trust, a plaintiff beneficiary does not, and does not need to, represent the interests of all beneficiaries, making a class action redundant and wholly unnecessary.  This is one claim and not an aggregation of multiple claims.

This was the upshot of <u>Scanlan v. Eisenberg</u>, 669 F.3d 838, 846 (7th Cir. 2012), where the Court reaffirmed that a beneficiary has a legally protected interest in the *entire* trust, not just his or her share in distributions.  There, the beneficiary of a support trust worth $1 billion accused the

15

trustee of mismanagement that caused the trust to lose approximately $200 million in value.  The defendants urged that the plaintiff lacked standing to sue because her interest in the trust was limited to her potential support distributions, and she could not prove that $800 million ever would be insufficient to pay her distributions.  The Court flatly rejected that argument, relying on the Restatement (Third) of Trusts -- which it characterized as  "canonical" trust law -- that "a suit to enforce a private trust ordinarily…may be maintained by *any* beneficiary whose rights are or may be adversely effected."  Id. at 842–43.

Scanlan is consistent with Florida Statute section 736.1002, entitled "Damages for breach of trust." which (among other things) permits any beneficiary to sue a Trustee to recover "[t]he amount required to restore the value of the trust property and trust distributions to what they would have been if the breach had not occurred, including lost income, capital gain, or appreciation that would have resulted from proper administration."  Regardless of how many beneficiaries a trust has, nothing in section 736.1002 requires a class action where, as here, there is one trust, one claim, brought for the sole purpose of restoring the trust corpus.

In this regard, the cases involving trust litigation cited by the Trustee Bank are easily distinguishable because they involved aggregations of multiple trusts.  In those cases, class representation was appropriate because the different trusts suffered different damages, but at the hands of the same defendant or group of defendants.[8]  See, e.g., Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 308 (6th Cir. 2009); Siepel v. Bank of America, N.A., 526 F.3d 1122 (8th Cir. 2008); Marchak v. JP Morgan & Co., 84 F.Supp.3d 197, 208 (E.D.N.Y. 2015); Investor Prot. Corp. v. Madoff Inv. Secs., 2013 U.S. Dist. LEXIS 172638 (S.D.N.Y. 2013).[9]

---

[8]    Securities Investor Protection v. Madoff, 987 F.Supp.2d 311 (S.D.N.Y. 2013), cited by defendants in their motion, does not change the analysis.  There, the bankruptcy trust was created for the very purpose of pursuing claims against Madoff.  It was not a pre-existing trust, like the Tribe's trust.

16

Moreover, the fact that the Tribe is advancing the interests of its beneficiaries does not make this case a class action.  As Professor Sitkoff explains, representation of beneficiaries is common in trust fiduciary litigation, which typically takes the form of "virtual representation" or appointment of a guardian *ad litem*.  [Sitkoff Decl. ¶ 24].  The use of representation is common in litigation over a trust with minor and unborn beneficiaries, as is typical in a multigenerational trust. The rationale for representation -- by way of virtual representation or guardian *ad litem* --is to allow the suit to proceed to a judgment that binds all interested parties, including minor and unborn beneficiaries, without requiring the participation of each individual beneficiary.

## 2.    The  Seminole Tribe Counts as One Plaintiff

Additionally, the Seminole Tribe cannot be fairly described as a class representative. Under 15 U.S.C. §78bb(f)(5)(D), "a corporation, investment company, pension plan, partnership, *or other entity*, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action."  (Emphasis added).  While the Tribe is not an "entity" like a corporation and plaintiffs do not allege that, it is a "domestic dependent nation" and, as such, has an existence separate and apart from its membership.  See The Fla. Paraplegic Ass'n, Inc. v. Miccosoukee Tribe of Indians of Fla., 166 F.3d 1126, 1130 (11th Cir. 1999) (recognizing that Native American Tribe is a "domestic dependent nation").  While SLUSA does not address the status of a Native American Tribe, the clear intent of 15 U.S.C. §78bb(f)(5)(D) is to treat anything other than a natural person as one.  Accordingly, at best, the Tribe counts as one in determining the number of participants in this lawsuit, making the total number of participants here four -- well below the fifty required for a "covered class action" to exist.

## E.    "State[s]" or "Other Possession[s]" are Exempt from SLUSA

17

Even if the Court determines that all prongs of SLUSA are satisfied, this case should still be remanded because the Tribe qualifies as a state under the SLUSA "State" exemption. Section 78bb(f)(3)(B) of SLUSA provides that "nothing in this subsection may be construed to preclude a State…plan from bringing an action involving a covered security on its own behalf."  Section 78c of the Securities Exchange Act of 1934 defines "State" as "any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other possession of the United States."  The Securities and Exchange Act does not expressly address the issue of whether a Native American Tribe is a "State" for purposes of the act.  While Native American Tribes are not states in the technical sense, courts have long recognized that they act like states when they protect the economic security, health, and welfare of their members.

This was the point made in Attorney's Process & Investigative Services v. SAC & Fox Tribe, 609 F.3d 927 (8th Cir. 2010), where the court reaffirmed the well-settled principle that tribes can enact legislation affecting non-members, and hail non-members into tribal courts, when their conduct "threatens or has a direct effect on the political integrity, the economic security, or health or welfare of the tribe."  There, the Eighth Circuit held that a tribe tribal court had jurisdiction over tort claims brought by the Sac and Fox Tribe against a non-member security company for damaging one of its casinos.   While SAC & Fox arose in a different procedural context, the principle at issue there applies with equal force here -- a tribe is the equivalent of a state when it comes to protecting the health and welfare of its members.  There can be no doubt that the Tribe is acting to protect the health and welfare of its members in this lawsuit.  Indeed, the trust at issue here were set up in the first instance to protect the financial security of the tribe's members (like a state social program).

The fact that the Securities and Exchange Act does not specifically identify Native American Tribes as a territories or states is not dispositive of the issue.  This was the point made

18

in <u>Tracy v. Superior Court</u>, 168 Ariz. 23 (Ariz. 1991), where the court held that the Navajo Nation was a territory within the meaning of an Arizona uniform act which authorized state courts to issue subpoenas compelling witnesses to appear in courts of any signatory state or territory (there, an Arizona state court issued a subpoena requiring witnesses to appear in a criminal trial before the Navajo nation, which adopted the uniform act).  The statute did not specifically identify tribes as states or territories.  The court flatly rejected appellant's invitation to define territory narrowly to exclude tribes, noting that Courts around the country have defined territory broadly to include tribes where, as here, a broad interpretation would advance the public policy goals of the statute at issue (there, the efficient administration of criminal justice).   Here, interpreting territory for purposes of SLUSA's state exemption to include tribes would further the statutes obvious comity goal by recognizing the tribe's interest in protecting the health and welfare of its members (like a state does for its citizens).

SAC & Fox Tribe and <u>Tracy</u> are no aberrations, but are consistent with well-settled law on the point.  <u>See</u> <u>Sheppard v. Sheppard</u>, 655 P.2d 895 (Idaho 1982) (tribe was territory or possession within meaning of 28 U.S.C. § 1738); <u>In re Larch</u>, 872 F.2d 66 (4th Cir. 1989) (tribe was territory under Parental Kidnapping Prevention Act);  <u>Martinez v. Superior Court</u>, 731 P.2d 1244 (1987) (tribe is territory or possession under Uniform Child Custody Jurisdiction Act");   <u>People v. Superior Court (Jans)</u>, 224 Cal. App. 3d 1405 (1990) (tribe was "state or territory of United States" within meaning of California's uniform criminal witness subpoena act).

## III.   <u>CONCLUSION</u>

The result that Trustee Bank seeks effectively would nullify centuries of trust law and refinement.  Its proffered application of SLUSA runs counter to core principles of trust governance and accountability of trustees to their beneficiaries.  Professor Sitkoff explains:

> The task for trust governance, and so trust fiduciary law, is protecting the beneficiaries from abuse by the trustee. The functional core of fiduciary governance is deterrence.  Trust law relies on the threat of fiduciary liability to induce the trustee to administer the trust loyally and prudently in the interests of the beneficiary.  Accordingly, in normal and customary trust and estate planning practice, among the reasons that lawyers sometimes recommend appointment of a bank rather than an individual as trustee is that a bank is less likely to be judgment proof in the event of a breach of trust.

***

> …The prevailing view in the Anglo-American trust tradition is that a purported "trust" that lacks fiduciary enforcement rights is not a real trust.  Fiduciary enforcement is so central to the nature of a trust that there is mandatory core of trust fiduciary obligation that cannot be waived by the settlor.  This mandatory core "protect[s] the fundamental fiduciary character of trust relationships recognized by law."

[Sitkoff Decl. ¶¶ 18 & 19].

For the reasons set forth in this motion, the Court should reject the Trustee Banks' invitation to re-write state trust law, but remand this case back to the originating state court and award the Minor Beneficiaries reasonable attorney fees and costs incurred as a result of the Trustee Bank's improper removal.[10]

---

[10]   As a throw-in, defendants urge that this court lacks personal jurisdiction over defendants Johnson, Scott, Spelane, and Lake because they do not reside in Florida, relying on the corporate shield doctrine.  Because this case was improperly removed, this is an issue for the state court to decide once remanded.  That being said, the doctrine does not apply where, as here, the defendant non-resident employee engaged in intentional misconduct directed at Florida.  E.g., Allerton v. State Dep't of Ins., 635 So.2d 36 (Fla. 1st DCA 1994) (holding that investment advisor who was resident of Massachusetts or New York was subject to personal jurisdiction in Florida for fraud and breach of fiduciary duty directed at Florida).

CONRAD & SCHERER, LLP, 633 SOUTH FEDERAL HIGHWAY, FT. LAUDERDALE, FL 33301, TEL. (954)462-5500

CASE NO.:  0:16-cv-600414-WPD

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 1st day of April, 2016, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all counsel on the attached Service List.

CONRAD & SCHERER, LLP
Counsel for Plaintiffs
633 South Federal Highway
Fort Lauderdale, FL  33301
Telephone:     (954) 462-5500
Facsimile:     (954) 463-9244

BY /s/ALBERT L. FREVOLA, JR.
    WILLIAM R. SCHERER
    Florida Bar No. 169454
    wscherer@conradscherer.com
    ALBERT L. FREVOLA, JR.
    Florida Bar No. 857416
    afrevola@conradscherer.com
    JACK S. KALLUS
    Florida Bar No.  56111
    jkallus@conradscherer.com
    KAYLIN S. GREY
    Florida Bar. No. 75344
    kgrey@condradscherer.com

CASE NO.:  0:16-cv-600414-WPD

## SERVICE LIST

**MICHAEL W. MARCIL, ESQ.**
**GEORGE LeMIEUX, ESQ.**
Gunster, Yoakley & Stewart, P.A.
Las Olas Centre
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301-4206
Telephone:  (954) 462-2000
Facsimile:   (954) 523-1722
MMarcil@gunster.com
GLeMieux@gunster.com
gwilkerson@gunster.com
LSuarez@gunster.com

**McGUIREWOODS LLP**
Peter J. Covington
pcovington@mcguirewoods.com
William O. L. Hutchinson
whutchinson@mcguirewoods.com
Mark W. Kinghorn
mkinghorn@mcguirewoods.com
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel. (704) 343-2000
Fax (704) 343-2300

**COUNSEL FOR DEFENDANTS**